1  COOLEY LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
   KYLE C. WONG (224021) (kwong@cooley.com)
3  AUDREY J. MOTT-SMITH (300550) (amottsmith@cooley.com)
   101 California Street, 5th Floor
4  San Francisco, CA 94111-5800
   Telephone:    (415) 693-2000
5  Facsimile:    (415) 693-2222

6  Attorneys for Defendant
   GOOGLE LLC
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 ADTRADER, INC., et. al,                  Case No. 5:17-cv-07082 (BLF)

12            Plaintiff,                     **DEFENDANT GOOGLE LLC'S MOTION TO
                                             DISMISS CERTAIN CLAIMS IN AMENDED
13     v.                                    CLASS ACTION COMPLAINT**

14 GOOGLE LLC,                               **F.R.C.P. 12(b)(6)**

15            Defendant.
                                             Hearing Date:   June 21, 2018
16                                           Time:           9:00 AM
                                             Courtroom:      Courtroom 3, 5th Floor
17                                           Judge:          Hon. Beth L. Freeman
                                             Trial Date:     Not Yet Set
18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 2

II.   STATEMENT OF FACTS ................................................................................. 3

    A.    Google provides an online advertising marketplace for publishers and advertisers. ................................................................................................. 3

        1.    Google's publisher-side products and services. .......................... 3

        2.    Google's advertiser-side products and services. ........................ 3

    B.    Plaintiffs used Google's advertising- and publishing-side services. .......... 4

    C.    Google terminated AdTrader's publisher-side account. ............................. 5

    D.    Plaintiffs allegedly did not receive full refunds from Google. .................. 5

III.  ARGUMENT ..................................................................................................... 6

    A.    The Court should dismiss AdTrader's publisher-side claims discussed below. ......... 6

        1.    None of Plaintiff's various bases for alleging a breach of the implied covenant of good faith and fair dealing are viable (Count II)......................... 6

        2.    AdTrader's claim for breach of the implied duty of reasonable care fails (Count III). ........................................................................ 9

        3.    AdTrader's claim that Google intentionally interfered with contracts fails (Count IV, apart from DingIt). ........................... 10

        4.    AdTrader's claim for interference with prospective economic advantage similarly fails (Count V, apart from DingIt). ............. 11

        5.    AdTrader's claim for declaratory relief fails (Count VI). ........... 13

            a.    The limitation of liability clause is not procedurally unconscionable. ................................................ 13

            b.    It is also not substantively unconscionable. ................. 14

    B.    All of Plaintiffs' class claims are precluded as a matter of law. ............... 15

        1.    The advertiser Plaintiffs fail to state a claim for fraud (Count VII). ........... 15

            a.    Plaintiffs do not adequately allege that Google made any false representations concerning either AdWords or AdX. ....................... 15

            b.    Plaintiffs fail to allege that Google's representations concerning the DBM Agreement were false when made. ................. 16

            c.    Plaintiffs' allegations of reliance also fail. ........................ 17

         2.    Plaintiffs fail to state a claim for negligent misrepresentation (Count VIII). ........................................................................ 18

        3.    Google has not received stolen property (Count IX). ................... 19

        4.    Plaintiffs admit no contract term calls for advertiser refunds (Count X). ....................................................................................... 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(continued)

Page

5.  Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing (Count XI) .......................................................... 21

6.  Google did not breach any implied duty of reasonable care (Count XII)............................................................................................................. 22

7.  Plaintiffs have no claim for unjust enrichment (Count XIII)........................ 23

8.  Plaintiffs fail to state a claim under the UCL (Count XIV). .......................... 24

9.  Plaintiffs fail to state a claim under New York General Business Law Section 349 (Count XV). ............................................................................... 25

IV.  CONCLUSION............................................................................................................ 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) ...................................................................................................20

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
752 N.Y.S.2d 400 (2002)...........................................................................................................25

*Avila v. Countrywide Home Loans*,
No. 10-cv-5485, 2010 WL 5071714 (N.D. Cal. Dec. 7, 2010)...................................................24

*B.L.M. v. Sabo & Deitsch*,
55 Cal. App. 4th 823 (1997) .......................................................................................................19

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ...................................................................................................13

*Ben-Zvi v. Edmar Co.*,
40 Cal. App. 4th 468 (1995) .........................................................................................................7

*Bleasdell v. Nat'l Med. Enters., Inc.*,
124 F.3d 210 (9th Cir. 1997) ......................................................................................................21

*Boulton v. Am. Transfer Servs., Inc.*,
No. 15-cv-0462, 2015 WL 2097807 (S.D. Cal. May 5, 2015) ....................................................19

*Bramex Assocs., Inc. v. CBI Agencies, Ltd.*,
540 N.Y.S.2d 243 (1989)............................................................................................................15

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005).......................................................................................................21

*Bus. Integration Tech v. MuleSoft Inc.*,
No. 11-cv-4782, 2012 WL 13041534 (N.D. Cal. Mar. 23, 2012) ..............................................12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) ......................................................................................................8

*In re Centerstone Diamonds, Inc.*,
No. 13-ap-2040, 2014 WL 1330186 (Bkr. C.D. Cal. Apr. 2, 2014).............................................12

*Cruz v. NYNEX Info. Res.*,
703 N.Y.S.2d 103 (2000).............................................................................................................25

*Cutler v. Rancher Energy Corp.*,
No. 13-cv-0906, 2014 U.S. Dist. LEXIS 34622 (C.D. Cal. Mar. 11, 2014)................................19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

*Dameron Hosp. Ass'n v. AAA N. Cal., Nev., & Utah Ins. Exch.*,
229 Cal. App. 4th 549 (2014) .................................................................................................7

*Darnaa, LLC v. Google, Inc.*,
No. 15-cv-3221, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015)......................................12, 13, 14

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
875 F. Supp. 2d 1058 (N.D. Cal. 2012) .................................................................................24

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ...........................................................................................24, 25

*Elias v. Hewlett-Packard Co.*,
950 F. Supp. 2d 1123 (N.D. Cal. 2013) .................................................................................25

*Evans v. Ottimo*,
469 F.3d 278 (2d Cir. 2006)....................................................................................................17

*Ewert v. eBay, Inc.*,
602 F. App'x 357 (9th Cir. 2015) ...........................................................................................19

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
No. 91-cv-4544, 1992 WL 170559 (S.D.N.Y. July 2, 1992).................................................25

*Fifty-Six Hope Rd. v. Jammin Java Corp.*,
No. 16-cv-5810, 2017 WL 2457487 (C.D. Cal. Jan. 25, 2017)............................................14

*First Fin. Sec. Inc. v. Freedom Equity Grp., LLC*,
No. 15-cv-1893, 2016 WL 1323104 (N.D. Cal. Apr. 5, 2016)..............................................11

*Fodor v. Blakey*,
No. 11-cv-8496, 2012 WL 12893985 (C.D. Cal. Feb. 21, 2012) .........................................19

*Franconero v. Universal Music Corp.*,
No. 02-cv-1963, 2003 WL 22990060 (S.D. N.Y. Dec. 19, 2003)........................................22

*Frank Lloyd Wright Found. v. Kroeter*,
697 F. Supp. 2d 1118 (D. Ariz. 2010) ...................................................................................18

*Free Range Content, Inc. v. Google Inc.*,
No. 14-cv-2329, 2016 WL 2902332 (N.D. Cal. May 13, 2016)....................................7, 8, 13, 24

*Future Ads LLC v. Gillman*,
No. 13-cv-0905, 2013 WL 12306479 (C.D. Cal. Dec. 23, 2013)..........................................12

*In re GlenFed Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ..................................................................................15

*Goldman v. Metro. Life Ins. Co.*,
    5 N.Y.3d 561 (2005) .............................................................................................23

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) ...................................................................25

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal. 4th 317 (2000) ..........................................................................................12

*Hebert v. Rapid Payroll, Inc.*,
    No. 02-cv-4144, 2005 WL 6172659 (C.D. Cal. Feb. 9, 2005) ..............................14

*Henneberry v. Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ...................................................................19

*Heredia v. Intuitive Surgical, Inc.*,
    No. 15-cv-2662, 2016 WL 6947590 (N.D. Cal. Nov. 28, 2016) ............................17

*Hickcox-Huffman v. US Airways, Inc.*,
    No.10-cv-5193, 2017 WL 4842021 (N.D. Cal. Oct. 26, 2017) ..............................10

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
    No. 14-cv-1921, 2014 WL 3897076 (N.D. Cal. Aug. 7, 2014) ................................9

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    No. 12-cv-8968, 2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ................................11

*Int'l Klafter Co. v. Cont'l Cas. Co.*,
    869 F.2d 96 (2d Cir. 1989) ..............................................................................20, 22

*Integrated Storage Consulting Servs. v. NetApp., Inc.*,
    No. 12-cv-2209, 2013 U.S. Dist. LEXIS 107705 (N.D. Cal. July 31, 2013) ..........7, 21

*Jenkins v. JP Morgan Chase Bank, N.A.*,
    216 Cal. App. 4th 497 (2013), *as modified* (June 12, 2013)..................................8

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
    115 Cal. App. 4th 168 (2004) ...............................................................................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF**

*Klein v. Chevron U.S.A., Inc.,*
202 Cal. App. 4th 1342 (2012) .................................................................23

*Koes v. Allstate Ins. Co.,*
No. 07-cv-6311, 2008 WL 11340377 (C.D. Cal. May 8, 2008)..................19

*Kregos v. Associated Press,*
3 F.3d 656 (2d Cir. 1993) .........................................................................15

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.,*
114 F. Supp. 3d 852 (N.D. Cal. 2015) .......................................................6

*Linear Tech. Corp. v. Applied Materials, Inc.,*
152 Cal. App. 4th 115 (2007) ...................................................................24

*Lansmont Corp. v. SPX Corp.,*
No. 10-cv-5860, 2011 WL 2463281 (N.D. Cal. June 20, 2011)...................8

*Lennar Homes of Cal., Inc. v. Stephens,*
232 Cal. App. 4th 673 (2014) ...................................................................14

*Levi Strauss & Co. v. Aetna Cas. & Sur. Co.,*
184 Cal. App. 3d 1479 (1986) ....................................................................7

*Lofton v. Verizon Wireless (VAW) LLC,*
No. 13-cv-5665, 2015 WL 1254681 (N.D. Cal. Mar. 18, 2015) .................11

*Lucas v. Hertz Corp.,*
875 F. Supp. 2d 991 (N.D. Cal. 2012) ......................................................13

*Lui v. Park Ridge at Terryville Ass'n, Inc.,*
601 N.Y.S. 2d 496 (1993)....................................................................21, 22

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.,*
181 Cal. App. 3d 122 (1986) ....................................................................23

*Masterson v. Sine,*
68 Cal. 2d 222 (1968) ..........................................................................20, 22

*McFarland v. Memorex Corp.,*
493 F. Supp. 631 (N.D. Cal. 1980) ...........................................................16

*McKnight v. Torres,*
563 F.3d 890 (9th Cir. 2009) ................................................................7, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

**DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF**

*Mega Life & Health Ins. Co. v. Super. Ct.*,
    172 Cal. App. 4th 1522 (2009) ...........................................................................17

*Mendes v. FedEx Ground Package Sys., Inc.*,
    No. 14-cv-3826, 2015 WL 217920 (N.D. Cal. Jan. 15, 2015).......................................21

*ML Direct, Inc. v. TIG Specialty Ins. Co.*,
    79 Cal. App. 4th 137 (2000) ...............................................................................21

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th 1305 (2005) ...........................................................................13

*California ex rel. Mueller v. Walgreen Corp.*,
    175 F.R.D. 631 (N.D. Cal. 1997) .........................................................................17

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ............................................................................14

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    No. 12-cv-8676, 2013 WL 2151478 (C.D. Cal. Mar. 4, 2013)......................................11

*Neal v. Select Portfolio Servicing, Inc.*,
    No. 15-cv-3212, 2016 WL 48124 (N.D. Cal. Jan 5, 2016).........................................23

*Noll v. eBay, Inc.*,
    282 F.R.D. 462 (N.D. Cal. 2012) .........................................................................17

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ....................................................................23

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*,
    157 Cal. App. 4th 835 (2007) .............................................................................17

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ..............................................................................23

*Pashman v. Aetna Ins. Co*,
    No. 13-cv-2835, 2014 WL 3571689 (N.D. Cal. July 18, 2014) ...............................21, 22

*Patterson v. Mortg. Elec. Registration Sys., Inc.*,
    585 F. App'x 380 (9th Cir. 2014) ..........................................................................8

*Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*,
    No. 12-cv-1608, 2015 WL 13309286 (C.D. Cal. June 22, 2015)..................................10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

*Pierry, Inc. v. Thirty-One Gifts, LLC*,
No. 17-cv-3074, 2017 WL 4236934 (N.D. Cal. Sept. 25, 2017)......................24

*Randall v. Guido*,
655 N.Y.S.2d 527 (1997)......................23

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001)......................20

*Richardson v. Reliance Nat'l Indem. Co.*,
No. 99-cv-2952, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ......................17

*San Diego Cty. Emps. Ret. Ass'n v. Maounis*,
749 F. Supp. 2d 104 (S.D.N.Y. 2010)......................20

*Scarola v. Verizon Commc'ns, Inc.*,
45 N.Y.S.3d 464 (2017)......................25

*Schaffer v. SunTrust Mortg., Inc.*,
No. 16-cv-0518, 2017 WL 3033398 (E.D. Tex. July 18, 2017) ......................18

*Shaev v. Baker*,
No. 16-cv-5541, 2017 WL 1735573 (N.D. Cal. May 4, 2017)......................6

*Shuting Kang v. Harrison*,
No. 17-cv-3034, 2017 WL 6558676 (N.D. Cal. Dec. 22, 2017)......................16

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
40 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................14

*Small v. Fritz Cos., Inc.*,
30 Cal. 4th 167 (2003) ......................15

*Smith v. Allstate, Ins. Co.*,
160 F. Supp. 2d 1150 (S.D. Cal. 2001)......................17

*SNS Bank N.V. v. Citibank N.A.*,
7 A.D. 3d 352 (N.Y. App. Div. 2004) ......................22

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*,
138 Cal. App. 4th 1215 (2006) ......................12

*Sud v. Sud*,
621 N.Y.S.2d 37 (1995)......................20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii.

**DEF. GOOGLE LLC'S MOTION TO DISMISS**
**CERTAIN CLAIMS IN AMEND. COMPLAINT**
**CASE NO. 5:17-CV-07082-BLF**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................................6

*Trustco Bank N.Y. v. S/N Precision Enters. Inc.*,
   650 N.Y.S.2d 846 (1996).............................................................................................23

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) .....................................................................10

*Valenzuela v. ADT Sec. Servs., Inc.*,
   820 F. Supp. 2d 1061 (C.D. Cal. 2010) ..............................................................10, 22

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................................15

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
   187 Cal. App. 4th 634 (2010) ....................................................................................14

*Wayne v. Staples, Inc.*,
   135 Cal. App. 4th 466 (2006) ....................................................................................13

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) .........................................................................9

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ......................................................................................12

*Wilhelm v. Pray, Price, Williams & Russell*,
   186 Cal. App. 3d 1324 (1986) ...................................................................................15

*Wilhelmina Artist Mgmt., LLC v. Knowles*,
   No. 601151/03, 2005 WL 1617178 (N.Y. Sup. Ct. June 6, 2005)..............................20

*Woods v. Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) .....................................................................13

*Xcellence, Inc. v. Arkin Kaplan Rice LLP*,
   No. 10-cv-3304, 2011 WL 1002419 (S.D.N.Y. Mar. 15, 2011)..................................18

*Yvanova v. New Century Mortg. Corp.*,
   62 Cal. 4th 919 (2016) ................................................................................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ix.

**DEF. GOOGLE LLC'S MOTION TO DISMISS**
**CERTAIN CLAIMS IN AMEND. COMPLAINT**
**CASE NO. 5:17-CV-07082-BLF**

**Statutes**

Cal. Civ. Code
§ 1638 ..........................................................................................................20

Cal. Penal Code
§ 496 ..........................................................................................................1, 19

N.Y. Gen. Bus. Law
§ 349 ..........................................................................................................1, 25

**Other Authorities**

Fed. R. Civ. P.
Rule 9(b) ..........................................................................................15, 16, 19
Rule 12(b)(6) ..........................................................................................10
Rule 12(f) ..........................................................................................10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

x.

**DEF. GOOGLE LLC'S MOTION TO DISMISS**
**CERTAIN CLAIMS IN AMEND. COMPLAINT**
**CASE NO. 5:17-CV-07082-BLF**

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 21, 2018, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 3, 5th Floor, Defendant Google LLC ("Google") will move to dismiss certain claims in the Amended Complaint (the "AC") of AdTrader, Inc. ("AdTrader"), Classic and Food EOOD ("Classic"), LML Consult Ltd. ("LML"), Ad Crunch Ltd. ("Ad Crunch"), Fresh Break Ltd. ("Fresh Break"), and Specialized Collections Bureau, Inc. ("SCB") (collectively "Plaintiffs"). Google's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and upon all such other matters presented to the Court.

### STATEMENT OF RELIEF SOUGHT

Dismissal with prejudice of causes of action two through fifteen for failure to state a claim.

### STATEMENT OF ISSUES TO BE DECIDED

1. Has Plaintiff AdTrader stated a cause of action for breach of the implied covenant of good faith and fair dealing in connection with Google's termination of its AdX account?

2. Has Plaintiff AdTrader stated a cause of action for breach of the implied duty to perform with reasonable care in connection with Google's termination of its AdX account?

3. Has Plaintiff AdTrader stated a cause of action for intentional interference with contract or prospective economic advantage in connection with Google's termination of its AdX account?

4. Has Plaintiff AdTrader alleged sufficient facts to claim that Google's limitation of liability provision could be unconscionable?

5. Have Plaintiffs stated a cause of action for fraud, negligent misrepresentation, a violation of California Penal Code Section 496(c), breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the implied duty to perform with reasonable care, unjust enrichment, unfair competition, or violation of New York General Business Law Section 349 in connection with Google's alleged failure to pay advertiser refunds?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs bring two different lawsuits in one action. The first is a meritless, individual claim that Google wrongfully terminated AdTrader from "AdX"—a service that web ***publishers*** (website and online content creators) use to obtain advertisements to display on their pages. In fact, AdTrader's termination was entirely justified by its violations of Google's policies. The second is a putative class action asserting that Google failed to pay certain refunds to ***advertisers***, including all Plaintiffs, that used Google to run online ads. These advertiser-side claims also fail for numerous reasons, including because the governing agreements provide for no such refunds. Thus, even accepting Plaintiffs' (frequently false) allegations, the bulk of their claims fail as a matter of law and should be dismissed.

On the publisher side, AdTrader asserts numerous theories alleging that Google breached the implied covenant of good faith and fair dealing, but these theories attempt to impose extra-contractual duties on Google, are redundant with AdTrader's breach of contract claim, and ignore this Court's prior rulings about how the implied covenant applies to Google's advertising services. AdTrader likewise brings a duplicative claim for breach of the implied duty to perform with reasonable care, which is impermissibly redundant with its breach of contract claim. Finally, AdTrader asserts claims for interference with its current and prospective contractual relationships with hundreds of web publishers, but provides almost no information about the nature, value, or future viability of these relationships; whether they were even active during the relevant timeframe; or whether Google caused AdTrader to breach its contracts or sustain contractual damages.

All of Plaintiffs' class claims based on Google's alleged failure to provide refunds to Plaintiffs are similarly unsustainable. They are flawed for various reasons, including: 1) Plaintiffs' fraud claims fail to adequately allege that Google's representations regarding refunds were inaccurate as to either the AdWords or AdX Buyer agreements, were "false when made" with regard to any agreement, or that Plaintiffs materially relied upon them; 2) Plaintiffs concede that the advertisers' contracts with Google do not contain refund terms; 3) Plaintiffs cannot use the implied covenant to impose extra-contractual obligations; and 4) Plaintiffs have no unjust enrichment claim under settled law.

For all these reasons, the Court should dismiss those of Plaintiffs' claims discussed below.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

## II. STATEMENT OF FACTS

### A. Google provides an online advertising marketplace for publishers and advertisers.

Google has services for 1) publishers who want to sell ad space on their webpages to fund the content they create and 2) advertisers, or intermediaries who assist them, who want to buy ad space to display ads online. (*See* ECF 29 ("AC") ¶¶ 24-32.) Google's relevant services are discussed below.

#### 1. Google's publisher-side products and services.

Website publishers use Google's "AdX" service to sell ad space on their pages, particularly larger and more sophisticated ones that want more control than that offered by other Google publisher-side products (like AdSense, which this Court dealt with in *Free Range Content, Inc. v. Google, Inc.*, No. 14-cv-2329). (AC ¶¶ 26-28.) Publishers who signed up to use AdX around June 2014, including AdTrader, agreed to the Google Services Agreement ("AdX Publisher Agreement"), which is governed by California law. (AC ¶ 40; *see also id.* Ex. 1.) Pursuant to this contract, AdX publishers agree to comply with Google policies regarding the content and layout of their pages, and agree that they can be suspended "at any time" for non-compliance. (*Id.* Ex. 1 §§ 3.1-3.2.) They agree that Google's payments "will be based on Google's accounting which may be filtered to exclude (i) invalid queries, impressions, conversions, or clicks, and (ii) any amounts refunded to advertisers in connection with the Company's failure to comply with this Agreement, as reasonably determined by Google." (*Id.* ¶ 41; *see also id.* Ex. 1 § 8.2(b).) The contract also provides various termination rights, including termination for material breaches that cannot be remedied and for "any or no reason upon 30 days prior notice." (*Id.* Ex. 1 § 13.2(b).) Additionally, the AdX Publisher Agreement contains a Limitation of Liability provision that states in pertinent part that "NEITHER PARTY WILL BE LIABLE UNDER THIS AGREEMENT FOR LOST REVENUES OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES . . . ." (*Id.* ¶ 86; *id.* Ex. 1 § 11(a).) The agreement contains an integration clause and can only be modified in writing. (*Id.* Ex. 1 § 14.7.) The terms of the agreement do not include a right to an appeal if Google terminates a publisher.

#### 2. Google's advertiser-side products and services.

Google's offerings for advertisers, like SCB, and the intermediaries who assist them, like AdTrader, include the AdWords Advertising Program ("AdWords") (AC ¶ 24), DoubleClick Ad

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

Exchange Buyer ("AdX Buyer") (*id.* ¶¶ 26-28), and DoubleClick Bid Manager ("DBM") (*id.* ¶¶ 5, 27-28). AdWords advertisers can display ads on sites that use Google publisher-side platforms (like AdX or AdSense); AdX Buyer allows ad networks and similar intermediaries to place ads both inside and outside of the Google network; and DBM offers access to publisher inventory from AdX and multiple "non-Google controlled ad exchanges." (*Id.* ¶¶ 25-32.) To use the services, advertisers must agree to the service's respective terms. For AdWords, the Google Inc. Advertising Program Terms ("AdWords Agreement") governs (including for SCB and AdTrader), and contains a California choice-of-law provision. (AC ¶ 45; *see also id.* Ex. 4.) For AdX Buyer, users (including AdTrader) must agree to the DoubleClick Ad Exchange Master Service Agreement ("AdX Buyer Agreement"), which incorporates terms and conditions called the "DoubleClick Ad Exchange Program Terms," and contains a California choice-of-law provision. (AC ¶ 43; *see also id.* Ex. 2.) Both the AdWords and AdX Buyer Agreements include a provision stating "Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes and that its sole remedy is to make a claim for advertising credits . . . ." (AC Ex. 4 § 7; *id.* Ex. 2 § 6.) Finally, for DBM users (including AdTrader) the DoubleClick Advertising Platform Agreement ("DBM Agreement") governs, and contains a New York choice-of-law provision. (*Id.* ¶ 44; *see also id.* Ex. 3.) All three agreements have integration clauses and can only be modified in writing expressly stating they are amending those terms. (*Id.* Ex. 2 § 12; *id.* Ex. 3 § 10; *id.* Ex. 4 § 12.)

**B.    Plaintiffs used Google's advertising- and publishing-side services.**

SCB advertised its business using AdWords (*id.* ¶ 65), entered into the AdWords Agreement (*see id.* ¶¶ 110, 246), and alleges it performed its obligations under the agreement (*id.* ¶ 248).

Google also permits businesses, like AdTrader, to manage ad inventory for other publishers and/or ad campaigns for other advertisers. (*See id.* ¶¶ 34-35, 37-39.) These businesses are called Network Partner Managers ("NPM") on the publisher side, and "advertising agencies" or "advertising networks" on the advertising side. (*Id.* ¶¶ 34, 38.) Plaintiffs allege that, over the past three years, AdTrader managed advertising for both "advertisers and web publishers." (*Id.* ¶¶ 34-35, 46, 51, 58-59.) Plaintiffs allege AdTrader entered into the AdWords Agreement (*id.* ¶ 45), AdX Buyer Agreement (*id.* ¶ 43), and DBM Agreement (*id.* ¶ 44), and that Classic, LML, Ad Crunch, and Fresh Break are

advertisers that are allegedly third-party beneficiaries of these agreements with AdTrader (*id.* ¶ 247).

On the publisher side, the Amended Complaint discusses one of AdTrader's publisher clients, DingIt.tv ("DingIt"), in some detail, and also alleges that AdTrader "had contractual relationships with over 200 other web publishers," although it does not purport to include a full list of such publishers. (*Id.* ¶¶ 66, 172 (". . . over 200 web publishers . . . *includ[ing]* . . .") (emphasis added).) On the advertiser side, Plaintiffs allege that AdTrader used at least DBM to manage its advertising clients' bidding and ad placement on publishers' websites. (*Id.* ¶¶ 37, 48, 91, 95.)

### C. Google terminated AdTrader's publisher-side account.

On May 19, 2017, Google terminated AdTrader's publisher-side AdX account in accordance with Section 13.2 of the AdX Publisher Agreement (*id.* ¶¶ 71, 73; *see also id.* Ex. 1 § 13.2) for clear and substantial violations of Google's policies. Although the terms of the relevant agreement include no right to an appeal, AdTrader requested Google review and reverse its decision. (*Id.* ¶ 74.) Google declined to reinstate AdTrader's account. (*Id.* ¶ 76.) At the time of termination, AdTrader allegedly had a balance of $476,622.69 in its publisher-side account, which Google withheld. (*Id.* ¶¶ 71, 80.) Plaintiffs allege that Google has not terminated the individual accounts of AdTrader's publisher clients. (*Id.* ¶ 82.) After terminating AdTrader's publisher account, Plaintiffs allege, on information and belief, that Google also contacted one of AdTrader's publisher clients, DingIt, "to begin a direct relationship," though Plaintiffs never allege such a relationship was entered into. (*Id.* ¶ 85.)

### D. Plaintiffs allegedly did not receive full refunds from Google.

AdTrader concedes that its DBM Agreement contains no language about the parties' obligations when Google determines advertisers spent money on websites with invalid activity. (*See, e.g., id.* ¶¶ 253, 254-255.) However, on May 24, 2017, an AdTrader employee secretly recorded[1] a phone call where a Google representative allegedly said all of the amounts withheld from AdTrader's publisher-side account would be refunded to the affected advertisers, whether or not Google granted AdTrader's appeal from termination. (*Id.* ¶ 89.) During the relevant time period, AdTrader purportedly ran its advertiser clients' ads on the websites of its publisher clients, but AdTrader allegedly did not

---

[1] Google expressly reserves all rights associated with the unauthorized recording of this call.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

receive refunds or credits when Google terminated its publisher-side account. (*Id.* ¶¶ 91-92.) After its termination, AdTrader reviewed its own records, which allegedly show that, for years (*see id.* ¶ 51), AdTrader's DBM advertising clients had never received refunds or credits from Google for invalid activity despite records showing that Google withheld small amounts for invalid activity every month from its publisher clients (*id.* ¶ 93). AdTrader claims that it confirmed it should have, but did not, receive refunds in a June 2, 2017 call with a different Google representative and through an August 25, 2017 Wall Street Journal article.[2] (*Id.* ¶¶ 112-14, 116.) Plaintiffs also allege "on information and belief" that SCB did not receive "full refunds" from Google for its AdWords account. (*Id.* ¶ 208.) However, AdTrader admits that, "over the years," it *did* receive refunds in its **AdWords** account. (*Id.* ¶ 94.) Plaintiffs never allege that AdTrader or SCB made any claim for credits, as expressly required by Google's advertiser-side agreements (*id.* Ex. 2 § 6, Ex. 4 § 7), and AdTrader continues to use Google's advertiser-side products (*id.* ¶¶ 48, 95, 98).

## III.   ARGUMENT

### A.   The Court should dismiss AdTrader's publisher-side claims discussed below.

#### 1.   None of Plaintiff's various bases for alleging a breach of the implied covenant of good faith and fair dealing are viable (Count II).

AdTrader alleges a hodgepodge of theories to support its implied covenant claim, including that Google: 1) arbitrarily withheld amounts in AdTrader's publisher account, but did not terminate AdTrader's clients who displayed ads with the same layout and content (*id.* ¶ 151); 2) failed to provide AdTrader a meaningful appeal after termination (*id.* ¶ 152); 3) misrepresented that the money withheld from AdTrader was refunded to advertisers (*id.* ¶ 153); 4) should only have withheld the unpaid amounts tied to invalid activity (*id.* ¶ 154); and 5) terminated AdTrader's account close to the date it would otherwise have paid AdTrader (*id.* ¶¶ 156-58). Each of these theories fails.

AdTrader's <u>first theory</u>—that Google withheld from AdTrader, but not from other publishers

---

[2] Google requests the Court take judicial notice of Exhibit A to the Wong Declaration as incorporated by reference into the Amended Complaint. (*See*, *e.g.*, AC ¶ 8 (discussing contents of Wall Street Journal article, attached hereto as Exhibit A).) The article is proper for judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on motion to dismiss "courts *must* consider . . . documents incorporated into the complaint by reference") (emphasis added); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 864 & n.4 (N.D. Cal. 2015) ("independent online articles" incorporated by reference); *Shaev v. Baker*, No. 16-cv-5541, 2017 WL 1735573, at *7 (N.D. Cal. May 4, 2017) (newspaper article incorporated by reference).

who would have had the same violations—fails, because this Court has already ruled that alleged selective enforcement is not a sufficient basis to plead bad faith. *See Free Range Content, Inc. v. Google Inc.*, No. 14-cv-2329, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016).[3] In fact, AdTrader has not identified any authority showing that it can point to other publishers' unpunished bad acts to establish Google's bad faith. Either Google exhibited bad faith ***toward AdTrader*** or it did not.

AdTrader's <u>second theory</u> is that Google "refuse[d] to provide any meaningful opportunity to appeal Google's decision." (AC ¶ 152.) But the AdX Publisher Agreement does not contain a right to appeal, let alone a right to any particular type of appeal, or an appeal based on access to specific Google data or records. (*Id.* ¶¶ 40-42; *id.* Ex. 1.) "[T]he implied covenant of good faith and fair dealing's application is limited to assuring compliance with the express terms of the contract, and ***cannot be extended to create obligations not contemplated by the contract***." *Integrated Storage Consulting Servs. v. NetApp., Inc.*, No. 12-cv-2209, 2013 U.S. Dist. LEXIS 107705, at *23-24 (N.D. Cal. July 31, 2013) (internal quotations and citations omitted) (emphasis added); *see also McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (same). AdTrader attempts to overcome this flaw by pointing to a Help Center page, claiming that the extra-contractual language there created a right *not included* in the parties' agreement. (AC ¶¶ 74, 152; *id.* Ex. 6.) But this would turn on its head the accepted tenet that courts will not add terms to a contract about which the contract is silent. *See Ben-Zvi v. Edmar Co.*, 40 Cal. App. 4th 468, 473 (1995) (improper to imply a residency requirement when such a requirement was not among the covenants actually stated in the agreement); *Dameron Hosp. Ass'n v. AAA N. Cal., Nev., & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569-70 (2014) ("The . . . contract's silence as to any obligation to assist in collection from third party tortfeasors does not allow us to graft a new obligation into the agreement."); *Levi Strauss & Co. v. Aetna Cas. & Sur. Co.*, 184 Cal. App. 3d 1479, 1486 (1986) (same); *see also* AC Ex. 1 § 14.7 (AdX Publisher Agreement is fully integrated). While the Help Center language indicates that, as a courtesy, Google allows publishers to appeal their terminations, it does not create a new contractual obligation. Even if it did, AdTrader's

---

[3] Plaintiff also failed to plead facts showing that any of its publisher clients were in "full compliance" (AC ¶ 151), alleging only that several of its publisher clients continued to monetize their content through AdX (*id.* ¶ 82), and asserting—without factual basis—that none of its publisher clients were terminated (*id.* ¶¶ 82, 151).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

implied covenant claim still fails because (again) providing publishers a right to appeal does not mean they can exercise that right in the precise manner they please.

AdTrader's <u>third theory</u>—that Google misrepresented that it refunded advertisers the funds withheld when Google terminated AdTrader as a publisher—also fails. What Google did with allegedly withheld amounts ***after*** withholding does not affect AdTrader or any benefit it did or did not receive from the contract. In other words, whatever harm AdTrader alleges it suffered from Google's withholding *already occurred*, regardless of what Google later did with the allegedly withheld amounts.[4] AdTrader's third theory is, thus, immaterial and a red herring. *See, e.g.*, *Patterson v. Mortg. Elec. Registration Sys., Inc.*, 585 F. App'x 380, 380-81 (9th Cir. 2014) (court properly dismissed implied covenant claim "because [plaintiff] failed to allege sufficient facts showing that defendants interfered with her right to receive the benefits of the loan transaction at issue"); *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 528 (2013), *as modified* (June 12, 2013), *and disapproved on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016) (dismissing implied covenant claim for failure "to satisfy the fundamental prerequisite . . . [that defendant's] actions did something to interfere with [plaintiff's] right to receive the benefits of the agreement").

AdTrader's <u>fourth theory</u>—that Google should only have withheld money directly linked to invalid activity (AC ¶ 154)—is a barely-repackaged version of its breach of contract claim and fails as duplicative. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see also Lansmont Corp. v. SPX Corp.*, No. 10-cv-5860, 2011 WL 2463281, at *4-5 (N.D. Cal. June 20, 2011) (dismissing implied covenant claim as "superfluous"). Additionally, this Court rejected that argument in *Free Range.* There, the Court ruled that, because the older AdSense T&C did not invite *subjective* withholding determinations, the agreement either contractually permitted the withholding or it did not, and no additional implied covenant claim could lie. *See Free Range*, 2016 WL 2902332, at *16 ("the TOS require Google to make a purely subjective determination in good faith, while the T&C require Google to make an objectively reasonable determination without an accompanying good

---

[4] To the extent AdTrader's theory relies on its nonsensical reading of the AdX Publisher Agreement, in which Google can only withhold when there is *both* invalid activity *and* Google refunds the withheld amounts to affected advertisers, then, as with AdTrader's fourth theory, this claim collapses into and becomes impermissibly redundant with its breach of contract claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

faith requirement," so "Plaintiffs' claims regarding withholding under the T&C are subsumed by their breach of contract claim") (citations omitted). The same rationale applies here to the AdX agreement.

AdTrader's <u>fifth and final theory</u>—that Google waited to withhold until right before it would otherwise have paid AdTrader—is conclusory and should be disregarded. *See, e.g.*, *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 993 (N.D. Cal. 2010) ("Conclusory allegations without more are insufficient to defeat a motion to dismiss.") (citations omitted). AdTrader fails to point to a single fact showing that Google learned of AdTrader's violations, but then waited to terminate until just before AdTrader would have received payment. AdTrader also fails to provide any factual basis for its allegation that Google does this as a matter of course: while AdTrader identifies several publishers who allegedly were also terminated close to their payment dates, AdTrader neither provides sufficient facts to show that this was a prevalent publisher experience, nor alleges that Google discovered these few publishers' violations *prior to the time* it terminated them. (AC ¶ 156.) The fact that Google detects "the vast majority of invalid traffic in real time" and "proactive[ly] monitor[s]" its networks (*id.* ¶ 157) does not change this analysis or support an inference that Google systematically delays terminations.[5]

### 2. AdTrader's claim for breach of the implied duty of reasonable care fails (Count III).

Google did not breach the implied duty to perform with reasonable care by allegedly failing to reasonably identify invalid activity and withhold only advertising revenues related to it. (AC ¶ 163.)

<u>First</u>, the alleged breach here is duplicative of AdTrader's claim for breach of contract. As AdTrader notes, the AdX Publisher Agreement provides that Google shall pay AdTrader "based on Google's accounting which may be filtered to exclude (i) invalid queries, impressions, conversions, or clicks and (ii) any amounts refunded to advertisers in connection with Company's failure to comply with this Agreement, as reasonably determined by Google." (*Id.* Ex. 1 § 8.2(b).) AdTrader asserts in its breach of contract claim that Google breached this term when it "failed to reasonably determine

---

[5] If it is meant to be a sixth theory, Plaintiff's confusing claim that Google hypothetically "*could* concede that it had unjustly suspended/terminated AdTrader's account," but "nonetheless refuse to pay AdTrader [publisher] what it was owed" (AC ¶ 155) (emphasis added), fares no better. Google has not found Plaintiff in compliance here and a breach of the implied covenant cannot be based on a hypothetical. *See Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. 14-cv-1921, 2014 WL 3897076, at *4 (N.D. Cal. Aug. 7, 2014) (dismissing claims because "allegations of potential future harm are insufficient to support claims for . . . breach of the covenant of good faith and fair dealing").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

how much to withhold in accrued earnings from AdTrader . . . Google simply decided to withhold the entire amount of the accrued earnings . . . ." (*Id.* ¶ 144.) The same alleged conduct—based on the same section of the AdX Publisher Agreement—also forms the basis of AdTrader's claim here. (*Id.* ¶ 166-167 ("Google breached these duties [of reasonable care] by withholding all of AdTrader's accrued AdX earnings, instead of only those earnings attributable to any invalid queries . . . Had Google used reasonable care . . . it would have not withheld the entirety of AdTrader's accrued AdX earnings").) Answering the question of whether Google breached its express duty to "reasonably determin[e]" what revenues were due to invalid impressions necessarily also answers the question of whether Google performed that duty with reasonable care. Thus, this claim is duplicative and fails. *Hickcox-Huffman v. US Airways, Inc.*, No.10-cv-5193, 2017 WL 4842021, at *4 (N.D. Cal. Oct. 26, 2017) (dismissing claims that "rest[] on exactly the same legal theory as [plaintiff's] breach of contract claim").[6]

Second, Count III is an improper attempt to transmute AdTrader's breach of contract claim into a tort action. (AC ¶ 163 ("AdTrader brings this claim in the alternative," to "elect between contract and tort remedies").) In California, a plaintiff "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations except where the breach violates an important social policy meriting tort remedies." *Peregrine Pharms., Inc. v. Clinical Supplies Mgmt., Inc.*, 2015 WL 13309286, at *6 (C.D. Cal. June 22, 2015). Since the duty to perform with reasonable care is an implied term of the contract itself, a breach of that duty without additional misconduct, cannot be tortious. *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1071-72 (C.D. Cal. 2010).

### 3. AdTrader's claim that Google intentionally interfered with contracts fails (Count IV, apart from DingIt).

A claim for intentional interference with contract requires Plaintiff show 1) a valid contract between itself and a third party, 2) the defendant's knowledge of the contract, 3) intentional acts by the defendant to induce a breach or otherwise disrupt the contract, 4) an actual breach or disruption, and 5) damages. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). AdTrader fails to adequately allege the fourth and fifth elements.

---

[6] Duplicative claims can be dismissed under Rule 12(b)(6) or stricken as redundant under Rule 12(f). *Hickcox-Huffman*, 2017 WL 4842021, at *4. To avoid cumulative briefing, Google is not filing a separate motion to strike as it would present the same arguments made here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

AdTrader groups over two hundred of its clients under the umbrella of "Web Publishers." (*See e.g.*, AC ¶ 172).[7] However, AdTrader alleges few details about its relationship with these companies—primarily the URLs serviced (*id.*) and the form of contract used (*id.* at ¶ 173)—and omits specific allegations, including their value, whether the individual Web Publishers were satisfied with AdTrader's work and intended to continue the relationship (and how AdTrader knew that), or even whether the relationship was active during the relevant timeframe. AdTrader merely asserts that it "was unable to operate in the same capacity and deliver the same results to the Web Publishers." (*Id.* at ¶ 176.) This is insufficient: a plaintiff "cannot simply allege that [a defendant] has interfered with its business model; … it must allege actual interference with actual contracts, such that the result is a specific breach, not merely general damage to the business." *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. 12-cv-8968, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. 12-cv-8676, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013) (same). Unlike its detailed allegations with respect to AdTrader's relationship with DingIt (on which Google has not moved), AdTrader has not alleged specific facts identifying a particular disruption or breach of a specific contractual relationship with respect to any Web Publishers. This failure is dispositive.

Further, AdTrader fails to allege facts establishing what damages (if any) would stem from Google's purported disruption, including the size of the respective contracts and whether (and at what level) the Web Publishers intended to maintain the relationships. Without these, AdTrader has not shown it suffered any actual loss from Google's conduct, and the Court should dismiss this claim. *First Fin. Sec. Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893, 2016 WL 1323104, at *2 (N.D. Cal. Apr. 5, 2016) (dismissing complaint for failure to plead "particular facts" showing damages).

### 4. AdTrader's claim for interference with prospective economic advantage similarly fails (Count V, apart from DingIt).

Tortious interference with economic advantage has five elements: 1) an economic relationship between the plaintiff and a third party with the probability of a future economic benefit; 2) the

---

[7] As this count combines many separate counts of interference as to each Web Publisher, the Court can properly dismiss as to the counterparties for which it is inadequately pled. *Cf., e.g., Lofton v. Verizon Wireless (VAW) LLC*, No. 13-cv-5665, 2015 WL 1254681, at *6 (N.D. Cal. Mar. 18, 2015).

defendant's knowledge of the relationship; 3) intentional acts on the part of the defendant designed to disrupt the relationship; 4) actual disruption; 5) damages. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996). Additionally, the defendant's conduct must be independently "wrongful by some measure beyond the fact of the interference itself." *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1220 (2006) (internal quotation and citations omitted). The same threadbare allegations regarding AdTrader's relationships with Web Publishers that were fatal to its claim above sink this claim as well. *See In re Centerstone Diamonds, Inc.*, 2014 WL 1330186, at *6 (Bkr. C.D. Cal. Apr. 2, 2014) (complaint "fail[ed] to sufficiently allege the specific economic relationship at issue and the specific economic advantage likely to result therefrom"); *Future Ads LLC v. Gillman*, 2013 WL 12306479, at *9 (C.D. Cal. Dec. 23, 2013) (dismissing intentional interference claim where the "[c]omplaint was far too vague").

AdTrader has also failed to show that the challenged actions were "independently wrongful," which requires that they be "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Stevenson*, 138 Cal. App. 4th at 1220 (internal quotation and citations omitted). AdTrader attempts to make this showing by arguing that Google breached the implied covenant of good faith and fair dealing. (AC ¶ 188.) But AdTrader failed to state a claim for breach of the implied covenant (Section III(A)(1)), and a court in this district has explained that "allegations of breach of implied covenant . . . do not satisfy the independently wrongful conduct element for intentional interference." *Bus. Integration Tech v. MuleSoft Inc.*, No. 11-cv-4782, 2012 WL 13041534, at *6 (N.D. Cal. Mar. 23, 2012).[8] A breach of the implied covenant is a type of breach of contract—it is not "independently wrongful," and cannot form the basis of a tortious interference claim. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 327 (2000); *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 181-82 (2004). Similarly, (as explained in more detail in Section III(A)(2)) Google's alleged breach of the implied duty to perform with reasonable care is yet another variation of AdTrader's breach of contract claim. Plaintiff also alleges that Google: 1) defrauded its advertisers; and 2) violated the UCL. (AC ¶ 188.) But as explained in Sections III(B)(1) and (8) below,

---

[8] *But see Darnaa, LLC v. Google, Inc.*, No. 15-cv-3221, 2015 WL 7753406, at *7 (N.D. Cal. Dec. 2, 2015).

these claims are deficient and should be dismissed. Even if that were not the case, the allegedly wrongful conduct pled in those causes of action involves Google's actions towards **advertisers**, and is in no way connected to the supposed interference AdTrader alleges here, in its capacity as a **publisher**. Thus, AdTrader has failed to show any independent wrongfulness, and this count should be dismissed.

### 5. AdTrader's claim for declaratory relief fails (Count VI).

#### a. The limitation of liability clause is not procedurally unconscionable.

Procedural unconscionability exists only where a contract imposes surprise or oppression on the challenging party. *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007); *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005). The Amended Complaint does not allege surprise[9] and only alleges that the provision is procedurally unconscionable because "it is presented as a take-it-or-leave-it provision." (AC ¶ 198.) Not so.

Courts routinely enforce such form agreements. *See, e.g.*, *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1187 (N.D. Cal. 2012) (enforcing Google's AdWords contract); *Free Range*, 2016 WL 2902332, at *12-14 (enforcing 30-day dispute requirement). Indeed, a form agreement is only oppressive when "the weaker party lacks . . . *any realistic opportunity to look elsewhere for a more favorable contract*; he must either adhere to the standardized agreement or *forego the needed service*." *Morris*, 128 Cal. App. 4th at 1320 (internal quotation and citation omitted) (emphasis in original); *see also Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("no oppression . . . even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices"); *Darnaa*, 2015 WL 7753406, at *2 (only slight procedural unconscionability because plaintiff "was free to take its video content elsewhere"). AdTrader perfunctorily alleges that "Google has a virtual monopoly in the field of on-line advertising" (AC ¶ 198), but does not allege facts showing that AdX was its only option for website monetization. In fact, it concedes that other advertising platforms exist elsewhere in the Amended Complaint. (*See, e.g.*, AC ¶ 4 (AdTrader helps publishers monetize on

---

[9] Nor could it, given that surprise is defined in California as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1004 (N.D. Cal. 2012) (internal quotations and citations omitted). Far from being "hidden in the prolix printed form," the provision at issue here is set out in <u>all caps</u> as a separate term in the AdX Publisher Agreement.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

numerous platforms, including AdX), ¶ 32 (DBM allows advertisers to "buy inventory on both AdX and also on *non-Google controlled ad exchanges*") (emphasis added), ¶¶ 218, 238 (advertisers can buy ad space on "competing platforms").)

### b. It is also not substantively unconscionable.

Even a lenient reading of the Amended Complaint shows, at most, minimal procedural unconscionability, requiring allegations of considerable substantive unconscionability to avoid enforcement. *See*, *e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006). A party showing "only a low level of procedural unconscionability . . . must have established a *high* level of substantive unconscionability." *Lennar Homes of Cal., Inc. v. Stephens*, 232 Cal. App. 4th 673, 690 (2014) (internal quotations and citations omitted) (emphasis in original). A contractual term is substantively unconscionable only if it is "so one-sided as to shock the conscience, or [ ] impose harsh or oppressive terms." *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647-48 (2010) (internal quotations omitted). Substantive unconscionability "must be based on more than simple unfairness or unreasonableness; . . . the contract [must be] a bargain 'no man in his sense and not under delusion would make . . . and as no honest and fair man would accept.'" *Hebert v. Rapid Payroll, Inc.*, No. 02-cv-4144, 2005 WL 6172659, at *6 (C.D. Cal. Feb. 9, 2005) (citation omitted).

Courts routinely find that limitation of liability provisions are enforceable—especially when one party offers its services for free. *See*, *e.g.*, *Darnaa*, 2015 WL 7753406, at *5 (Google's limitation of liability provision not substantively unconscionable because such provisions "have long been recognized valid in California") (internal quotation and citations omitted); *Hebert*, 2005 WL 6172659, at *6 ("[provision preventing Defendant from paying more than it received] is not substantively unconscionable").[10] The limitation of liability clause here expressly *applies equally to both parties* (*see* AC Ex. 1 ¶ 11), and "[m]utual provisions are not substantively unconscionable because they do not sanction one-sided results." *Fifty-Six Hope Rd. v. Jammin Java Corp.*, No. 16-cv-5810, 2017 WL 2457487, at *11 (C.D. Cal. Jan. 25, 2017) (citations omitted)). AdTrader claims the provision is

---

[10] In fact, courts have specifically sanctioned provisions like this one that limit the amount recoverable to the amount a party paid or received for specific services under a contract. *See Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

"transparently one-sided in favor of Google," because there is no way "an AdX publisher's conduct could conceivably cause more-than-compensatory damages to Google." (AC ¶¶ 195-196.) AdTrader then claims, *with absolutely no factual support*, that "Google [has never] experienced a material loss in revenue from advertisers as a result of an ad running on a publisher webpage that contained material thought by some to be inappropriate or offensive." (*Id.* ¶ 195.) This is simply untrue. When ads run on pages containing highly inappropriate or offensive material, Google suffers reputational damage that translates directly into lost future revenue. For example, advertisers do not want their products linked to pornography or violent content and, if they believe Google is unable to prevent their ads from appearing on such pages, they will reduce or eliminate their Google advertising.

**B.** **All of Plaintiffs' class claims are precluded as a matter of law.**

**1.** **The advertiser Plaintiffs fail to state a claim for fraud (Count VII).**

Under California or New York law, a plaintiff alleging fraud must plead: 1) a misrepresentation of material fact, 2) made with knowledge of its falsity, 3) with an intent to induce reliance, 4) on which plaintiff justifiably relies, and 5) resulting in damage to plaintiff. *See, e.g.*, *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (applying New York law). "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986) (citation omitted); *Bramex Assocs., Inc. v. CBI Agencies, Ltd.*, 540 N.Y.S.2d 243, 244 (1989). As detailed below, Plaintiffs have failed to allege sufficient facts to establish these elements in a manner that satisfies Rule 9(b), and the Court should dismiss this claim.

**a.** **Plaintiffs do not adequately allege that Google made any false representations concerning either AdWords or AdX.**

Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation and citation omitted). Plaintiff must allege *facts* demonstrating that the alleged misleading statements were actually false. *See In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

Plaintiffs fail to allege any facts showing that Google's statements about crediting advertisers

were false for advertisers using either <u>AdWords</u> or <u>AdX</u> Buyer. Instead, they rely exclusively on allegations about DBM. (*See, e.g.*, AC ¶¶ 91 ("AdTrader *used DBM* to have . . . its advertising clients run advertisements on the websites of AdTrader's publishers"), 92 ("AdTrader never got any refunds or credits . . . *through DBM* "), 97 (Criteo . . . did not have "any evidence of it having received refunds . . . for advertising expenditures it made *through DBM*") (emphases added).) This reflects a marked shift from Plaintiffs' original complaint, in which they did not distinguish between DBM and other services. (*Compare, e.g.*, Compl., ECF No. 1 ¶¶ 76-77 ("AdTrader . . . bought inventory . . . using *AdWords and DBM* . . . AdTrader never got any refunds or credits from Google for running these advertisements.") (emphasis added) *with* AC ¶ 91 (*quoted above*).) This winnowing suggests that, as Plaintiffs continued to investigate, they realized they lacked facts to support their original allegation.

In fact, AdTrader even admits that it <u>*did*</u> receive credits in its AdWords account. (*Id.* ¶ 94.) To the extent Plaintiffs base their fraud claim as it pertains to AdWords on Plaintiff SCB's experience, Plaintiffs' hedged allegations fail to adequately plead falsity, speculating only that "it is *likely* that SCB did not receive at least full refunds or credits . . . " (*Id.* ¶ 208 (emphasis added).) Courts reject these types of conclusory allegations. *See, e.g.*, *Shuting Kang v. Harrison*, 2017 WL 6558676, at *5 (N.D. Cal. Dec. 22, 2017) ("vague or conclusory allegations are insufficient to satisfy Rule 9(b)") (citation omitted); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 637 (N.D. Cal. 1980) (same). Likewise, to the extent Plaintiffs base their fraud claim as it pertains to AdWords on the experiences of AdTrader's advertiser clients, whom they claim did not receive credits in their AdWords accounts (*see* AC ¶ 92), these allegations also fail to satisfy Rule 9(b) for lack of particularity: Plaintiffs do not allege the "who" (which advertisers placed ads?), the "what" (on which of AdTrader's publisher sites?), or the "when" (whether these advertisers placed their ads during the period for which AdTrader did not receive payment). In other words, Plaintiffs fail to identify even one transaction in which there is a clear correlation between Google's withholding and the alleged non-occurrence of an AdWords refund. Plaintiffs also do not allege they did not receive credits through AdX Buyer.

> **b.** **Plaintiffs fail to allege that Google's representations concerning the DBM Agreement were false when made.**

A plaintiff must also show that the statement(s) at issue were false *when made*, which Plaintiffs

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

did not—and cannot—do. *Heredia v. Intuitive Surgical, Inc.*, No. 15-cv-2662, 2016 WL 6947590, at *7 (N.D. Cal. Nov. 28, 2016); *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006). Plaintiffs fail to point to a single event that occurred at or before the time they signed up for DBM; instead, they point to AdTrader's termination (May 2017), a single conversation with a Google employee (also May 2017), a Wall Street Journal article from August 2017 (that does not actually indicate that any of Google's statements were false and only concerns ad activity from the second quarter of 2017), and an ambiguous statement from an unknown Google representative in December 2017, allegedly included in an unnamed publication that Plaintiffs neither cite nor attach to their Amended Complaint (*see* AC ¶¶ 91-92, 112-14, 116-17, 124). This does not show that statements initially made over a *year earlier*, in March 2016 when Plaintiff "*first entered* into the [relevant agreements]," and then allegedly reaffirmed thereafter (with no specificity as to when) must have been false when made. (*Id.* ¶¶ 106, 202 (emphasis added), Ex. 3.) These allegations are inadequate. *See Smith v. Allstate, Ins. Co.*, 160 F. Supp. 2d 1150, 1152-53 (S.D. Cal. 2001) (A "plaintiff is precluded from simply . . . noting that the content of the [defendant's] statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made") (citation omitted); *Richardson v. Reliance Nat'l Indem. Co.*, No. 99-cv-2952, 2000 WL 284211, at * 4 (N.D. Cal. Mar. 9, 2000) (statement not fraudulent "because it is contradicted by later-discovered facts") (citation omitted); *California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 633 (N.D. Cal. 1997) (rejecting fraud claims based on conversations with unnamed Walgreens employees who purportedly confirmed fraudulent policy).

### c. Plaintiffs' allegations of reliance also fail.

To sustain a claim for fraud, it is axiomatic that a plaintiff must plead that "he *actually* relied upon the misrepresentations, and that in the absence of fraud, would not have entered into the contract or other transaction." *Mega Life & Health Ins. Co. v. Super. Ct.*, 172 Cal. App. 4th 1522, 1530 (2009) (emphasis added); *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012). Plaintiffs assert that they "decided to sign [the relevant contracts] in large measure because of [Google's] representations" concerning offline analysis and invalid activity credits (AC ¶¶ 107-10; *see also id.* ¶ 214), but other allegations in the Amended Complaint directly contradict this claim. Plaintiffs admit that they

discovered they were allegedly not receiving credits as early as May or June 2017 (*id.* ¶¶ 89, 93, 112-114), and had "inside information allowing them to know what was going on" by August 2017 (*id.* ¶ 216). Yet Plaintiffs ***continued to use Google's DBM service*** for months, despite not receiving their first DBM-related credits until December 2017. (*Id.* ¶ 98.) In fact, AdTrader never alleges that Google terminated its DBM account, and Plaintiffs use the present tense throughout the Amended Complaint to discuss AdTrader's participation in DBM (in contrast to how Plaintiffs discuss AdTrader's participation as an AdX publisher) (*Compare, e.g.*, *id.* ¶¶ 48 ("AdTrader *places* advertising bids on AdX through DBM . . . *handles* implementation of their advertisements, and *monitors* advertising campaigns"), 95 ("The vast majority of ad buys made by AdTrader . . . *are* through DBM") (emphasis added) *with* ¶ 49 ("AdTrader *offered* publishers access . . .") (emphases added).) AdTrader's continued use of DBM well after Plaintiffs discovered they were allegedly not receiving credits belies Plaintiffs' allegation that they materially relied on Google's assurance that it would credit advertisers for invalid activity, and is fatal to Plaintiffs' fraud claim.[11] *See, e.g.*, *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, No. 10-cv-3304, 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011) (plaintiff did not show it materially relied on defendant's omission because it had access to the information it claimed defendant failed to disclose); *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1127 n.6 (D. Ariz. 2010) (rejecting fraud claim because plaintiff "chose to continue doing business with" defendant after the alleged material misrepresentation, such that there was a "substantial reason in the record to doubt that [defendant's] representation . . . played any meaningful role in the [plaintiff's] decision," and, instead, reason to believe it "was not material to [that] decision"); *Schaffer v. SunTrust Mortg., Inc.*, No. 16-cv-0518, 2017 WL 3033398, at *2 (E.D. Tex. July 18, 2017) (plaintiff's decision to continue sending payments on the loan "demonstrates Plaintiff did not rely on the alleged misrepresentation").

### 2. Plaintiffs fail to state a claim for negligent misrepresentation (Count VIII).

The elements of negligent misrepresentation are the same as those for fraud, except that the defendant does not need to actually know the representation is false; instead, the plaintiff must allege

---

[11] Plaintiffs also claim that Google's representations "led AdTrader . . . to decide to maintain or increase its advertising expenditures on AdX publisher websites instead of competing ad platforms." (*Id.* ¶ 111.) Yet, when Plaintiffs purportedly learned they were *not* receiving credits, they never allege they ***decreased*** their advertising spending.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

that the defendant had "no reasonable grounds" to believe the representation was true. *See, e.g.*, *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 541-42 (S.D.N.Y. 2007) (plaintiff must allege defendant "knew or should have known [the representation] was incorrect"). "A reasonable belief, even if erroneous, will not suffice . . . [t]here must be some showing that the speaker's belief was *unreasonable*." *Cutler v. Rancher Energy Corp.*, No. 13-cv-0906, 2014 U.S. Dist. LEXIS 34622, at *23 (C.D. Cal. Mar. 11, 2014) (emphasis added).

As already discussed, even accepting their allegations that Google did not issue credits for DBM users, Plaintiffs do not point to any facts showing that AdWords or AdX users did not receive refunds (in fact, Plaintiffs admit AdTrader *did* receive AdWords refunds (AC ¶ 94)), or that it was unreasonable for Google to believe it was crediting DBM advertisers for amounts withheld from publishers due to invalid activity at the time it posted statements to help center pages or on blogs saying that it was. Moreover, the defects regarding falsity and reliance, discussed in Section III(B)(1) above, apply equally to Plaintiff's claim for negligent misrepresentation, and this Count also fails.

### 3. Google has not received stolen property (Count IX).

California Penal Code Section 496(c) provides a civil cause of action to "[a]ny person who has been injured" by a defendant "who buys or receives any property . . . that has been stolen or obtained in any manner constituting theft or extortion." A defendant is only liable under the statute if it received property obtained by theft. Cal. Penal Code § 496(a). Here, Plaintiff relies on Google's alleged misrepresentations to make this showing. (AC ¶ 190.) But as discussed in Section III(B)(3), Plaintiffs' fraud claims fail. Accordingly, Plaintiff's 496(c) claim falls as well. *Fodor v. Blakey*, No. 11-cv-8496, 2012 WL 12893985, at *13 (C.D. Cal. Feb. 21, 2012) (496(c) claim failed under Rule 9(b)).[12]

### 4. Plaintiffs admit no contract term calls for advertiser refunds (Count X).

Under both California and New York law, to state a claim for breach of contract, a plaintiff must allege, among other things, that the defendant actually breached a term of the contract. *See, e.g.*, *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015); *Koes v. Allstate Ins. Co.*, No. 07-cv-6311, 2008 WL 11340377, at *2 (C.D. Cal. May 8, 2008) (plaintiff's claim "fails because he cannot allege

---

[12] Indeed, Plaintiffs must plead their Section 496 claim with particularity. *See Boulton v. Am. Transfer Servs., Inc.*, No. 15-cv-0462, 2015 WL 2097807, at *3 (S.D. Cal. May 5, 2015).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

any contractual term that Allstate breached"); *San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 129 n.7 (S.D.N.Y. 2010) ("Plaintiff must allege the specific provisions of the contract upon which the breach of contract claim is based . . . "); *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1995) (same). Plaintiffs' admissions that there are no applicable contract terms are fatal to their claim. (*See, e.g.*, AC ¶ 253 ("The DoubleClick Advertising Agreement *does not have any express language* relating to the parties' obligations when Google discovers that its advertisers had spent money on websites Google determined to have had fraudulent or invalid traffic") (emphasis added); *id.* ¶ 254 ("[t]here is no express language [in the DoubleClick Ad Exchange Agreement] regarding the parties' obligations when Google discovers . . . that its advertisers have spent money on invalid traffic . . . ."); ¶ 255 (same as to AdWords Agreement).) Seeing this flaw, Plaintiffs advocate: 1) relying on extrinsic evidence to create a new unwritten obligation in the contracts or, in the alternative, 2) creating a new *implied* term in each contract that would require Google to issue credits to advertisers. The Court should do neither.

First, both California and New York forbid looking to extrinsic evidence when "the language [of a contract] is clear and explicit." Cal. Civ. Code § 1638; *see also Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) ("Extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face") (quotation and citation omitted). "[T]he parties may introduce evidence to *explain* the terms of the contract, but they may not introduce evidence of terms not specifically included in the contract or evidence that contradicts the terms of the contract." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005) (citation omitted) (emphasis added); *Wilhelmina Artist Mgmt., LLC v. Knowles*, No. 601151/03, 2005 WL 1617178, at * 7 (N.Y. Sup. Ct. June 6, 2005) ("An omission in a contract does not constitute an ambiguity"). It is also longstanding precedent that "[w]hen the parties to a written contract have agreed to it as an 'integration,'" which the parties did here (*see* AC Ex. 2 § 12, Ex. 3 § 10, Ex. 4 § 12), "parol evidence cannot be used to add to or vary its terms." *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968) (citations omitted); *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 100 (2d Cir. 1990). Plaintiffs concede that none of the contracts include a term obligating Google to issue refunds; in fact, two of the three relevant agreements tell advertisers that their "*sole remedy* [for invalid activity] is to make a claim for advertising credits within the Claim Period." (AC Ex. 2 § 6, Ex. 4 §7 (emphasis added).) Far

from being ambiguous, this language makes it abundantly clear that the parties contemplated the question of advertiser refunds and limited advertisers' rights to affirmatively seeking refunds for themselves. While Google may, as a courtesy, proactively try to refund advertisers amounts spent on invalid activity, Plaintiffs cannot change the actual terms to which the parties agreed.

Second, courts will only imply a term where "the term is indispensable to effectuate the expressed intention of the parties." *Pashman v. Aetna Ins. Co*, No. 13-cv-2835, 2014 WL 3571689, at *11 (N.D. Cal. July 18, 2014) (internal quotation and citation omitted); *see also ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 142 (2000) (courts "do not have the power to create for the parties a contract which they did not make"); *Lui v. Park Ridge at Terryville Ass'n, Inc.*, 601 N.Y.S. 2d 496, 498 (1993) ("A court should not, under the guise of contract interpretation, imply a term which the parties themselves failed to insert.") (internal quotation and citation omitted). Nothing in the contracts makes it necessary to imply a term guaranteeing advertiser credits to effect the purposes of those agreements. Courts are especially unwilling to imply terms where, as here, the contract at issue is fully integrated and has a provision on the subject. *See* AC Ex. 2 §§ 6, 12, Ex. 3 § 10, Ex. 4 §§ 7, 12; *see also Bleasdell v. Nat'l Med. Enters., Inc.*, 124 F.3d 210 (9th Cir. 1997); *Mendes v. FedEx Ground Package Sys., Inc.*, No. 14-cv-3826, 2015 WL 217920, at *4 (N.D. Cal. Jan. 15, 2015). As such, Plaintiffs have not pled any breach, and their claim fails.

### 5. Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing (Count XI)

As explained in Section III(A)(1) above, Plaintiffs cannot use the implied covenant to subject Google to additional obligations that exist nowhere in the contract. *See, e.g. Integrated Storage Consulting Servs.*, 2013 U.S. Dist. LEXIS 107705, at *23-24; *see also McKnight*, 563 F.3d at 893; *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) ("The implied covenant . . . does not add to the contract a substantive provision not included by the parties.") (internal quotation and citation omitted). Under the relevant agreements, Google agrees to deliver advertisers' ads to publishers' websites for a certain fee. Plaintiffs cannot now impose an additional obligation on Google—as a prerequisite for Google retaining this fee—that would require Google to determine that advertisers' ads were only placed on pages with exclusively valid activity. Advertisers agreed to bear

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

this risk. (*See* AC Ex. 2 § 6 ("Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes. . . "), Ex. 4 § 7 (same).) Moreover, as discussed above, in two of the three agreements, the parties expressly provide a means by which advertisers can seek credits if they believe their ads were placed on pages with invalid activity. (AC Ex. 2 § 6, Ex. 4 § 7.) Plaintiffs cannot use the implied covenant to override express provisions.

### 6. Google did not breach any implied duty of reasonable care (Count XII).

Plaintiffs contend that Google breached its duty to use reasonable care by failing to "accurately monitor for and identify invalid impressions or clicks and by refusing to provide credits for invalid clicks." (AC ¶ 274). But as explained above, Google's contracts with advertisers contained no duty to 1) monitor for false or fraudulent activity, or 2) provide refunds for amounts paid based on invalid impressions. It is axiomatic that duties implied in a contract only exist to effectuate the express provisions of the agreement: "implied covenants cannot be asserted to create new contractual obligations." *Franconero v. Universal Music Corp.*, 2003 WL 22990060, at *3 (S.D.N.Y. Dec. 19, 2003); *see also SNS Bank N.V. v. Citibank N.A.*, 7 A.D. 3d 352, 354-55 (N.Y. App. Div. 2004) (integrated contract could not include an implied fiduciary duty where no express terms imposed the obligation). The advertising agreements are integrated contracts with no express or implied duty to provide refunds or monitor for invalid activity. There is no language in the contracts that requires Google to catch all invalid activity, and Plaintiffs cannot use extra-contractual documents to "add to or vary [the contracts'] terms." *Masterson*, 68 Cal. 2d at 225; *Int'l Klafter Co.,* 869 F.2d at 100. While Google electively undertakes monitoring to provide its advertisers with the best possible experience, in the absence of any duty to provide proactive refunds for invalid activity, Plaintiffs cannot contend that an implied duty to monitor is indispensable to effectuate the intent of the parties. *Pashman*, 2014 WL 3571689, at *11; *Lui*, 601 N.Y.S. 2d at 498 ("A court should not . . . imply a term which the parties themselves failed to insert") (quotation and citation omitted). Given this absence, there can be no implied duty to monitor for invalid activity or provide refunds with reasonable care, and no breach.

Furthermore, Plaintiffs cannot use Count XII to obtain tort damages for the same reasons AdTrader's individual claim in Count III fails: a breach of contract—and a breach of the implied duty of reasonable care—cannot, on its own, create a claim founded in tort. *Valenzuela*, 820 F. Supp. 2d at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1071-72. Moreover, because Plaintiffs failed to adequately plead fraud (Section III(B)(1)), Plaintiffs have not shown any other independent, serious breach of duty, which could give rise to tort damages.

### 7. Plaintiffs have no claim for unjust enrichment (Count XIII).

Under both California and New York law, Plaintiffs may not bring a claim in quasi-contract for unjust enrichment where "an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (citation omitted); *Neal v. Select Portfolio Servicing, Inc.*, No. 15-cv-3212, 2016 WL 48124, at *6 (N.D. Cal. Jan 5, 2016); *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005). Nor may Plaintiffs that are allegedly third-party beneficiaries to those binding agreements. *See Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) (unjust enrichment claim that was "wholly derivative of the third-party beneficiary claim" properly dismissed); *Trustco Bank N.Y. v. S/N Precision Enters. Inc.*, 650 N.Y.S.2d 846, 849 (1996) (same); *see also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014) (dismissing quasi-contract claim because "[t]hird party beneficiaries cannot claim any rights greater than that held by direct parties to the contract").

Plaintiffs concede that AdTrader and SCB entered into the contracts relevant to the unjust enrichment claim, and those contracts govern the terms between them and Google. (AC ¶ 278 (listing contracts relevant to unjust enrichment claim); *id.* ¶¶ 43-45, 110, 261.) Plaintiffs also allege that Plaintiffs performed their duties under the contracts (*id.* ¶¶ 51, 52, 134, 149, 164, 248, 261, 270). Finally, Plaintiffs allege that "Classic, LML, Ad Crunch, and Fresh Break were third-party beneficiaries" of the contracts. (*Id.* ¶ 247.) Taken together, these concessions require dismissal of this claim as to all Plaintiffs. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012), *as modified on denial of reh'g* (Feb. 24, 2012); *Goldman*, 5 N.Y.3d at 572.

While some courts in California and New York have recognized a narrow exception allowing a party to a contract that governs the conduct at issue to plead unjust enrichment in the alternative *if there is no enforceable contract*, that exception does not apply here. *Klein*, 202 Cal. 4th at 1389; *Randall v. Guido*, 655 N.Y.S.2d 527, 528 (1997) (requiring "a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue . . .") (citations omitted). Plaintiffs do *not* allege any doubt that AdTrader or SCB entered into enforceable contracts, and specifically allege

that the remaining Plaintiffs are third-party beneficiaries of those contracts. The Court should dismiss the unjust enrichment claim with prejudice. *See Free Range*, 2016 WL 2902332, at *19.

### 8. Plaintiffs fail to state a claim under the UCL (Count XIV).

No statutory standing. Plaintiffs lack standing because they did not bring this case for "the public in general or individual consumers." *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012). "[W]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007). Here, despite conclusory statements that Google's conduct involves the public at large, Plaintiffs' allegations only implicate relationships between corporations: 1) Google and AdTrader, and 2) AdTrader and its advertiser clients. Indeed, Plaintiffs characterize DBM as an especially sophisticated platform that requires significant expertise to manage and "a high minimum monthly ad spend to access." (AC ¶¶ 37-38.) This is hardly a product for the everyday consumer.

Moreover, Plaintiffs do not bring an action on behalf of consumers or the public, but for "businesses and Google-recognized advertising agencies and advertising networks" (*see, e.g.*, AC ¶¶ 125-26 (defining classes).) The alleged harm, in the end, amounts only to an imposition on Plaintiffs' own business, which is not sufficient to provide standing for a UCL claim. *See Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-cv-3074, 2017 WL 4236934, at *8 (N.D. Cal. Sept. 25, 2017).

Not Unlawful. Plaintiffs' claim under the unlawful prong should be dismissed because, as described in detail above, they state no claim on which they can base an "unlawful" UCL claim. *See, e.g.*, *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554, 61 (2007) (affirming dismissal of UCL claim based on violation of underlying law for which plaintiff did not state a claim).

Not Fraudulent. Plaintiffs' claim under the UCL's fraudulent prong fails for the same reasons its fraud claim fails. (*See* Section III(B)(1), *supra*.) As such, this claim must be dismissed.

Not Unfair. Finally, Plaintiffs fare no better under the unfair prong. Plaintiffs do not explain how Google's alleged conduct violates a legislative policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Nor are their conclusory allegations that Google's conduct is "immoral, unethical,

oppressive, unscrupulous, or substantially injurious to consumers" sufficient under the law. *Id.*; *Elias v. Hewlett-Packard Co.,* 950 F. Supp. 2d 1123, 1139 (N.D. Cal. 2013).

### 9. Plaintiffs fail to state a claim under New York General Business Law Section 349 (Count XV).

To state a claim, "a plaintiff must allege 1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and 2) injury resulting from such act." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 401 (2002).[13]

The selling of advertisements is ***not*** a consumer-oriented act. *See Cruz*, 703 N.Y.S.2d at 107 ("[A]dvertisement space in the Yellow Pages is . . . a commodity available to businesses only . . . ."). And even if it were, courts routinely dismiss Section 349 claims made by businesses, especially where "the alleged harm to [the] business far outweighs any incidental harm to the public at large." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 1992 WL 170559, at *4 (S.D.N.Y. July 2, 1992); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349."); *Scarola v. Verizon Commc'ns, Inc.*, 45 N.Y.S.3d 464, 465 (2017). Further, "conclusory allegations as to the effect of the conduct on other consumers are insufficient to transform a private dispute into conduct with further reaching impact." *Scarola*, 45 N.Y.S.3d at 465. Here, as with their UCL claim, Plaintiffs' advertiser allegations are for "businesses and Google-recognized advertising agencies and advertising networks." (*See* AC ¶ 126.) Their allegations that Google's representations were "directed at thousands of individuals" and that "individual consumers are also implicated because end consumers and Internet users were deprived of ads that cater to their interests" (*id.* ¶ 298) are conclusory, insufficient to transform this into a consumer-oriented act, and vastly outweighed by the alleged harm to Plaintiffs' businesses. Thus, Plaintiffs' Section 349 claim should be dismissed.

## IV. CONCLUSION.

For these reasons, the Court should dismiss these inadequately pled claims.

---

[13] New York courts define "consumers" as "individual[s] or natural person[s] who purchase[] goods, services or property primarily for personal, family or household purposes." *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 106 (2000) (internal quotation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN AMEND. COMPLAINT
CASE NO. 5:17-CV-07082-BLF

Dated: April 17, 2018

COOLEY LLP
MICHAEL G. RHODES (116127)
JEFFREY M. GUTKIN (216083)
KYLE C. WONG (224021)
AUDREY J. MOTT-SMITH (300550)


/s/ *Jeffrey M. Gutkin*
Jeffrey M. Gutkin
Attorneys for Defendant
GOOGLE LLC

171980801