**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ADTRADER, INC., ET AL., <br> Plaintiffs, <br> v. <br> GOOGLE LLC, <br> Defendant. | Case No. 17-cv-07082-BLF <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** <br><br> [Re: ECF 32] |

Before the Court is Plaintiffs' motion for temporary restraining order and order to show cause why a preliminary injunction should not issue ("Motion for TRO"). Mot., ECF 32. On April 12, 2018, Plaintiffs filed the instant motion seeking to enjoin Defendant Google LLC ("Google") from "suspending or de-activating the accounts of any AdWords advertisers" that decline to accept Google's September 1, 2017 modifications to its Advertising Program Terms. Proposed Order, ECF 32-1. According to Plaintiffs, Google sent an email to Plaintiff AdTrader, Inc., stating that "any AdWords advertiser that continued to use the AdWords platform as of April 23, 2018 would be automatically deemed to have consented to the modified terms to the Google Inc. Advertising Program Terms ('AdWords Agreement') that Google had unilaterally pushed through on September 1, 2017." Mot. 1. The Court ordered Google to file a response. ECF 35. On April 17, 2018, Google filed its opposition to the instant motion. Opp'n, ECF 37. For the reasons discussed below, Plaintiffs' Motion for TRO is DENIED.

## I. BACKGROUND

Google offers advertisement services for website publishers and advertisers. Website publishers can use Google's DoubleClick Ad Exchange ("AdX") service to sell advertisement space on their websites. FAC ¶¶ 26–28, ECF 29. AdX allows website publishers to display advertisements in exchange for a share of the advertising revenue paid to Google by advertisers for each "impression" (i.e., each time a unique user views the publisher's website displaying the advertisements). *Id.* ¶ 26. Advertisers can use Google's AdWords Advertising Program ("AdWords"), DoubleClick Ad Exchange Buyer ("AdXBuyer") and DoubleClick Bid Manager ("DBM") to place advertisements. *Id.* ¶¶ 24, 26–28. AdWords advertisements are displayed in a variety of formats such as text and/or images, alongside or above search results, on webpages, in e-mails, on blogs, and/or in videos. *Id.* ¶ 24.

A number of Plaintiffs who used Google's advertisement services bring this purported class action against Google for its fraudulent promises that it would issue refunds or credits to advertisers for invalid activity on their advertisements served through AdX. FAC ¶¶ 1, 48, 61–65. In particular, Plaintiff AdTrader, Inc. ("AdTrader") manages on-line advertising for both advertisers and website publishers, and places advertising bids on AdX through DBM. *Id.* ¶¶ 46, 48. Plaintiffs Classic and Food EOOD, LML Consult Ltd., Ad Crunch Ltd., and Fresh Break Ltd. engaged AdTrader to advertise their businesses on the Internet. *Id.* ¶¶ 61−64. Plaintiff Specialized Collections Bureau, Inc. ("SCB") used AdWords to advertise its business on the Internet and some of its advertisement impressions came from AdX publisher websites. *Id.* ¶ 65. In their complaint, Plaintiffs allege that Google has refused to pay AdX website publishers their accrued revenues, claiming that it would return that money to advertisers because of some purported violation of Google's policy by those publishers. *Id.* ¶ 3. However, according to Plaintiffs, Google never returned that money to many advertisers "bilking both the advertisers who paid Google to deliver their ads and the AdX publishers who displayed those ads." *Id.* Based on these allegations, Plaintiffs filed this action on December 13, 2017. ECF 1. The first amended complaint was filed on March 20, 2018.

**The AdWords Agreement**

To use AdWords, advertisers must agree to the Google's Advertising Program Terms ("AdWords Agreement"). *See* FAC ¶ 45. AdTrader agreed to the AdWords Agreement on February 21, 2013. *Id.* Section 11 of the 2013 AdWords Agreement provides that:

> **11 Term.** Google may add to, delete from or modify these Terms at any time without liability. The modified Terms will be posted at www.google.com/ads/terms. Customer should look at these Terms regularly. **The changes to the Terms will not apply retroactively** and will become effective 7 days after posting. However, changes specific to new functionality or changes made for legal reasons will be effective immediately upon notice. Either party may terminate these Terms at any time with notice to the other party, but (i) campaigns not cancelled under Section 4 and new campaigns may be run and reserved and (ii) continued Program Use is, in each case subject to Google's then standard terms and conditions for the Program available at www.google.com/ads/terms. Google may suspend Customer's ability to participate in the Programs at any time. In all cases, the running of any Customer campaigns after termination is in Google's sole discretion.

Ex. 1 to Kamburov Decl., ECF 33-1 (emphasis added).

On August 25, 2017, the Wall Street Journal published an article titled "Google Issuing Refunds to Advertisers Over Fake Traffic, Plans New Safeguard." Ex. 2 to Kamburov Decl., ECF 33-2. A few days later, on September 1, 2017, Google released new terms governing the use of AdWords (the "September 2017 AdWords Agreement"). Ex. 4 to Kamburov Decl., ECF 33-4. Google last updated the terms in 2013. Christow Decl. ¶ 3, ECF 37-1.

The September 2017 AdWords Agreement contains a new arbitration clause. In relevant part, section 13 states that:

> **13 Dispute Resolution Agreement.**
>
> A. Arbitration of disputes. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google and Customer or between Google and Advertiser that arise out of or relate in any way to the Programs or these Terms. This agreement to arbitrate ("Dispute Resolution Agreement" or "Section 13") is intended to be broadly interpreted and includes, for example:
>
> 1. claims brought under any legal theory;
>
> **2. claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision**;

Ex. 4 to Kamburov Decl. (emphasis added). The September 2017 AdWords Agreement permits

1   customers to opt out of the new Dispute Resolution Agreement. *See id.* at § 13(F).

2   According to Google, it undertook a robust notification campaign to inform AdWords customers of the September 2017 AdWords Agreement. Christow Decl. ¶ 8. For example, around August 17, 2017, even before the publication of the Wall Street Journal article or the official roll out of the September 2017 AdWords Agreement, Google posted an article on the "Inside AdWords blog" (adwords.blogspot.com) and summarized the new terms. *Id.* ¶ 9. The blog post informed customers about opting out of the new Dispute Resolution Agreement. *Id.*; Ex. D to Christow Decl., ECF 37-5. Beginning in September 2017, AdWords customers began seeing a red-alert bar notice at the top of their AdWords accounts which asked them to review the September 2017 AdWords Agreement and choose to accept, decline, or defer by clicking a radio button at the bottom of the notice. *Id.* ¶ 10.

On April 5, 2018, AdTrader received an email from Google stating that continued use of AdWords would be considered an acceptance of the September 2017 AdWords Agreement, effective April 23, 2018. Ex. 5 to Kamburov Decl., ECF 33-5. The next day, counsel for AdTrader emailed Google and inquired whether "Google intends to enforce [the] retroactive arbitration provision [in the September 2017 AdWords Agreement] against AdTrader, and the absent class members, if they continue to use AdWords as of April 23, 2018." Ex A to Song Decl., ECF 34-1. Google replied by stating that Google will not argue that AdTrader has accepted the new arbitration provision and will not compel AdTrader into arbitration in this action. Ex. B to Song Decl., ECF 34-2.

Nevertheless, Plaintiffs filed the instant motion and seek to enjoin Google from suspending or deactivating the accounts of any AdWords advertisers who decline to accept the September 2017 AdWords Agreement. Mot. 2. Plaintiffs also request that Google be ordered to give notice to all AdWords advertisers that an injunction has been issued against Google. *Id.*

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.

4

1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

The plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). In particular, a "plaintiff *must show* that she 'is likely to suffer irreparable harm in the absence of preliminary relief.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (citing *Winter*, 555 U.S. at 20) (emphasis added); *see also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("[A]n injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it *must* be likely that there will be." (emphasis added)). The plaintiff must also "*demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman*, 822 F.3d at 1022 (emphasis in original). Speculative injury is not sufficient to warrant granting an injunction. *Id.* If the plaintiff has not established the required thresholding showing of irreparable harm, the court may deny the requested injunction on that basis without addressing the other three *Winter* factors. *Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 4098887, at *4 (N.D. Cal. Sept. 15, 2017).

### III. DISCUSSION

Plaintiffs seek a TRO to enjoin Google from "suspending or deactivating the accounts of any AdWords advertisers" who decline to accept Google's September 2017 AdWords Agreement. Mot. 2. Plaintiffs argue that the new agreement's "retroactive arbitration and class waiver terms" are unenforceable. *Id.* at 6–15.

As discussed above, Plaintiffs must demonstrate a likelihood of irreparable harm to prevail on their request for a TRO. *See, e.g.*, *Boardman*, 822 F.3d 1011, 1022 (9th Cir. 2016). However, for the reasons stated below, the Court finds that Plaintiffs have failed to establish that they are

likely to suffer irreparable harm, which alone is a sufficient basis to deny the instant motion. *Heineke*, 2017 WL 4098887, at *4.

Plaintiffs argue that AdTrader and the proposed class members face irreparable harm on the grounds that they will suffer a number of non-monetary "injuries." Mot. 15–16. Specifically, Plaintiffs contend that if their AdWords accounts become deactivated they would (1) be unable to use Google's other free online services that seamlessly integrate with AdWords, (2) lose customer data accumulated over the years while using AdWords, (3) be unable to use "rich media creatives" that they developed and that are incompatible with other online advertising platforms, and (4) lose the money, time, and efforts that they have spent on training employees to use Google's advertising products. *Id.* (citing Kamburov Decl. ¶¶ 10–14).[1]

Google responds that Plaintiffs' alleged harm would be "entirely self-inflicted." Opp'n 20. Google further contends that nothing it "has done or will do" would trigger Plaintiffs' "litany of hardships" and any such theoretical harm could be readily cured. *Id.* at 20–21. In Google's view, there is no irreparable harm because Plaintiffs and other U.S. AdWords customers are free to opt out of the new Dispute Resolution Agreement and continue using AdWords without any interruption. *Id.* at 21.

The Court agrees with Google's arguments. Harm does not constitute irreparable injury if it is self-inflicted. *K.D. v. Oakley Union Elementary Sch. Dit.*, No. C 07-00920 MHP, 2008 WL 360460, at *11 (N.D. Cal. Feb. 8, 2008); *California Pawnbrokers Ass'n, Inc. v. Carter*, No. 216CV02141, 2016 WL 6599819, at *10 (E.D. Cal. Nov. 8, 2016) (holding that harm caused by the plaintiffs' voluntary choice did not support a showing of irreparably injury); *Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." (citation omitted)). Here, Plaintiffs' purported injury that

---

[1] Google asserts that paragraphs 10 to 14 of the Kamburov Declaration lacks foundation and thus should be ignored. Opp'n 21–22. However, "the Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017) (citation omitted). Thus, the Court may consider inadmissible evidence in the context of an injunction proceeding. *See id.*

would result from the deactivation of their accounts is based on their voluntary choice to decline the new terms in the September 2017 Agreement as explained below.

Plaintiffs' arguments are premised on their belief that they must decline the September 2017 AdWords Agreement in order to avoid being subject to the new Dispute Resolution Agreement provision contained therein. *See* Mot. 4. That premise is incorrect. As Defendants argue (Opp'n 21), advertisers are free to accept the new terms in the September 2017 AdWords Agreement but decline the Dispute Resolution Agreement provision without their accounts becoming "paused." Indeed, Google's email notice and the September 2017 AdWords Agreement make it clear that advertisers can freely opt out of the Dispute Resolution Agreement provision. For example, the April 5, 2018 email notice that AdTrader received expressly states that "[i]n the U.S. and Brazil only, you can follow the instructions in the dispute resolution section of the terms to opt out of this provision." Ex. A to Song Decl. The September 2017 AdWords Agreement instructs how customers can decline the Dispute Resolution Agreement provision. Specifically, the first paragraph of the September 2017 AdWords Agreement states that:

> Please read these Terms carefully. They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions. **If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision.**

Ex. 4 to Kamburov Decl. (emphasis added). Section 13(F) provides instructions on how customers may opt out within 30 days of accepting the September 2017 AdWords Agreement:

> **F. 30-day opt out period.** Customer (both for itself and for any Advertiser that Customer represents) and Advertiser have the right to opt out of this Dispute Resolution Agreement. A Customer or Advertiser who does not wish to be bound by this Dispute Resolution Agreement (including its waiver of class and representative claims) must notify Google as set forth below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision (unless a longer period is required by applicable law). **Customer's or Advertiser's notice to Google under this subsection must be submitted via webform available at adwords.google.com/nav/arbitration.** An opt-out notice does not revoke or otherwise affect any previous arbitration agreement between Customer and Google or between Advertiser and Google.

*Id.* (emphasis added). Clicking the URL "adwords.google.com/nav/arbitration" in § 13(F) takes

customers to a webpage that allows them "to select how they wish to resolve disputes with Google." Christow Decl. ¶ 6. After entering their customer ID, they can select "opt out of arbitration" and click "submit." *Id.* The customers' choice to opt out does not affect their ability to use AdWords. *Id.*

As such, the evidence is clear that advertisers can freely opt out of the Dispute Resolution Agreement without their accounts becoming deactivated. Plaintiffs provide no contrary evidence. Hence, an advertiser's decision to decline the September 2017 AdWords Agreement to avoid being subject to the new arbitration provision is a voluntary choice given that he or she can easily opt out from that provision as discussed above. Any harm stemming from such a decision is self-inflicted and does not constitute irreparable harm. *K.D.*, 2008 WL 360460, at *11.

Plaintiffs also have not shown immediate threatened injury. *Boardman*, 822 F.3d at 1022 (holding that the plaintiff must "demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief"). Although advertisers' accounts would be paused after they decline the September 2017 AdWords Agreement, the advertisers can later resume using AdWords by accepting the new terms. Christow Decl. ¶ 11. The advertisers can still elect to opt out of the Dispute Resolution Agreement at that time. *Id.* All of their account data and other tools would remain intact. *Id.* Hence, Plaintiffs have not demonstrated "immediate threatened injury" because the advertisers can resume their AdWords accounts at any time and then opt out of the Dispute Resolution Agreement even if the accounts became deactivated at one point. *Boardman*, 822 F.3d at 1022.

Moreover, Google has committed that it will not seek to compel arbitration against AdTrader and SCB. Opp'n 5–6, 9. In fact, Google states that it has waived its right to arbitrate against AdTrader and SCB under the September 2017 AdWords Agreement.[2] *Id.* at 11. Therefore, the named Plaintiffs do not face any "immediate threatened injury" that warrants the requested injunctive relief.

---

[2] Google represents that the other named Plaintiffs Classic and Food EOOD, LML Consult Ltd., Ad Crunch Ltd., and Fresh Break Ltd. are *not* signatories to the AdWords Agreement. Opp'n 6. Plaintiffs have provided no contrary evidence. In fact, Plaintiffs assert only that AdTrader and SCB are "signatories to the AdWords Agreement." *See* Mot. 6.

8

In addition, the named Plaintiffs may not seek a TRO or a preliminary injunction on behalf of putative class members before class certification unless an exception applies. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) ("Subject to exceptions not applicable here, '[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis.'" (alterations in original) (quoting *Zepeda*, 753 F.2d 719, 728 n.1 (9th Cir.1985))). This limitation is based on the "general rule that a federal court may not attempt to determine the rights of persons not before the court." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987) (citing *Zepeda*, 753 F.2d at 727). To be clear, there are exceptions to this limitation. For example, class-wide relief may be necessary to ensure that the named plaintiffs receive complete relief or if there is a constitutional violation that has become sufficiently pervasive. *See, e.g., Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1019 (C.D. Cal. 2011) (holding that a class-wide injunction against the City was proper because the City could not possibly determine whether the confiscated property belonged to the named plaintiffs or absent class members); *Nat'l Org. For Reform of Marijuana Laws (NORML) v. Mullen*, 608 F. Supp. 945, 964 (N.D. Cal. 1985), *remanded on other grounds*, 796 F.2d 276, 276 (9th Cir. 1986) (holding that a class-wide injunction against government agencies was appropriate due to evidence that suggested widespread Fourth Amendment violations). The exceptions are inapplicable. Here, Plaintiffs do not contend that Google is unable distinguish their accounts from those of putative class members or that there is a widespread constitutional violation. Given that the evidence does not support the existence of irreparable harm, the Court finds that Plaintiffs have not shown that an exception applies to this case.

As discussed above, Plaintiffs have failed to satisfy their burden to show irreparable harm. This failure alone is sufficient to permit the Court to, in its discretion, deny Plaintiffs' request for a TRO. *Heineke*, 2017 WL 4098887, at *4; *see also Standard Innovation Corp. v. Lelo (Shanghai) Trading Co.*, No. 15-CV-04858-BLF, 2015 WL 6828317, at *2 (N.D. Cal. Nov. 6, 2015). Because Plaintiffs have not met this burden, the Court need not address the parties' remaining arguments.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for temporary restraining order and order to show cause why a preliminary injunction should not issue is DENIED. This order is without prejudice to Plaintiffs' filing a motion for preliminary injunction. In the event that Plaintiffs file a new brief with supporting evidence, incorporation by reference to previously filed documents is not allowed.

**IT IS SO ORDERED.**

Dated: April 19, 2018

_____
BETH LABSON FREEMAN
United States District Judge