**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ADTRADER, INC., ET AL.,<br><br>            Plaintiffs,<br><br>      v.<br><br>GOOGLE LLC,<br><br>            Defendant. | Case No.  17-cv-07082-BLF<br><br>**ORDER GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Re: ECF 36] |

This action involves purported unlawful conduct by Defendant Google LLC ("Google") in relation to its online advertisement marketplace services.  Google moves to dismiss certain claims in Plaintiffs' first amended complaint.  Mot., ECF 36.  Plaintiffs oppose the motion.  Opp'n, ECF 39.  The Court has considered the parties' briefing and oral argument presented at the hearing on the motion held on June 21, 2018.  For the reasons stated below and on the record at the hearing, Google's motion to dismiss is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART and DENIED IN PART.

## I.   BACKGROUND

Google offers advertisement services for website publishers and advertisers.  Website publishers can use Google's DoubleClick Ad Exchange ("AdX") service to sell advertisement space on their websites.  First. Am. Compl. ("FAC") ¶¶ 26–28, ECF 29.  AdX allows website publishers to display advertisements in exchange for a share of the advertising revenue paid to Google by advertisers for each "impression" (i.e., each time a unique user views the publisher's website displaying the advertisements).  *Id.* ¶ 26.  Advertisers can buy advertisement space on AdX through DoubleClick Ad Exchange Buyer ("AdX Buyer") and DoubleClick Bid Manager ("DBM").  *Id.* ¶ 28.  Businesses may participate on the publishing side as managers of websites

United States District Court
Northern District of California

1   belonging to others even if those businesses do not have their own website. *Id.* ¶ 34. Such

2   businesses are called Network Partner Managers ("NPM"). *Id.* Plaintiff AdTrader, Inc.

3   ("AdTrader") was an NPM. *Id.*

4       AdTrader is in the business of managing on-line advertising for both advertisers and

5   website publishers, and places advertising bids on AdX through DBM on behalf of advertisers.

6   FAC ¶¶ 46, 48. AdTrader entered into the Google Inc. Advertising Program Terms ("AdWords

7   Agreement") (*id.* ¶ 45), DoubleClick Ad Exchange Master Service Agreement ("AdX Buyer

8   Agreement") (*id.* ¶ 43), and DoubleClick Advertising Platform Agreement ("DBM Agreement")

9   (*id.* ¶ 44).

10       On May 19, 2017, a few days before Google was due to pay AdTrader its accrued AdX

11   earnings, AdTrader received an email from Google stating that AdTrader's AdX account was

12   terminated due to violation of Google's policies. FAC ¶ 71. However, Google has not terminated

13   the individual accounts of AdTrader's publisher clients. *Id.* ¶ 82. In addition, AdTrader believes

14   that Google contacted one of AdTrader's publisher clients, DingIt.tv ("DingIt"), "to begin a direct

15   relationship." *Id.* ¶ 85. At the time of termination, AdTrader had a balance of $476,622.69 in its

16   AdX account, which Google withheld. *Id.* ¶ 80.

17       On December 13, 2017, Plaintiff AdTrader and several other Plaintiffs filed this action

18   against Google. The operative FAC was filed on March 20, 2018. According to the FAC,

19   Plaintiffs Classic and Food EOOD, LML Consult Ltd., Ad Crunch Ltd., and Fresh Break Ltd.

20   engaged AdTrader to advertise their businesses on the Internet. FAC ¶¶ 61–64. Plaintiff

21   Specialized Collections Bureau, Inc. ("SCB") used AdWords to advertise its business on the

22   Internet and some of its advertisement impressions came from AdX publisher websites. *Id.* ¶ 65.

23   Plaintiffs allege that Google has refused to pay AdX website publishers their accrued revenues,

24   claiming that it would return that money to advertisers because of some purported violation of

25   Google's policy by those publishers. *Id.* ¶ 3. However, according to Plaintiffs, Google never

26   returned that money to many of those advertisers, "bilking both the advertisers who paid Google

27   to deliver their ads and the AdX publishers who displayed those ads." *Id.*

28       Based on the above allegations, the FAC pleads fifteen claims. Claims 1 to 6 are brought

1    by AdTrader individually against Google.  Claims 7 to 15 are class action claims.

2    **II.     LEGAL STANDARD**

3          "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4    accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

5    U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

6    considering such a motion, the Court "accept[s] factual allegations in the complaint as true and

7    construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

8    *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "[t]hreadbare

9    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

10   suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

11   **III.    REQUEST FOR JUDICIAL NOTICE**

12          **A.    Google's Request for Judicial Notice in Support of its Motion**

13          Google requests that the Court take judicial notice of a Wall Street Journal article dated

14   August 25, 2017 and titled "Google Issuing Refunds to Advertisers Over Fake Traffic, Plans New

15   Safeguard."  Mot. 6 n.2 (citing Ex. A to Wong Decl., ECF 36-2).  Google states that paragraph 8

16   of the FAC references the August 25, 2017 Wall Street Journal article.  *Id.*  The document is

17   properly subject to judicial notice because it is incorporated by reference into the complaint.

18   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Accordingly, Google's

19   request for judicial notice is GRANTED.  The Court does not take judicial notice of the truth of

20   anything contained in the article.

21          **B.    Plaintiffs' Request for Judicial Notice in Support of their Opposition**

22          Plaintiffs request the Court to take judicial notice of a printout of an article from the

23   Register dated December 13, 2017 and titled "Google lies about click-fraud refunds and tried to

24   destroy us – ad biz."  Opp'n 13 n.3 (citing Ex. A to Gaw Decl., ECF 41-1). Plaintiffs state that

25   paragraph 124 of the FAC references the December 13, 2017 article.  *Id.*  Plaintiffs' request is

26   GRANTED, as Google does not dispute the authenticity of the printout and it is referenced in the

27   FAC.  *Tellabs*, 551 U.S. at 322.  The Court does not take judicial notice of the truth of anything

28   contained in the article.

United States District Court
Northern District of California

### C.     Google's Request for Judicial Notice in Support of its Reply

In connection with its reply, Google requests that the Court take judicial notice of the following five documents: (1) Third Amended Complaint in *Free Range Content v. Google Inc.*, No. 5:14-cv-2329 (N.D. Cal.); (2) Amended Complaint in *Online Global, Inc. et al. v. Google Inc.*, No 3:16-cv-5822 (N.D. Cal.); (3) Amended Complaint in *Super Cray Inc. v. Google Inc.*, No. 5:15-cv-0109 (N.D. Cal.); (4) Complaint in *Ogtanyan v. Google Inc.*, No. 1-14-cv-259301 (Cal. Super. Ct.); and (5) Amended Class Action Complaint in *Bulletin Marketing, LLC v. Google LLC*, No. 5:17-cv-7211-BLF (N.D. Cal.).  Reply 3–4 n.3, ECF 51; Wong Decl. in Supp. of Reply, ECF 52.  During the hearing, Plaintiffs argued that it is improper to request judicial notice in a reply brief and that a court may not take judicial notice of court filings for the truth of the matter asserted therein.  Hearing Tr. 27:16–21, ECF 62.  The Court, however, finds that it is not improper for a party to request judicial notice in a reply brief.  Moreover, the Court may take judicial notice of court filings although specific factual findings and legal conclusions set forth in the documents may not bind this Court.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings and other matters of public record).  Accordingly, Google's request is GRANTED.

## IV.     DISCUSSION

The Court now turns to Google's motion to dismiss certain claims in the FAC pursuant to Rule 12(b)(6).  Google moves to dismiss claims 2 to 6 which are brought by AdTrader as individual claims.[1]  Google also seeks to dismiss claims 7 to 15 which are class action claims.  For the reasons that follow, Google's motion to dismiss is GRANTED with LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART and DENIED IN PART.

### A.     Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

Google argues that AdTrader's second cause of action relies on a "hodgepodge of theories," including allegations that Google: (1) arbitrarily withheld amounts in AdTrader's

---

[1] Google does not move to dismiss the first cause of action (i.e., AdTrader's individual breach of contract claim).  Google also does not seek to dismiss the fourth and fifth causes of actions to the extent that those claims pertain to DingIt.  *See* Mot. 10–11.

1   publisher account, but did not terminate AdTrader's client accounts; (2) failed to provide

2   AdTrader a meaningful appeal after termination; (3) misrepresented that the withheld money was

3   refunded to advertisers; (4) withheld earnings resulting from valid activity; and (5) terminated

4   AdTrader's account close to the date which Google would have paid out AdTrader's balance.  *See*

5   Mot. 6 (citing FAC ¶¶ 151–54, 156–58).  Google contends that those allegations do not support a

6   claim for breach of the implied covenant of good faith and fair dealing.  *Id.* at 6–9.

7       AdTrader responds that the second cause of action is adequately alleged for six reasons:

8   Google (1) disabled AdTrader's AdX account and withheld earnings but never disabled

9   AdTrader's client accounts; (2) refused to provide reasons for withholding the earnings and did

10   not provide a meaningful appeal process; (3) lied that it could not pay AdTrader's earnings

11   because the earnings were being refunded; (4) wrongfully withheld all of AdTrader's accrued

12   earnings regardless of whether those earnings resulted from invalid activity; (5) waited until the

13   end of AdTrader's earnings period to announce that Google would withhold the earnings; and (6)

14   refused to reconsider the decision to withhold all of AdTrader's accrued earnings.  Opp'n 6–8.

15       The Court finds that the FAC does not adequately plead the second cause of action.  "[T]he

16   implied covenant of good faith and fair dealing's application is limited to assuring compliance

17   with the express terms of the contract, and cannot be extended to create obligations not

18   contemplated by the contract."  *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No.

19   5:12-CV-06209-EJD, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (internal quotation

20   marks and citation omitted).  However, as pled, the FAC's allegations attempt to add obligations

21   that do not expressly appear in the agreements referenced in the FAC.  As such, the allegations

22   which Plaintiffs rely on do not support a claim for breach of the implied covenant of good faith

23   and fair dealing.  The Court therefore GRANTS Google's motion to dismiss the second cause of

24   action WITH LEAVE TO AMEND.

25       During the hearing, Google argued that the publisher-side contract applies an objective

26   standard for Google to determine whether to make payments to a publisher.  Hearing Tr. 44:10–25

27   (citing § 8.2 of Ex. 1 to FAC ("Google Services Agreement"), ECF 29-1).  In Google's view, the

28   application of the objective standard means that a claim for breach of the implied covenant of

United States District Court
Northern District of California

United States District Court
Northern District of California

1  good faith and fair dealing is subsumed by the breach of contract claim. *See id.*; Mot. 8 (citing

2  *Free Range Content, Inc. v. Google Inc.*, No. 14-CV-02329-BLF, 2016 WL 2902332, at *16 (N.D.

3  Cal. May 13, 2016)). Google's argument has merit. The Court will allow AdTrader to amend the

4  second cause of action to the extent that the parties' contract is not deemed to impose an objective

5  standard. *See* Hearing Tr. 52:15–18.

6      **B.**    **Third Cause of Action: Breach of the Implied Duty to Perform with Reasonable Care**

7         The FAC's third cause of action asserts a claim for breach of the implied duty to perform

8  with reasonable care. FAC ¶¶ 162–68. Specifically, the FAC pleads this claim in two alternative

9  situations:

10        (1) if "the Court find[s] that the Google Services Agreement *does not impose* an express

11           contractual obligation on Google to 'reasonably determine' how much of AdTrader's

12           accrued earnings it could withhold on the basis of [invalid activity]" or

13        (2) if "the Court finds that the contract *does impose* such an express contractual obligation

14           upon Google, then AdTrader brings this claim in the alternative so that it can elect

15           between contract and tort remedies against Google."

16  FAC ¶ 163 (emphasis added).

17         Google argues that the third cause of action is duplicative of AdTrader's claim for breach

18  of contract because those two claims rely on the same allegations. Mot. 9–10. Google also

19  contends that the third cause of action improperly attempts to transmute the breach of contract

20  claim into a tort claim. *Id.* at 10 (citing FAC ¶ 163 ("AdTrader brings this claim in the

21  alternative," to "elect between contract and tort remedies")).

22         AdTrader responds that Google's arguments fail because California law recognizes that a

23  breach of the implied duty to perform with reasonable care constitutes a tort claim. Opp'n 8

24  (citing *Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1314 (Ct. App. 2014); *Letizia v.*

25  *Facebook Inc.*, 267 F. Supp. 3d 1235, 1239 (N.D. Cal. 2017)). In AdTrader's view, its claim for

26  breach of implied duty to perform with reasonable care is broader in scope than the breach of

27  contract claim. *Id.*

28

The Court first turns to the FAC's second alternative situation. AdTrader seeks to assert its implied duty claim when "the contract *does impose* . . . an express contractual obligation upon Google" to reasonably determine "how much of AdTrader's accrued earnings it could withhold on the basis of [invalid activity]." *See* FAC ¶ 163 (emphasis added). In this situation, the alleged implied duty does not exist because the contract already expressly contains the purported obligation. AdTrader cannot assert a non-existent implied duty. The claim which AdTrader seeks to assert would be subsumed in its breach of contract claim. Thus, Google's motion to dismiss the third cause of action to the extent it is based on the FAC's second alternative situation is GRANTED WITHOUT LEAVE TO AMEND.

The Court next turns to the FAC's first alternative situation. As mentioned above, AdTrader seeks to bring a breach of implied duty to perform with reasonable care claim when "the Google Services Agreement *does not impose* an express contractual obligation on Google to 'reasonably determine' how much of AdTrader's accrued earnings it could withhold on the basis of [invalid activity]." FAC ¶ 163 (emphasis added). AdTrader relies on *Holguin* and *Letizia* to support its position that its claim for a breach of implied duty is a tort claim. Opp'n 8.

However, as Google argues (Reply 3 n.3), *Holguin* and *Letizia* did not hold that a claim for breach of implied duty constitutes a tort claim. For example, the court in *Holguin* explained that "express contractual terms give rise to implied duties, violations of which may themselves constitute *breaches of contract*." 229 Cal. App. 4th at 1324 (emphasis added). To be sure, the court stated that "a common-law duty to perform with care, skill . . . and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Id.* (citing *Roscoe Moss Co. v. Jenkins*, 55 Cal. App. 2d 369, 376 (Ct. App. 1942)). But by citing *Roscoe Moss*, the court in *Holguin* does not appear to have meant that a defendant who breaches an implied duty is liable for tort damages. Such a reading is consistent with the courts' recognition that "[t]he mere negligent breach of a contract is insufficient to give rise to tort damages." *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1071 (C.D. Cal. 2010); *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (Cal. 1999) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law."). In fact, *Holguin*

United States District Court
Northern District of California

7

was addressing only the trial court's jury instruction regarding an implied duty in connection with the plaintiff's breach of contract claim. *Id.* at 1317, 1324. Tort liability was not at issue.

Similar to *Holguin*, *Letizia* did not hold that a breach of an implied duty to perform with reasonable care supports tort liability. While the court in *Letizia* recognized that an implied duty is "as much a part of the contract as if expressly set forth" (267 F. Supp. 3d at 1249 (citation omitted)), it did not conclude that a breach of such a duty constitutes a tort claim. Rather, the court's analysis exclusively focused on the parties' contractual obligations. *See* 267 F. Supp. 3d at 1249–53.

During the hearing, counsel for AdTrader indicated that California Civil Jury Instructions ("CACI") 328 titled "Breach of Implied Duty to Perform with Reasonable Care" supports AdTrader's position. Hearing Tr. 19:19–20:16. However, a review of CACI shows that a claim for breach of implied duty to perform with reasonable care permits contract remedies rather than tort remedies. *See* CACI (listing "breach of implied duty to perform with reasonable care" under the breach of contract section). In addition, AdTrader has not pointed to any case where the court awarded tort damages for a breach of implied duty to perform with reasonable care.

For the above reasons, the Court agrees with Google's argument that AdTrader cannot rely on a claim for breach of implied duty to perform with reasonable care to recover tort damages. The FAC alleges that this claim is asserted as a tort claim. *See* FAC ¶ 163. Accordingly, Google's motion to dismiss the third cause of action is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART. The dismissal is without leave to amend insofar as AdTrader intended to pursue that claim as a tort claim. AdTrader, however, may amend the third cause of action to allege that it seeks only contract remedies based on this claim. In that event, the amended claim must contain sufficient factual allegations to support the elements of a claim for breach of implied duty to perform with reasonable care. This ruling does not determine whether such a claim is meritorious in this case.

### C.    Fourth Cause of Action: Intentional Interference with Contract (Apart from DingIt)

Google argues that AdTrader fails to sufficiently allege that Google caused an actual

1   breach of contract or disruption between AdTrader and over two hundred AdTrader clients and

2   fails to allege damages resulting from the breach or disruption.  Mot. 10–11.  AdTrader counters

3   that the FAC (1) identifies 170 publishers with whom it had contractual relationships between

4   April and May 2017; (2) attaches AdTrader's contract form; and (3) alleges that it "was unable to

5   operate in the same capacity and deliver the same results to the Web Publishers" due to Google's

6   termination of AdTrader's AdX account.  Opp'n 9.

7        The Court agrees with Google's arguments that the FAC's allegations are insufficient.  To

8   state a claim for intentional interference with contract, a plaintiff may not "simply allege that [a

9   defendant] has interfered with its business model; . . . it must allege actual interference with actual

10   contracts, such that the result is a specific breach, not merely general damage to the business."

11   *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-08968,

12   2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013).  Here, the FAC alleges that AdTrader had

13   contractual relationships with over two hundred web publishers.  FAC ¶ 172.  However, the FAC

14   does not plead sufficient factual allegations that show that Google purportedly interfered with a

15   specific contract for each web publisher.  Thus, the FAC fails to plead the specific breach with

16   respect to a particular publisher.  *Image Online*, 2013 WL 489899, at *9.  The Court notes that this

17   claim is actually 170 separate interference claims.  Plaintiffs must address the pleading deficiency.

18   The Court therefore GRANTS Google's motion to dismiss the fourth cause of action apart from

19   DingIt WITH LEAVE TO AMEND.

20        **D.      Fifth Cause of Action: Intentional Interference with Prospective Economic Advantage (Apart from DingIt)**

21        Google asserts that the fifth cause of action fails because the FAC contains only

22   "threadbare allegations regarding AdTrader's relationships with Web Publishers" and fails to

23   plead a "wrong" independent from "the fact of the interference."  Mot. 11–12.  AdTrader responds

24   that it has adequately alleged the economic relationship between AdTrader and its web publisher

25   clients because the FAC identifies 170 publishers who signed the same contract form and further

26   alleges that "AdTrader helped the Web Publishers optimize the monetization of their content

27   through AdX."  *See* Opp'n 10 (citing FAC ¶¶ 172–73, 182).  AdTrader also argues that it has

28

United States District Court
Northern District of California

9

alleged several instances of "independently wrongful" conduct including a breach of the implied covenant of good faith and fair dealing and breach of the implied duty to perform with reasonable care. *Id.*

The Court finds that the fifth cause of action fails for the same reasons discussed above for the fourth cause of action. Similar to an intentional interference with contract claim, a plaintiff must adequately allege actual disruption of an economic relationship between the plaintiff and a third party in order to state a claim for intentional interference with prospective economic advantage. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (Ct. App. 1996). Here, however, the FAC merely lumps allegations regarding more than two hunderd web publishers without pleading factual allegations as to the specific relationship between AdTrader and each publisher.

Moreover, a claim for intentional interference with prospective economic advantage must allege an "independent wrongful" conduct that is "by some measure beyond the fact of the interference itself." *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1220 (Ct. App. 2006) (internal quotation marks and citation omitted). Although AdTrader argues that it alleges a breach of the implied covenant, breach of the implied duty, and Google's false misrepresentations as the independent wrongful conduct (Opp'n 10), those allegations fail to state a claim as discussed in this order.[2] Therefore, AdTrader has not pled the requisite "independent wrongful" conduct required to support a claim for intentional interference with prospective economic advantage.

Accordingly, the Court GRANTS Google's motion to dismiss the fifth cause of action apart from DingIt WITH LEAVE TO AMEND.

### E.    Sixth Cause of Action: Declaratory Relief

The FAC's sixth cause of action seeks declaratory judgment that the Limitation of Liability

---

[2] The parties dispute whether a breach of the implied covenant of good faith and fair dealing may constitute an independent wrongful conduct that supports a claim for intentional interference with prospective economic advantage. *See* Opp'n 10; Reply 5. The Court need not determine this issue because AdTrader's claim for breach of the implied covenant of good faith and fair dealing is not sufficiently pled.

United States District Court
Northern District of California

1  provision of AdTrader's Google Services Agreement is unconscionable.  FAC ¶¶ 191–98.  The

2  Limitation of Liability provision states the following:

3  **11.1 Limitation**

4  (a)  NEITHER PARTY WILL BE LIABLE UNDER THIS
AGREEMENT FOR LOST REVENUES OR INDIRECT,
5  SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY,
OR PUNITIVE DAMAGES, EVEN IF THE PARTY KNEW OR
6  SHOULD HAVE KNOWN THAT SUCH DAMAGES WERE
POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT
7  SATISFY A REMEDY.

8  (b)  NEITHER PARTY WILL BE LIABLE UNDER THIS
AGREEMENT FOR MORE THAN THE NET AMOUNT THAT
9  PARTY HAS RECEIVED AND RETAINED UNDER THIS
AGREEMENT DURING THE 12 MONTHS BEFORE THE
10  CLAIM ARISES.

11  Section 11.1, Google Services Agreement.

12  "[U]nconscionability has both a procedural and a substantive element...." *Armendariz v.*

13  *Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000) (internal citations omitted).

14  "The prevailing view is that procedural and substantive unconscionability must both be present in

15  order for a court to exercise its discretion to refuse to enforce a contract or clause under the

16  doctrine of unconscionability." *Id.* (internal citations omitted).  "But they need not be present in the

17  same degree . . . the more substantively oppressive the contract term, the less evidence of

18  procedural unconscionability is required to come to the conclusion that the term is unenforceable,

19  and vice versa." *Id.* (internal citations omitted).

20  Google first argues that the Limitation of Liability provision is not procedurally

21  unconscionable on the grounds that the FAC alleges that other advertising platforms exist.  Mot.

22  13–14.  AdTrader responds that courts have held that it is inappropriate to dismiss a claim of

23  unconscionability at the pleading stage in light of Cal. Civ. Code § 1670.5.  Opp'n 10.  AdTrader

24  further asserts that the FAC alleges that the Limitation of Liability provision is "presented as a

25  take-it-or-leave-it provision."  *Id.*

26  The Court finds that AdTrader has sufficiently alleged at least a degree of procedural

27  unconscionability.  As AdTrader points out, the FAC alleges that the Limitation of Liability

28  provision is "presented as a take-it-or-leave-it provision."  FAC ¶ 198.  The FAC also pleads that

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  "Google has a virtual monopoly in the field of on-line advertising, [and] anyone who wishes to

2  monetize their websites through advertising has to use AdX." *Id.*  Those allegations allow a

3  reasonable inference to be drawn that the Limitation of Liability provision constitutes a term "over

4  which a party of lesser bargaining power had no opportunity to negotiate" and thus reflects

5  "procedural[] unconscionab[ility] to at least some degree." *Bridge Fund Capital Corp. v.*

6  *Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (citing *Armendariz*, 24 Cal. 4th at

7  114).

8          Google next argues that the Limitation of Liability provision is not substantively

9  unconscionable.  Mot. 14–15.  Google contends that the provision at issue expressly applies to

10  both parties and that mutual provisions do not sanction one-sided results.  *Id.* at 14.  AdTrader

11  counters that Google's argument fails because substantive unconscionability does not turn merely

12  on whether a contract term is facially neutral.  Opp'n 11.  AdTrader further asserts that Google is

13  far more likely to benefit from the Limitation of Liability provision than the publishers.  *See id.* at

14  12.

15          Having considered the FAC's allegations, the Court concludes that AdTrader has

16  sufficiently alleged substantive unconscionability at this stage of the proceeding.  As AdTrader

17  asserts, the FAC pleads that Google has never brought a claim against an AdX publisher that could

18  have resulted in "consequential, special, indirect, exemplary, or punitive damages."  FAC ¶ 195.

19  In addition, the FAC alleges that Google has exempted situations where "an AdX publisher's

20  conduct could conceivably cause more-than-compensatory damages to Google."  *Id.* ¶ 196.

21  Specifically, the Limitation of Liability provision excludes "breaches of confidentiality obligations

22  contained in this Agreement, violations of a party's Intellectual Property Rights by the other party,

23  or indemnification obligations contained in this Agreement[.]" *Id.*  According to the FAC, those

24  exemptions solely benefit Google.  *Id.*  Those allegations are sufficient.

25          The Court notes that California Civil Code § 1670.5(b) provides that "[w]hen it is claimed

26  . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a

27  reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid

28  the court in making the determination."  The parties have not had a reasonable opportunity do so.

1    And as discussed above, the Court finds that the FAC's allegations are sufficient to survive the

2    pleading stage.  Accordingly, the Court DENIES Google's motion to dismiss the sixth cause of

3    action.  To be clear, a more developed record may reveal that the Limitation of Liability provision

4    is not unconscionable.

5          **F.     Seventh Cause of Action: Fraud**

6          Google argues that Plaintiffs do not allege that Google made any false representations

7    concerning AdWords or AdX and fail to satisfy the particularity requirement under Rule 9(b) to

8    assert their fraud claim.  Mot. 15–16.  Google further asserts that Plaintiffs' fraud claim fails

9    because they did not allege that Google's representations concerning the DBM agreement were

10   false when made.  *Id.* at 16–17.  In addition, Google contends that Plaintiffs have not pled the

11   requisite reliance on the alleged misrepresentations to support their fraud claim.  *Id.* at 17–18.  In

12   Google's view, Plaintiffs' purported reliance is contradicted by the FAC's allegations that

13   Plaintiffs discovered that they were not receiving refunds as early as May or June 2017 but that

14   they continued to use Google's DBM service.  *Id.*

15         Plaintiffs respond that they adequately alleged the falsity of Google's statements because

16   the FAC pleads that AdTrader's "AdWords invoices . . .  showed that Google had not issued" the

17   refunds and that SCB "never received full refunds" for invalid activity on SCB's advertisements

18   placed on an AdX publisher website.  Opp'n 12–13.  According to Plaintiffs, a Google

19   representative's statement that Google's refund policy was "being expanded" to encompass DBM

20   in December 13, 2017 indicates that Google's earlier statements regarding refunds were false at

21   the time Plaintiffs signed up for DBM.  *Id.* at 13–14.  Regarding reliance, Plaintiffs argue that

22   AdTrader need not demonstrate that the sole reason it signed up for DBM was to receive refunds

23   for invalid activity.  *Id.* at 15.  Plaintiffs also assert that the issue of reliance is an issue of fact that

24   is inappropriate for resolution at the pleading stage.  *Id.* at 15–16.

25         The Court agrees with Google's arguments that the fraud claim is not sufficiently pled.  A

26   plaintiff asserting fraud "must state with particularity the circumstances constituting fraud."  Fed.

27   R. Civ. P. 9(b).  Here, the FAC references at least three distinct agreements: (1) AdX Buyer

28   Agreement dated March 2014 (Ex. 2 to FAC, ECF 29-2); (2) DBM Agreement dated March 2016

United States District Court
Northern District of California

13

(Ex. 3 to FAC, ECF 29-3); and (3) AdWords Agreement dated February 2013 (Ex. 4 to FAC, ECF 29-4).  While the FAC alleges that Google made various "representations" about offline analysis of invalid clicks and refunding advertisers for those clicks, the FAC generally does not adequately plead when a certain representation was made, how that representation related to which of the three agreements, and how Plaintiffs relied on a specific representation in relation to the three agreements.  For these reasons, the particularity of the circumstances concerning the alleged fraud cannot be discerned.

Moreover, the FAC does not sufficiently allege how Google's various "representations" regarding offline analysis of invalid clicks and refunds pertain to the DBM Agreement.  As such, the allegation that Google later "expanded" it refund policy to encompass DBM in late 2017 does not by itself support an inference that Google's earlier representations about refunds were false at the time Plaintiffs signed up for DBM.

Accordingly, the Court finds that Plaintiffs fail to state a claim based on fraud.  Google's motion to dismiss the seventh cause of action is GRANTED WITH LEAVE TO AMEND.

### G.    Eighth Cause of Action: Negligent Misrepresentation

Google asserts that Plaintiffs' negligent misrepresentation claim is deficient for similar reasons discussed for their fraud claim.  *See* Mot. 18–19.  Likewise, Plaintiffs disagree based on their arguments presented in support of the fraud claim.  Opp'n 17.

While the elements of negligent misrepresentation is similar to those as fraud, a plaintiff asserting a negligent misrepresentation claim needs to show that the defendant had "no reasonable ground[s]" to believe the representation was true rather than that the defendant knew the representation was false.  *See B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (Ct. App. 1997).  This distinction does not affect the Court's analysis discussed for Plaintiffs' fraud claim, and thus the Court finds that the negligent misrepresentation claim is also deficient.  The Court therefore GRANTS Google's motion to dismiss the eighth cause of action WITH LEAVE TO AMEND.

### H.    Ninth Cause of Action: California Penal Code § 496(c)

Plaintiffs' ninth cause of action alleges a violation of California Penal Code § 496(c).

1  Section 496 provides a civil cause of action to "[a]ny person who has been injured" by a defendant

2  "who buys or receives any property . . . stolen or that has been obtained in any manner constituting

3  theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells,

4  withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the

5  property to be so stolen or obtained."  Cal. Penal Code §§ 496(a), (c).

6  Google argues that a defendant is liable under § 496(c) only if it received property

7  obtained by theft and that Plaintiffs rely on Google's alleged misrepresentations to show theft.

8  Mot. 19.  According to Google, Plaintiffs' § 496(c) claim fails because their fraud claim fails.  *Id.*

9  Plaintiffs disagree on the grounds that they believe that their fraud claim is sufficiently pled.

10  Opp'n 17.

11  During the hearing, the Court indicated that it was inclined to dismiss the § 496(c) claim

12  without leave to amend because Plaintiffs cannot allege that Google obtained stolen property by

13  grand theft, petty theft, embezzlement, or extortion.  Hearing Tr. 7:10–14.  In response, Plaintiffs

14  argued that allegations of fraud can support a § 496(c) claim.  For support, Plaintiffs cited *Bell v.*

15  *Feibush*, 212 Cal. App. 4th 1041 (Ct. App. 2013).  *Id.* at 14:11–15:3, 17:5–6.

16  In *Bell*, the defendant received a loan from the plaintiff based on the false pretense that the

17  defendant owned the trademark "Toughlove" and needed the money to settle a lawsuit over his

18  interests in the so-called "toughlove" industry.  212 Cal. App. 4th at 1043.  The defendant further

19  represented to the plaintiff that the defendant's business plan was to launch a national "revamped"

20  version of Toughlove that would reap profits.  *Id.*  But the defendant's representations were false,

21  and "the so-called toughlove business was a scam."  *Id.*  When the plaintiff asked for her money

22  back, the defendant gave a "litany of excuses" and never repaid her.  *Id.*  The court held that the

23  defendant was liable under § 496(c) because "theft" under the meaning of § 496 constitutes

24  knowingly defrauding a person of money by false representation.  *Id.* at 1048.

25  To be sure, *Bell* holds that receiving money through false misrepresentation may constitute

26  theft.  212 Cal. App. 4th at 1049.  However, the Court finds that the theft based on fraud in *Bell* is

27  wholly different from the fraud which Plaintiffs allege in this case.  In *Bell*, the defendant received

28  money based on false misrepresentations regarding his scam toughlove business.  *Id.* at 1043.  As

United States District Court
Northern District of California

15

such, the loan transaction itself was fraudulent because it was premised on the false existence of a scam business.  In contrast, here, Google received advertisement fees based on advertisement impressions.  There is no allegation that Google fabricated the number of impressions, and Plaintiffs do not represent that they rely on such a theory.  In other words, Google lawfully received fees under the parties' mutual agreement and thus it did not receive stolen property.  To the extent that Plaintiffs allege that Google made false representations about offline analysis of invalid clicks and refunding advertisers for those clicks, such allegations pertain to purported fraud regarding Google's refund policy but not whether Google falsely charged fees based on nonexistence impressions.  For these reasons, the Court concludes that even if Plaintiffs were to amend the complaint to cure the deficiencies in their fraud claim, the allegations would not establish that Google received stolen property.  Thus, Plaintiffs' § 496(c) claim would fail again.

Accordingly, Google's motion to dismiss the ninth cause of action is GRANTED WITHOUT LEAVE TO AMEND.

### I.    Tenth Cause of Action: Breach of Contract

Google argues that Plaintiffs' breach of contract claim fails because there is no contract term which "calls for advertiser refunds."  *See* Mot. 19.  Specifically, Google points out that the FAC alleges that "[t]he DoubleClick Advertising Agreement does not have any express language relating to the parties' obligations when Google discovers that its advertisers had spent money on websites Google determined to have had fraudulent or invalid traffic."  *Id.* at 20 (citing FAC ¶ 253).

Plaintiffs counter that they have stated a claim under "theories of implied terms or contract modification despite the lack of such express language."  Opp'n 17.  Plaintiffs argue that the AdX Buyer Agreement, DBM Agreement, and AdWords Agreement contain ambiguous terms regarding advertisement trafficking and thus the Court should consider extrinsic evidence.  *Id.* at 17–18.  Plaintiffs also contend that, even if there is no ambiguity, Google's course of conduct shows that the parties intended the contracts to require Google to provide refunds.  *Id.* at 19.  In the alternative, Plaintiffs assert that Google's conduct modified the contracts and Google waived the right to be paid for invalid activity.  *Id.* at 20.

Upon reviewing the FAC, the Court finds that Plaintiffs' tenth cause of action is deficient. As Google argues, the FAC does not sufficiently allege which terms of the agreement(s) at issue have been breached. While Plaintiffs assert that the AdX Buyer Agreement, DBM Agreement, and AdWords Agreement contain ambiguous terms, the FAC does not contain those allegations. Thus, the Court is unpersuaded by Plaintiffs' arguments that rely on the purported ambiguity of the contracts. Moreover, to the extent that Plaintiffs rely on course of conduct, Plaintiffs have not shown a mutual course of conduct that evinces the parties' intent to require Google to provide refunds. The Court also rejects Plaintiffs' alternative argument that Google's conduct modified the contracts and waived the right to be paid for invalid activity. Such an assertion is not pled in the FAC, and the Court may not consider allegations not contained in a complaint.

Accordingly, the Court GRANTS Google's motion to dismiss the tenth cause of action WITH LEAVE TO AMEND.

**J.      Eleventh Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Google asserts that Plaintiffs cannot rely on the implied covenant to subject Google to additional obligations that are absent in a contract. Mot. 21. Specifically, Google argues that Plaintiffs may not impose an additional obligation on Google that would require it to determine whether "advertisers' ads were only placed on pages with exclusively valid activity." *Id.* Plaintiffs respond that Google is wrong if it is contending that Plaintiffs cannot claim a breach of the implied covenant of good faith and fair dealing absent a showing of breach of contract. Opp'n 21.

Plaintiffs are correct that a breach of contract is not a prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999); *Patel v. New York Life Ins. Co.*, No. 11 CIV. 4895, 2012 WL 1883529, at *4 (S.D.N.Y. May 21, 2012). However, that does not mean that Plaintiffs may add obligations to the parties' contracts. *Integrated Storage*, 2013 WL 3974537, at *7 ("[T]he implied covenant of good faith and fair dealing's application is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the

United States District Court
Northern District of California

17

contract." (internal quotation marks and citation omitted)).  Like the second cause of action, as pled, the FAC attempts to add new obligations that do not expressly appear in the parties' agreements.  Plaintiffs may not rely on new obligations to assert a claim for breach of the implied covenant of good faith and fair dealing.  The Court therefore GRANTS Google's motion to dismiss the eleventh cause of action WITH LEAVE TO AMEND.

### K.   Twelfth Cause of Action: Breach of Implied Duty to Perform with Reasonable Care

Like the third cause of action, Plaintiffs allege the twelfth cause of action as a tort claim.  *See* FAC ¶ 269.  The parties raise similar arguments which were discussed for the third cause of action.  For the same reasons, the Court concludes that Plaintiffs cannot rely on a breach of implied duty to perform with reasonable care to assert a tort claim.  Accordingly, Google's motion to dismiss the twelfth cause of action is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.  The dismissal is without leave to amend insofar as Plaintiffs seek to assert the twelfth cause of action as a tort claim.  Plaintiffs, however, may amend the twelfth cause of action to allege that they seek only contract remedies based on this claim.  In that event, the amended claim must contain sufficient factual allegations to support the elements of a claim for breach of implied duty to perform with reasonable care.  This ruling does not determine whether such a claim is meritorious in this case.

### L.   Thirteenth Cause of Action: Unjust Enrichment

Google contends that Plaintiffs may not bring a claim for unjust enrichment where "an enforceable, binding agreement exists [to] defin[e] the rights of the parties."  Mot. 23 (citation omitted).  Plaintiffs respond that "an unjust enrichment claim does not lie when there is contract governing the *specific subject matter* in dispute—not whenever there is a contract between the parties."  Opp'n 23 (emphasis in original).  On this basis, Plaintiffs assert that they may allege a claim for unjust enrichment as an alternative.

The Court generally agrees with Plaintiffs' argument that they may assert an alternative unjust enrichment claim.  However, to assert such a claim, Plaintiffs must allege that the parties do not have an enforceable contract pertaining to Google's advertisement services.  *Klein v. Chevron*

United States District Court
Northern District of California

1    *U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (Ct. App. 2012), *as modified on denial of reh'g* (Feb.

2    24, 2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties

3    have an enforceable agreement regarding a particular subject matter."). The Court rejects

4    Plaintiffs' argument that they may bring an alternative unjust enrichment claim so long as

5    Google's agreements do not require it to provide refunds for invalid activity. Plaintiffs' narrow

6    view of "subject matter" would essentially permit Plaintiffs to rewrite a contract to add a

7    nonexistent contract term. The subject matter of the parties' agreement is Google's advertisement

8    services, and thus Plaintiffs must allege in the alternative that the parties do not have an

9    enforceable contract pertaining to Google's advertisement services in order to plead an unjust

10   enrichment claim. *Klein*, 202 Cal. App. 4th at 1388–89. Because the FAC does not do so, the

11   thirteenth cause of action fails.

12       Accordingly, the Court GRANTS Google's motion to dismiss the thirteenth cause of action

13   WITH LEAVE TO AMEND.

14       **M.    Fourteenth Cause of Action: Violation of California's Unfair Competition Law**

15       Google argues that Plaintiffs lack standing to assert a claim under California's Unfair

16   Competition Law ("UCL") on the grounds that they did not bring this case for "the public in

17   general or individual consumers." Mot. 24 (citing *Dollar Tree Stores Inc. v. Toyama Partners*

18   *LLC*, 875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012)). Google also contends that Plaintiffs fail to

19   allege that Google engaged in unlawful, fraudulent, or unfair conduct. *Id.* at 24–25.

20       Plaintiffs respond that "Google's practice of refusing to provide credits for invalid activity

21   was based on contrary representations distributed widely to individual and business consumers

22   seeking to advertise online." Opp'n 24 (citing FAC ¶ 289). In Plaintiffs' view, this Court found

23   that nearly identical allegations established standing in *Free Range Content, Inc. v. Google Inc.*,

24   No. 14-CV-02329-BLF, 2016 WL 2902332 (N.D. Cal. May 13, 2016). Opp'n 24.

25       The Court is unpersuaded by Plaintiffs' arguments. "[W]here a UCL action is based on

26   contracts not involving either the public in general or individual consumers who are parties to the

27   contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp.*

28   *v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Ct. App. 2007). The FAC does not contain

United States District Court
Northern District of California

1    adequate factual allegations showing that the named Plaintiffs are not sophisticated corporate

2    plaintiffs.  In fact, the FAC suggests the opposite.  *See, e.g.*, FAC ¶ 31 ("AdX is viewed by

3    industry participants as a more sophisticated ad placement service compared to AdSense, and

4    therefore attracts more experienced and/or larger publishers.").  Also, *Free Range*, which involved

5    Google's AdSense service, is distinguishable.  In that case, the complaint alleged that the named

6    plaintiffs—two of whom were individuals—were "small and unsophisticated entities."  *See* Ex. 1

7    to Wong Decl. ("Third Am. Comp. in Free Range") ¶ 167, ECF 52-1.  In contrast, Plaintiffs' FAC

8    contains no such allegations.  As such, the Court finds that the FAC fails to plead that the named

9    Plaintiffs have standing to bring the UCL claim.

10        The FAC also raises a concern whether it sufficiently alleges that Google engaged in

11   "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17204.  The

12   Court need not reach this issue because the FAC fails to allege that the named Plaintiffs have

13   standing to assert the UCL claim.  Accordingly, the Court GRANTS Google's motion to dismiss

14   the fourteenth cause of action WITH LEAVE TO AMEND.

### N.    Fifteenth Cause of Action: Violation of the New York General Business Law § 349

15
16    Google contends that Plaintiffs' claim under the New York General Business Law § 349

17   fails because selling advertisements is not a consumer-oriented act.  Mot. 25 (citing *Cruz v.*

18   *NYNEX Info. Res.*, 703 N.Y.S.2d 103, 107 (App. Div. 2000) ("[A]dvertisement space in the

19   Yellow Pages is[] . . . a commodity available to businesses only . . . .")).  Plaintiffs disagree and

20   argue that one court has held that Yellow Book's false claim of "greater usage over another phone

21   book" was found to be "consumer-oriented."  Opp'n 25 (citing *Verizon Directories Corp. v.*

22   *Yellow Book USA, Inc.*, 338 F. Supp. 2d 422, 428 (E.D.N.Y. 2004)).  On this basis, Plaintiffs

23   assert that the FAC's allegations are sufficient to plead the fifteenth cause of action.  *Id.*

24        To state a claim under § 349, a plaintiff must allege "(1) a deceptive consumer-oriented act

25   or practice which is misleading in a material respect, and (2) injury resulting from such act."

26   *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 402 (App. Div. 2002).

27   As shown by the parties' reliance on different cases, courts have not reached a consensus whether

28

United States District Court
Northern District of California

1   small business owners qualify as consumers within the meaning of § 349.  *See Spirit Locker, Inc.*

2   *v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 304 (E.D.N.Y. 2010).  That said, "[w]here the

3   gravamen of the complaint is harm to a business as opposed to the public at large, the business

4   does not have a cognizable cause of action under § 349."  *Gucci Am., Inc. v. Duty Free Apparel,*

5   *Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003).  Here, the FAC merely alleges that "Google's

6   deceptive acts and practices were consumer-oriented in that they were based on representations

7   that were distributed widely on the Internet and directed at thousands of individuals and small

8   businesses looking to engage in online advertising."  FAC ¶ 298.  The Court finds that the FAC's

9   allegations are insufficient to adequately plead that "the gravamen of the complaint is harm to a

10  business as opposed to the public at large."  *Gucci*, 277 F. Supp. 2d at  274.  Moreover, such

11  "conclusory allegations as to the effect of the conduct on other consumers are insufficient to

12  transform a private dispute into conduct with further-reaching impact."  *Scarola v. Verizon*

13  *Commc'ns, Inc.*, 45 N.Y.S.3d 464, 465 (App. Div. 2017) (finding that the complaint failed to plead

14  a claim under General Business Law § 349).

15       Accordingly, the Court GRANTS Google's motion to dismiss the fifteenth cause of action

16  WITH LEAVE TO AMEND.

17  **V.   CONCLUSION**

18       For the foregoing reasons, IT IS HEREBY ORDERED that:

19       (1) Google's motion to dismiss the second cause of action based on breach of the implied

20            covenant of good faith and fair dealing is GRANTED WITH LEAVE TO AMEND.

21       (2) Google's motion to dismiss the third cause of action based on breach of the implied

22            duty to perform with reasonable care is GRANTED WITH LEAVE TO AMEND IN

23            PART and WITHOUT LEAVE TO AMEND IN PART.

24       (3) Google's motion to dismiss the fourth cause of action based on intentional interference

25            with contract (apart from DingIt) is GRANTED WITH LEAVE TO AMEND.

26       (4) Google's motion to dismiss the fifth cause of action based on intentional interference

27            with prospective economic advantage (apart from DingIt) is GRANTED WITH

28            LEAVE TO AMEND.

(5) Google's motion to dismiss the sixth cause of action for declaratory relief is DENIED.

(6) Google's motion to dismiss the seventh cause of action based on fraud is GRANTED WITH LEAVE TO AMEND.

(7) Google's motion to dismiss the eighth cause of action based on negligent misrepresentation is GRANTED WITH LEAVE TO AMEND.

(8) Google's motion to dismiss the ninth cause of action based on violation of California Penal Code § 496(c) is GRANTED WITHOUT LEAVE TO AMEND.

(9) Google's motion to dismiss the tenth cause of action based on breach of contract is GRANTED WITH LEAVE TO AMEND.

(10) Google's motion to dismiss the eleventh cause of action based on breach of the implied covenant of good faith and fair dealing is GRANTED WITH LEAVE TO AMEND.

(11) Google's motion to dismiss the twelfth cause of action breach of the implied duty to perform with reasonable care is GRANTED WITH LEAVE TO AMEND IN PART and WITHOUT LEAVE TO AMEND IN PART.

(12) Google's motion to dismiss the thirteenth cause of action based on unjust enrichment is GRANTED WITH LEAVE TO AMEND.

(13) Google's motion to dismiss the fourteenth cause of action based on violation of California's Unfair Competition Law is GRANTED WITH LEAVE TO AMEND.

(14) Google's motion to dismiss the fifteenth cause of action based on violation of New York's General Business Law § 349 is GRANTED WITH LEAVE TO AMEND.

If Plaintiffs wish to amend their complaint, the amended complaint must be filed **within thirty (30) days of the date of this order**.

**IT IS SO ORDERED.**

Dated:  July 13, 2018

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California