COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
KYLE C. WONG (224021) (kwong@cooley.com)
AUDREY J. MOTT-SMITH (300550) (amottsmith@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADTRADER, INC., et. al, | Case No. 5:17-cv-07082 (BLF) |
| Plaintiff, | **DEFENDANT GOOGLE LLC'S MOTION TO DISMISS CERTAIN CLAIMS IN SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| GOOGLE LLC, | **F.R.C.P. 12(b)(6)** |
| Defendant. | Hearing Date:    March 7, 2019<br>Time:               9:00 AM<br>Courtroom:      Courtroom 3, 5th Floor<br>Judge:            Hon. Beth L. Freeman<br>Trial Date:       June 6, 2022 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................................ 3

    A.   Google's publisher-side products and services. ............................................... 4

    B.   Google's advertiser-side products and services. ............................................... 4

    C.   Plaintiffs used Google's advertising- and publishing-side services. ........................... 5

    D.   Google terminated AdTrader's publisher-side account. .......................................... 6

    E.   Plaintiffs' allege Google did not issue certain refunds. ......................................... 6

III.   ARGUMENT ..................................................................................................................... 7

    A.   The Court should again dismiss AdTrader's individual claim for breach of the implied covenant of good faith and fair dealing (Count II). ................................... 7

    B.   All of Plaintiffs advertiser class claims are precluded as a matter of law. .................. 8

        1.   Breach of contract (Count V). ......................................................................... 8

            a.   The contracts are fully integrated and Plaintiffs' unilateral understanding is inadmissible extrinsic evidence. .............................. 9

            b.   Plaintiffs cannot show a latent ambiguity in the contract as a matter of law. ........................................................................... 10

            c.   There are no implied terms in the contracts. ..................................... 12

            d.   There was no waiver. ...................................................................... 13

            e.   Google is not estopped from enforcing the contracts as written. ........ 14

        2.   Breach of the implied covenant of good faith and fair dealing (Count VI). ............................................................................................................... 15

        3.   Google did not breach any implied duty of reasonable care (Count VII). .............................................................................................................. 16

        4.   The Court should dismiss the False Advertising Law claim (Count VIII). ............................................................................................................. 16

            a.   Plaintiffs fail to plead the "untrue or misleading" statements with sufficient particularity. ......................................................... 17

            b.   Plaintiffs cannot bring a FAL claim related to the DBM Agreement because that agreement is governed by New York law. ............................................................................................... 18

            c.   Plaintiffs also lack statutory standing to bring their FAL claim. ........ 19

                (1)   AdTrader's continued use of DBM undercuts its supposed actual reliance. ................................................... 19

                (2)   Plaintiffs' reliance was not "reasonable" because of the terms of the AdWords and AdX Buyer Agreements. ............ 20

                (3)   Plaintiffs' FAL claim is not on behalf of the public. ............. 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(continued)

Page

           d.     Plaintiffs' allegations about AdX Buyer and AdWords are insufficient to sustain either theory of their FAL claim....................22

     5.    Plaintiffs fail to state a claim under the UCL (Count IX)...........................23

IV.    CONCLUSION.........................................................................................................25

Cooley LLP
Attorneys At Law
San Francisco

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*AdTrader, Inc. v. Google LLC,*
No. 17-cv-7082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018)..................................*passim*

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.,*
744 F.3d 595 (9th Cir. 2014) .........................................................................................8

*Alameda Cty. Flood Control v. Dep't of Water Res.,*
213 Cal. App. 4th 1163 (2013) ...................................................................................11

*Alling v. Universal Mfg. Corp.,*
5 Cal. App. 4th 1412 (1992) ...................................................................................9, 10

*In re Amoroso,*
222 F. App'x 542 (9th Cir. 2007) ...............................................................................10

*Anderson v. Holder,*
673 F.3d 1089 (9th Cir. 2012) ...................................................................................22

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................17, 19

*Azadpour v. Sun Microsystems, Inc.,*
No. 06-cv-3272, 2007 WL 2141079 (N.D. Cal. July 23, 2007) ...................................21

*Berryman v. Merit Prop. Mgmt., Inc.,*
152 Cal. App. 4th 1544 (2007) ...................................................................................25

*Cal. State Emps.' Ass'n v. Pub. Emp't Relations Bd.,*
51 Cal. App. 4th 923 (1996) ......................................................................................13

*Capella Photonics, Inc. v. Cisco Sys., Inc.,*
77 F. Supp. 3d 850 (N.D. Cal. 2014) ..........................................................................23

*Central Bldg. LLC v. Cooper,*
127 Cal. App. 4th 1053 (2005) ....................................................................................9

*Chuang v. Dr. Pepper Snapple Grp., Inc.,*
No. 17-cv-1875, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ..................................23

*Cozad v. Astrazeneca LP,*
No. 14-cv-2049, 2016 WL 4539944 (E.D. Cal. Aug. 30, 2016)...................................10

*Dameron Hosp. Ass'n v. AAA N. Cal., Nev., & Utah Ins. Exch.,*
229 Cal. App. 4th 549 (2014) ....................................................................................15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dollar Tree Stores, Inc. v. Toyama Partners LLC*,
  875 F. Supp. 2d 1058 (N.D. Cal. 2012) ..................................................................22, 24

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) ...................................................................................25

*Elias v. Hewlett-Packard Co.*,
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) ...................................................................25

*Elofson v. Bivens*,
  No. 15-cv-05761-BLF, 2017 WL 566323 (N.D. Cal. Feb. 13, 2017) ...................8, 25

*Franconero v. Universal Music Corp.*,
  No. 02-cv-1963, 2003 WL 22990060 (S.D.N.Y. Dec. 19, 2003) ...........................16

*Frank Lloyd Wright Found. v. Kroeter*,
  697 F. Supp. 2d 1118 (D. Ariz. 2010) .....................................................................20

*Free Range Content, Inc. v. Google, Inc.*,
  No. 14-cv-2329, 2016 WL 2902332 (N.D. Cal. May 13, 2016) ..........................7, 24

*Grossberg v. Grossberg*,
  104 A.D. 2d 439 (N.Y. Sup. Ct. App. Div. 1984) ....................................................10

*Guo v. IBM 401(k) Plus Plan*,
  No. 13-cv-8223, 2016 WL 4991666 (S.D.N.Y. Sept. 15, 2016) ...............................9

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
  No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..............................17

*Integrated Storage Consulting Servs., Inc. v. NetApp., Inc.*,
  No. 12-cv-6209, 2013 WL 3974537 (N.D. Cal. July 31, 2013) ..............................15

*Kane v. Chobani, Inc.*,
  No. 12-cv-2425, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .............................20

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002), *as modified* (May 22, 2002) ............................................22

*Koes v. Allstate Ins. Co.*,
  No. 07-cv-6311, 2008 WL 11340377 (C.D. Cal. May 8, 2008) ..............................10

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ........................................................................................19, 20

Cooley LLP
Attorneys At Law
San Francisco

iv.

**Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lam v. Gen. Mills, Inc.*,
  859 F. Supp. 2d 1097 (N.D. Cal. 2012) ..........................................................................22

*Lange v. TIG Ins. Co.*,
  68 Cal. App. 4th 1179 (1998) ........................................................................................14

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
  176 F. Supp. 3d 949 (E.D. Cal. 2016)........................................................................10, 11

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ........................................................................................24

*Litchhult v. USTRIVE2, Inc.*,
  No. 10-cv-3311, 2013 WL 3491076 (E.D.N.Y. July 10, 2013)........................................10

*Macris v. Bank of Am., N.A.*,
  No. 11-cv-1986, 2012 WL 273120 (E.D. Cal. Jan. 30, 2012) ........................................15

*In re Marriage of Corona*,
  172 Cal. App. 4th 1205 (2009) ......................................................................................12

*Masterson v. Sine*,
  68 Cal. 2d 222 (1968) ....................................................................................................16

*McFarland v. Memorex Corp.*,
  493 F. Supp. 631 (N.D. Cal. 1980) ................................................................................23

*Mehta v. Wells Fargo Bank, N.A.*,
  No. 10-cv-0944, 2011 WL 1157861 (S.D. Cal. Mar. 29, 2011)......................................15

*Moore v. Regents of the Univ. of Cal.*,
  No. 15-cv-05779, 2016 WL 4917103 (N.D. Cal. Sept. 15, 2016)........................6, 8, 25

*Noll v. eBay, Inc.*,
  282 F.R.D. 462 (N.D. Cal. 2012)................................................................................17, 19

*Pierry, Inc. v. Thirty-One Gifts, LLC*,
  No. 17-cv-3074, 2017 WL 4236934 (N.D. Cal. Sept. 25, 2017)....................................25

*R&B Auto Ctr., Inc. v. Farmers Grp., Inc.*,
  140 Cal. App. 4th 327 (2006) ....................................................................................13, 14

*San Diego Cty. Emps. Ret. Ass'n v. Maounis*,
  749 F. Supp. 2d 104 (S.D.N.Y. 2010)..............................................................................10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v.

**DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Shuting Kang v. Harrison*,
    No. 17-cv-3034, 2017 WL 6558676 (N.D. Cal. Dec. 22, 2017).....................................................23

*Singh v. Google Inc.*,
    No. 16-cv-3734, 2017 WL 2404986 (N.D. Cal. June 2, 2017).....................................9, 12, 19, 23

*Spellman v. Dixon*,
    256 Cal. App. 2d 1 (1967) ............................................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................................................22

*UCAR Tech. (USA), Inc. v. Yan Li*,
    No.5:17-cv-01704, 2018 WL 2555429 (N.D. Cal. June 4, 2018) .................................................13

*Utica Alloys, Inc. v. Alcoa Inc.*,
    303 F. Supp. 2d 247 (N.D.N.Y. 2004).........................................................................................11

*Woods v. Google Inc.*,
    No. 11-cv-1263, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) .............................................19, 21

*Xcellence, Inc. v. Arkin Kaplan Rice LLP*,
    No. 10-cv-3304, 2011 WL 1002419 (S.D.N.Y. Mar. 15, 2011)....................................................20

**Statutes**

Cal. Bus. & Prof. Code § 17500 .........................................................................................................22, 23

**Other Authorities**

Cal. Bill Analysis, S.B. 597 Assem. (Reg. Sess. 1997-98), June 23, 1998 ..........................................22

Federal Rule of Civil Procedure 23 .........................................................................................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2019, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 280 South First Street, San Jose, California 95113, in Courtroom 3, 5th Floor, Defendant Google LLC ("Google") will move to dismiss certain claims in the Second Amended Complaint (the "SAC") of AdTrader, Inc. ("AdTrader"), Classic and Food EOOD ("Classic"), LML Consult Ltd. ("LML"), Ad Crunch Ltd. ("Ad Crunch"), Fresh Break Ltd. ("Fresh Break"), and Specialized Collections Bureau, Inc. ("SCB") (collectively "Plaintiffs"). Google's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and upon all such other matters presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Dismissal with prejudice of claims two and five through nine, for failure to state a claim.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Did Plaintiff AdTrader state a claim for breach of the implied covenant of good faith and fair dealing in connection with Google's termination of its AdX account?

2. Did Plaintiffs state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the implied duty to perform with reasonable care, false advertising, or unfair competition, in connection with Google's alleged failure to pay advertiser refunds?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs' third attempt to plead their claims is little more than a repackaging of their previously-failed attempt. The Court found the prior complaint inadequate in its legal foundation, its grounding in the relevant contracts, and its factual underpinning, and Plaintiffs have cured none of these defects (apart from the claims such as fraud, which Plaintiffs cured by abandonment). The Court should now dismiss these unsustainable claims, each of which is discussed below, with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

*Individual Publisher Claim – Breach of the Implied Covenant*

Plaintiffs substantially narrowed their causes of action related to their individual claims as an AdX publisher, but still persist in asserting a redundant claim for breach of the implied covenant of good faith and fair dealing, "in the alternative."  Even with that framing, this claim should be dismissed.  Google's contract imposes a duty to "reasonably determine" whether ad activity is invalid and whether to refund Google's advertisers.  This term imposes an express, objective standard that leaves no room for the additional obligations that AdTrader asserts should be implied in the contract.  AdTrader's assertion that this claim should go forward if the Court determines that the contract invests Google with "subjective discretion," makes no sense. Plaintiffs plead no facts and point to no contract provisions that could possibly support such a finding, so their amendment changes nothing.

*Advertiser Class Claims - Breach of Contract*

Plaintiffs did no better in recasting their class claims on behalf of advertisers, all of which the Court dismissed before and should dismiss again.  For the advertiser breach of contract claim, the contracts speak for themselves and contain no refund rights.  Plaintiffs' effort to address this fundamental flaw by simply deleting their previous allegations admitting as much cannot change what the contracts say.  Nor do Plaintiffs' claims that they "understood" they would receive refunds matter. Their understanding is irrelevant to the interpretation of these integrated contracts as a matter of law. Plaintiffs next reference, as they did before, extrinsic evidence that does not use and has no bearing on the language of the relevant contracts, and does nothing to establish ambiguity.  The Court should reject contract arguments so untethered to the actual words of these integrated agreements.  Finally, Plaintiffs' attempt to use waiver and estoppel to add a refund right missing from the contract fails for several reasons, including that Google never intentionally relinquished any right and that Plaintiffs have not adequately alleged reliance on Google's supposed refund promises.

*Advertiser Class Claims – Implied Covenant and Implied Duty of Reasonable Care*

Plaintiffs' next two claims under the implied covenant and implied duty of reasonable care fail for the same reasons the Court said they did two months ago—because they are grounded on obligations that do not appear in the contract and that cannot be added via an implied term or duty. The Court ruled, "Plaintiffs may not rely on new obligations to assert a claim for breach of the implied

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

covenant," yet Plaintiffs' sole basis for this "alternative" claim in the SAC is a new obligation, nowhere in the contracts, that Google exercise discretion regarding refunds.  Likewise, Plaintiffs' reasonable care claim arises from a supposed, non-contractual duty Google had to provide certain advertising metrics to its customers.  In other words, contrary to numerous, clear authorities, Plaintiffs seek to read into the relevant contracts provisions to which Google never agreed.

*Advertiser Class Claims – California False Advertising Law*

In light of the Court's ruling, Plaintiffs appropriately jettisoned their baseless fraud and negligent misrepresentation claims.  They apparently failed to realize, however, that the California False Advertising Law ("FAL") claim they hoped to swap into the SAC includes many of the same requirements.  Plaintiffs' FAL claim also needs to be pled with particularity, which Plaintiffs failed to do, in numerous respects.  The FAL claim requires Plaintiffs to plead reliance on Google's allegedly false claims, which Plaintiffs are, again, unable to do.  And, as before, Plaintiffs' lack of factual allegations even showing which statements corresponded to which advertising services prevents Plaintiffs from having any clear allegations that what Google said was false.  Thus, the new FAL claim is no more viable than Plaintiffs' failed fraud and negligent misrepresentation claims.

*Advertiser Class Claims – California Unfair Competition Law*

Lastly, Plaintiffs' claim under California's Unfair Competition Law ("UCL") cannot proceed both because, as before, it does not implicate the interests of the public or general consumers and it is derived solely from Plaintiffs' other advertiser claims, which fail for the reasons just discussed.

The Court should dismiss with prejudice all of Plaintiffs' advertiser-side claims as well as AdTrader's implied covenant publisher-side claim.  Google is fully prepared to address AdTrader's remaining, baseless individual publisher-side claims, but Google should not be subject to the expensive and burdensome process of resisting Plaintiffs' other legally meritless causes of action.

## II.   STATEMENT OF FACTS

As this Court acknowledged in its Order dismissing Plaintiffs' Amended Complaint, Google provides services for both (1) publishers who want to sell ad space on their webpages to fund the content they create and (2) advertisers, or intermediaries who assist them, who want to buy ad space to display ads online. *AdTrader, Inc. v. Google LLC*, No. 17-cv-7082-BLF, 2018 WL 3428525, at *1

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

(N.D. Cal. July 13, 2018); (*See* Second Am. Compl., ECF No. 70 ("SAC") ¶ 1.) Google's relevant services are discussed in further detail below.

### A.  Google's publisher-side products and services.

Website publishers use Google's "AdX" service to sell ad space on their pages.  (*Id.* ¶ 24-25.) Publishers who signed up to use AdX around June 2014, including AdTrader, agreed to the Google Services Agreement ("AdX Publisher Agreement"), which is governed by California law. (SAC ¶ 34; *see also id.* Ex. 1.)  Pursuant to this contract, AdX publishers agree to comply with Google policies regarding the content and layout of their pages, and agree that they can be suspended "at any time" for non-compliance. (*Id.* Ex. 1 §§ 3.1-3.2.)  They also agree that Google's payments "will be based on Google's accounting which may be filtered to exclude (i) invalid queries, impressions, conversions, or clicks, and (ii) any amounts refunded to advertisers in connection with Company's failure to comply with this Agreement, as reasonably determined by Google." (*Id.* ¶ 35 (emphasis added); *see also id.* Ex. 1 § 8.2(b).) The contract provides various termination rights, including termination for material breaches that cannot be remedied and for "any or no reason upon 30 days prior notice." (*Id.* ¶ 36; *see also* Ex. 1 § 13.2(b).)  The agreement contains an integration clause and can only be modified in writing. (*Id.* Ex. 1 § 14.7). The terms of the agreement do not include a right to an appeal if Google terminates a publisher, and Plaintiffs no longer allege such a right exists.  (*See*, *e.g. id.* ¶ 68.)

### B.  Google's advertiser-side products and services.

Google's offerings for advertisers, like SCB, and the intermediaries who assist them, like AdTrader, include the AdWords Advertising Program ("AdWords") (SAC ¶ 27), DoubleClick Ad Exchange Buyer ("AdX Buyer") (*id.* ¶ 26), and DoubleClick Bid Manager ("DBM") (*id.* ¶¶ 29-33). AdWords advertisers can display ads on sites that use Google publisher-side platforms (like AdX or AdSense); AdX Buyer allows ad networks and similar intermediaries to place ads both inside and outside of the Google network; and DBM offers access to publisher inventory from AdX and multiple "non-Google controlled ad exchanges." (*See id.* ¶¶ 23-32.)  To use the services, advertisers must agree to the services' respective terms. For AdWords users (including for SCB and AdTrader), the Google Inc. Advertising Program Terms ("AdWords Agreement") governs and contains a California choice-of-law provision. (SAC ¶¶ 40, 161; *see also id.* Ex. 4.) For AdX Buyer, users (including AdTrader)

Cooley LLP
Attorneys At Law
San Francisco

4.

Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF

must agree to the DoubleClick Ad Exchange Master Service Agreement ("AdX Buyer Agreement"), which incorporates terms and conditions called the "DoubleClick Ad Exchange Program Terms," and contains a California choice-of-law provision. (SAC ¶ 38; *see also id.* Ex. 2.)  Finally, for DBM users (including AdTrader) the DoubleClick Advertising Platform Agreement ("DBM Agreement") governs and contains a New York choice-of-law provision. (*Id.*¶ 39; *see also id.* Ex. 3.) A DBM user who wants to place advertisements on AdX publishers' webpages must ***also sign*** the AdX Buyer terms. (*Id.*¶ 39 ("An advertiser using DBM is not allowed to buy ad space on AdX until that advertiser has first executed the DoubleClick A d Exchange Agreement.").)

Both the AdWords and AdX Buyer Agreements include a provision stating "Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes and that its sole remedy is to make a claim for advertising credits . . . ." (*Id.* Ex. 4 § 7; *id.* Ex. 2 § 6.)  Accordingly, all advertisers who placed ads on the AdX publisher webpages that are the focus of this action—through any of Google's advertiser services—expressly acknowledged the intrinsic risk of being charged for invalid activity and agreed that their "sole remedy" was to request credits from Google.  (SAC ¶ 39; Ex. 4 § 7; Ex. 2 § 6.)  Despite this clear statement, Plaintiffs allege they "understood" the contracts required Google to automatically refund them for invalid activity.  (*Id.* ¶¶ 165-66, 185.)  As support, Plaintiffs rely on a number of extra-contractual webpages allegedly posted by Google.  (*See, e.g., id.* ¶¶ 41-45, 222.) However, all three agreements have integration clauses and can only be modified in writing expressly stating they are amending those terms. (*Id.* Ex. 2 § 12; *id.* Ex. 3 § 10; *id.* Ex. 4 § 12.) Plaintiffs do not allege any of the contracts are ambiguous, nor do they allege any terms in the contracts have special meanings.

### C.  Plaintiffs used Google's advertising- and publishing-side services.

SCB advertised its business using AdWords (SAC ¶ 57) and entered into the AdWords Agreement (*see id.* ¶ 161). Google also permits businesses, like AdTrader, to manage ad inventory for other publishers and/or ad campaigns for other advertisers. (*See id.* ¶¶ 25-26, 46-47.) These businesses are called Network Partner Managers ("NPM") on the publisher side, and "advertising agencies" or "advertising networks" on the advertising side. (*Id.* ¶¶ 25-26.) Plaintiffs allege that, over the past three years, AdTrader worked "extensively" with Google, buying advertising for its "advertising clients"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

and selling "ad space on behalf of its publisher clients." (*Id.* ¶¶ 47, 50-51.) Plaintiffs further allege that AdTrader, as a publisher, entered into the AdX Publisher Agreement and, as an advertiser, entered into the AdWords (*id.* ¶ 161), AdX Buyer (*id.* ¶ 38), and DBM Agreements (*id.* ¶ 39), and that Classic, LML, Ad Crunch, and Fresh Break are advertisers that are allegedly third-party beneficiaries of these agreements with AdTrader (*id.* ¶¶ 162, 183, 202, 211).

### D. Google terminated AdTrader's publisher-side account.

On May 19, 2017, Google terminated AdTrader's publisher-side AdX account in accordance with Section 13.2 of the AdX Publisher Agreement (SAC ¶¶ 63; *see also id.* Ex. 1 § 13.2) for clear and substantial violations of Google's policies. AdTrader requested Google review and reverse its decision; however, Google declined to reinstate AdTrader's account. (*Id.* ¶¶ 68-69.)  At the time of termination, AdTrader allegedly had a balance of $476,622.69 in its publisher-side account, which Google withheld. (*Id.* ¶ 76)  Of that, Google refunded $335,362.79 to advertisers. (*Id.* ¶ 76.) Plaintiffs allege that Google has not terminated the individual accounts of AdTrader's clients. (*Id.* ¶ 109.)

### E. Plaintiffs allege Google did not issue certain refunds.

Plaintiffs have conceded that Google's agreements with advertisers contain no express language obligating Google to refund advertisers money spent for ad events Google later determines are invalid activity. (*See*, *e.g.*, First Am. Compl. ("FAC") (ECF No. 29) ¶¶ 253-55[1]; *see also* SAC Exs. 2-4.) Additionally, Plaintiffs never allege that AdTrader or SCB made any claim for credits, as expressly required by the Google advertiser-side agreements they signed (*id.* Ex. 2 § 6, Ex. 4 § 7), and AdTrader continues to use Google's advertiser-side products through today (*id.* ¶ 47 ("AdTrader . . . ***uses*** DBM to place advertising bids on behalf of its advertising clients . . . .") (emphasis added)).

Plaintiffs allege AdTrader began investigating around May 2017 whether Google issued credits for invalid activity and allege that "[e]ven before filing this action [on December 13, 2017], AdTrader had independent proof that Google did not refund all of the revenue it withheld from AdTrader to advertisers." (*See* SAC ¶¶ 74-75, 77; *see also* Compl. (ECF No. 1) (filed December 13, 2017).) Plaintiffs allege that AdTrader, as an advertiser, did not receive credits for amounts withheld from

---

[1] Such allegations "serve[] as . . . judicial admission[s]." *Moore v. Regents of the Univ. of Cal.*, No. 15-cv-05779, 2016 WL 4917103, at *4 (N.D. Cal. Sept. 15, 2016) (quotes and citation omitted).

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

AdTrader, as a publisher. (*See, e.g.*, SAC ¶¶ 77-78.)  Plaintiffs do not, however, allege that SCB and AdTrader did not receive any credits from Google, nor do they allege that Plaintiffs themselves did not receive refunds they were owed for AdX Buyer. Plaintiffs allege only that a non-party, "Criteo," "informed AdTrader that the company's records did not show any evidence of it having received refunds from Google for advertising expenditures it made via AdX Buyer."  (*Id.* ¶ 83.)

## III.   ARGUMENT

### A.   The Court should again dismiss AdTrader's individual claim for breach of the implied covenant of good faith and fair dealing (Count II).

This Court previously dismissed AdTrader's publisher-side claim for breach of the implied covenant of good faith and fair dealing as 1) an impermissible "attempt to add obligations that do not expressly appear in the agreements," and 2) as duplicative of Plaintiff's cause of action for breach of contract.  *AdTrader*, 2018 WL 3428525, at *3.  The SAC does not remedy these defects.

AdTrader's individual claim for breach of the implied covenant now is pleaded solely ***in the alternative*** and rests on a single theory of liability: that, were it "determined that Google had subjective discretion to withhold payments to AdX publishers under section 8.2(b) of the AdX Publisher Agreement," Google could only withhold those amounts Google reasonably determined were due to invalid activity when it terminated AdTrader's publisher account.  (SAC ¶¶ 121, 124.)  This argument fails because, as a matter of law, the relevant contract imposes an objective standard of reasonableness on Google, rendering this claim wholly duplicative of AdTrader's breach of contract claim.

Section 8.2(b) provides that Google may adjust an AdX publisher's payments for invalid activity or for amounts refunded to advertisers "as reasonably determined by Google." (SAC ¶ 35; *id.* Ex. 1 § 8.2.) This Court has already determined that, because Section 8.2(b) of the AdX Publisher Agreement imposes a standard of objective reasonableness, Plaintiffs' claim for breach of the implied covenant was entirely subsumed by its claim for breach of contract.  *AdTrader*, 2018 WL 3428525, at *3; *accord Free Range Content, Inc. v. Google, Inc.*, No. 14-cv-2329, 2016 WL 2902332, at *16 (N.D. Cal. May 13, 2016) (finding similar language in a different Google publisher contract—"pending . . . reasonable investigation"—imposed an objective standard of reasonableness on Google's determination) (Freeman, J.) (emphasis omitted).  The Court only allowed AdTrader to amend its

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

complaint to state a claim "to the extent that the parties' contract is not deemed to impose an objective standard." *AdTrader*, 2018 WL 3428525, at *3. Plaintiffs' SAC makes no allegations that Google's compliance could be evaluated subjectively, nor does AdTrader allege that its implied covenant claim can rest on some other contractual provision. Without any alleged basis on which the Court could plausibly find that a subjective standard governs, this claim fails. *See*, *e.g.*, *AdTrader*, 2018 WL 3428525, at *11 (claim pled in the alternative failed when unsupported by sufficient allegations).

**B.    All of Plaintiffs' advertiser class claims are precluded as a matter of law.[2]**

**1.    Breach of contract (Count V).**

This Court previously dismissed Plaintiffs' advertiser class claims for breach of contract because, *inter alia*, the complaint "does not sufficiently allege which terms of the agreement(s) at issue have been breached" and did not contain any allegations that the contracts' terms were ambiguous. *AdTrader*, 2018 WL 3428525, at *10. Indeed, Plaintiffs previously admitted that none of the three contracts at issue actually requires Google to refund advertisers for invalid activity. (*See* FAC ¶ 253 ("The DoubleClick Advertising Agreement does not have any express language relating to the parties' obligations when Google discovers that its advertisers had spent money on websites Google determined to have had fraudulent or invalid traffic"); *id*. ¶ 254 ("There is no express language [in the DoubleClick Ad Exchange Agreement] regarding the parties' obligations when Google discovers . . . that its advertisers have spent money on invalid traffic . . . ."); ¶ 255 (same as to AdWords Agreement).)[3] The third iteration of the complaint fails to address these deficiencies, and simply re-words the allegations that the Court already found insufficient.

---

[2] This section of the brief addresses the substantive deficiencies of Plaintiffs' class claims. However, Google notes that, to the extent Plaintiffs seek to pursue a class action, the SAC does include any allegations, not even conclusory ones, that all the required elements of Rule 23 are met. For instance, Plaintiffs do not allege ***anywhere*** in the complaint that: 1) their claims are typical of the putative class; or 2) that they and their counsel will fairly and adequately represent absent class members.

[3] Plaintiffs have omitted these statements in the operative complaint. Nevertheless, their prior allegations are binding as judicial admissions, and, to the extent the SAC contradicts them, the court may ignore the new allegations and hold Plaintiffs to their prior statements. *See Moore*, 2016 WL 4917103, at *4 (finding statement in original complaint was a judicial admission where the plaintiff failed to explain the error); *see also Elofson v. Bivens*, No. 15-cv-05761-BLF, 2017 WL 566323, at *7 (N.D. Cal. Feb. 13, 2017) (Freeman, J.) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceedings.") (quoting *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)). In any event, these facts are undeniable from the face of the contracts.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

**a.    The contracts are fully integrated and Plaintiffs' unilateral understanding is inadmissible extrinsic evidence.**

Given their previous admission that the contracts do not contain provisions requiring refunds for invalid activity, Plaintiffs now claim that Google breached the agreement in question because Plaintiffs allegedly "understood" that various provisions of the contracts required Google to refund them for invalid activity.  (SAC ¶¶ 165, 166, 185.)  All three agreements, however, are fully integrated and expressly limit their terms to the four corners of the contract and a handful of documents explicitly incorporated by hyper-linked reference.  (*See id.* Ex. 2 (AdX Buyer Agreement) ¶ 12(c) ("These Terms are the parties' entire agreement . . . "); *id.* Ex. 3 (DBM Agreement) ¶ 10(d) ("[T]his APA is the parties' entire agreement . . . "); *id.* Ex. 4 (AdWords Agreement) ¶ 12(c) ("These Terms are the parties' entire agreement . . . ").)  Plaintiffs' "understanding" of the agreements is wholly irrelevant.  *Central Bldg. LLC v. Cooper*, 127 Cal. App. 4th 1053, 1063-64 (2005) ("a party's subjective belief in the meaning of a contract is irrelevant, particularly when the contract is an integrated agreement"); *Guo v. IBM 401(k) Plus Plan*, No. 13-cv-8223, 2016 WL 4991666, at *9 n.10 (S.D.N.Y. Sept. 15, 2016) ("One party's subjective understanding of a contract does not alter its unambiguous terms") (internal quotation and citation omitted).   Indeed, considering Plaintiffs' self-serving interpretation of the agreements is particularly inappropriate here where two of the three contracts (which bind both Plaintiffs and every putative class member that advertised on AdX) expressly disclaim any possibility of refunds under these circumstances and indicate that an advertiser's "sole remedy" for invalid activity is to appeal for credits within 60 days.  *See Singh v. Google Inc.*, No. 16-cv-3734, 2017 WL 2404986, at *2-3 (N.D. Cal. June 2, 2017) (Freeman, J.) (AdWords agreement disclosed "existence of click fraud and the possibility that an advertiser would be charged for fraudulent clicks" and did not provide for refunds).  Plaintiffs' attempt to rely on various pieces of extra-contractual evidence to support their "understanding" (*e.g.,* SAC ¶¶ 167-176) is equally futile because parol evidence cannot be used to interpret an unambiguous integrated agreement.  *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434 (1992) ("Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law ***to be the writing itself***.") (emphasis added); *Guo*, 2016 WL 4991666, at *9 n.10 ("Where the language of the contract is clear and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

unambiguous, the contract is to be given effect according to its terms, and resort to parol evidence is not only unnecessary but improper") (internal quotation and citation omitted).

Accordingly, the SAC's breach of contract claim must be dismissed for the same reason as the breach of contract claim in its predecessor: Plaintiffs have simply failed to identify an actual term of the contract that Google has allegedly breached. *AdTrader*, 2018 WL 3428525, at *10. *Koes v. Allstate Ins. Co.*, No. 07-cv-6311, 2008 WL 11340377, at *2 (C.D. Cal. May 8, 2008) (plaintiff's claim "fails because he cannot allege any contractual term that Allstate breached"); *San Diego Cty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 129 n.7 (S.D.N.Y. 2010) ("Plaintiff must allege the specific provisions of the contract upon which the breach of contract claim is based . . . ").

### b. Plaintiffs cannot show a latent ambiguity in the contract as a matter of law.

During the previous motion to dismiss, Plaintiffs argued that the contracts at issue were ambiguous. The Court rejected this argument because Plaintiffs never actually alleged that any of the contracts are ambiguous. *AdTrader*, 2018 WL 3428525, at *10 ("While Plaintiffs assert that the AdX Buyer Agreement, DBM Agreement, and AdWords Agreement contain ambiguous terms, the FAC does not contain those allegations. Thus the Court is unpersuaded by Plaintiffs' argument that rely on the purported ambiguity of the contracts"). The SAC suffers from this same defect—it does not allege that a single contractual provision is ambiguous.[4] Absent such allegations, extrinsic evidence may not be considered, and the contracts must be interpreted based on their plain meaning. *Cozad v. Astrazeneca LP*, No. 14-cv-2049, 2016 WL 4539944, at *4 n.6 (E.D. Cal. Aug. 30, 2016) (extrinsic evidence is inapplicable to determine the meaning of a contract where the plaintiff fails to allege an ambiguity); *Grossberg v. Grossberg*, 104 A.D.2d 439, 440 (N.Y. Sup. Ct. App. Div. 1984) ("any

---

[4] To the extent that Plaintiffs' new allegations concerning their "understanding" of the contracts is a veiled attempt at alleging ambiguity, their argument still fails. Not only have they failed to plead ambiguity as this Court found in the last motion to dismiss, but ambiguity in a contract is an objective, not subjective, inquiry. *In re Amoroso*, 222 F. App'x 542, 543 (9th Cir. 2007) ("Ambiguity is based on an objective reading of the contract"); *Litchhult v. USTRIVE2, Inc.*, No. 10-cv-3311, 2013 WL 3491076, at *14 (E.D.N.Y. July 10, 2013) (in New York, contracts are only ambiguous if their terms "could suggest more than one meaning when viewed via the same, objective, reasonably-intelligent [] person lens") (internal quotation and citations omitted); *see also Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 963 (E.D. Cal. 2016) ("An agreement is not ambiguous merely because the parties (or judges) disagree about its meaning") (internal quotation and citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

potential issue of ambiguity has not been raised, and parol evidence cannot be considered"). Plaintiffs' inability to correct this shortcoming by even alleging ambiguity verifies the fundamental flaw with this cause of action.  The claim should be dismissed with prejudice.

Moreover, even if Plaintiffs had actually pled that the contracts were ambiguous, their argument would still fail because the extrinsic evidence they cite has nothing to do with the actual words of the relevant contracts.  While a Court may "provisionally receive[]" extrinsic evidence to determine whether a contract contains a "latent ambiguity," a plaintiff must "tie its evidence to particular language of the written agreement." *Lennar Mare Island*, 176 F. Supp. 3d at 970-72 (internal quotation and citations omitted); *see also Alameda Cty. Flood Control v. Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1188-89 (2013) ("[I]t is essential to tether extrinsic evidence to particular language.") (emphasis original).  Plaintiffs continue their scattershot approach to pleading this claim, such as by pointing to Google pages and terms for AdWords to support a claim for breach of the AdX Agreement.  Plaintiffs assert that their irrelevant subjective understanding that Google was obligated to provide refunds for invalid activity is based on: 1) the words "measurements" and "applicable billing metrics" in the AdX and AdWords agreements; and 2) the phrase "trafficking criteria" in the DBM agreement.  (SAC ¶¶ 165, 166, 185.)  Plaintiffs then cite to extrinsic evidence, primarily statements from various Google webpages, to support their interpretation of these terms.  (*See, e.g.*, *id.* ¶¶ 168-171.)  However, none of the cited extra-contractual evidence speaks to the actual definition or meaning of those words. Indeed, the three terms which Plaintiffs claim are ambiguous ***do not even appear*** in the extrinsic evidence that Plaintiffs claim illuminates the meaning of those words. (*Id.* Exs. 5-9 ("trafficking criteria," "measurements," and "applicable billing metrics" not found).); *Lennar Mare Island*, 176 F. Supp. 3d at 970 (it is "essential" for the plaintiff to "tie its evidence to particular language of the written agreement") (internal quotation and citation omitted).  The terms also do not bear on whether advertisers are entitled to refunds. The words of a contract matter—and a plaintiff must "identify which portions of the *contractual language* were rendered ambiguous by which pieces of extrinsic evidence . . . [;] [a] party attacking a meaning succeeds only if the attacker can propose an alternative, plausible, candidate of meaning." *Alameda Cty. Flood Control*, 213 Cal. App. 4th at 1190 (internal quotation and citation omitted) (emphasis original); *see also Utica Alloys, Inc. v. Alcoa Inc.*,

Cooley LLP
Attorneys At Law
San Francisco

11.

Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF

303 F. Supp. 2d 247, 253-54 (N.D.N.Y. 2004) (extrinsic evidence of the parties' intentions could not create an ambiguity where the specific terms were not susceptible to the proffered interpretation). Plaintiffs have not even begun to show that the words and phrases "measurements," "applicable billing metrics," and "trafficking criteria" are ambiguous, let alone introduce extrinsic evidence showing that, counterintuitively, these specific terms could mean that Google must issue ***refunds*** for invalid activity.

### c.   There are no implied terms in the contracts.

To the extent Plaintiffs claim as they did in opposing Google's motion to dismiss their earlier complaint that the contracts contain an implied term requiring Google to issue refunds, they are wrong. Not only do courts disfavor implied terms, but they will only read one into a contract if certain conditions are met, including that the implied term "either arises from the contract's ***express*** language or is ***indispensable*** to effectuating the parties' intentions." *In re Marriage of Corona*, 172 Cal. App. 4th 1205, 1222 (2009) (emphasis added).[5] As Plaintiffs conceded in the AC that there is "no express language" for refunds in the relevant agreements (FAC ¶¶ 253-54), the Court can only read in an implied term if it is *indispensable* to effectuating the parties' intentions *and* the implied term is consistent with the terms of the contract and the parties' intentions at the time. *See In re Marriage of Corona*, 172 Cal. App. 4th at 1222. But Plaintiffs have not, and cannot plead facts which show that offline analysis and refunds are indispensable parts of the bargain for any of the three contracts at issue. Indeed, the allegations suggest just the opposite, as AdTrader allegedly was able to use and profit from Google's ad platform for years irrespective of such refunds. (*See, e.g.*, SAC ¶¶ 50-51.) Additionally, every advertiser, including every DBM advertiser, who displayed ads on Google's AdX network signed a contract acknowledging the intrinsic risk of invalid traffic and that their "sole remedy" for this was to request credits from Google within 60 days. (SAC ¶ 39; Ex. 4 § 7; Ex. 2 § 6.) As this Court held in the *Singh* case, such terms prohibit a contrary contractual reading. *Singh*, 2017 WL 2404986, at *3 (plaintiff could not claim "that Google warranted he would not be charged for

---

[5] The other conditions of the test are that "(2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication." *In re Marriage of Corona*, 172 Cal. App. 4th at 1222 (citations omitted). None of those is met here.

12.

1   invalid clicks . . . because Google acknowledges the existence of click fraud and the possibility that

2   an advertiser would be charged for fraudulent clicks"). Any attempt by Plaintiffs in their opposition

3   to rely on a supposed implied term must therefore be rejected.[6]

4               **d.      There was no waiver.**

5       The Court previously rejected Plaintiffs' waiver argument for failing to actually plead it in the

6   complaint. *AdTrader*, 2018 WL 3428525, at *10. Plaintiffs now try to address this with a single

7   paragraph asserting in wholly conclusory terms that Google has waived its right to argue that its

8   contracts do not require it to issue refunds for invalid activity. (SAC ¶ 199.) This is meritless. Waiver

9   requires the intentional relinquishment of a known right. *Spellman v. Dixon*, 256 Cal. App. 2d 1, 4-5

10   (1967) ("To be valid a waiver must be a clear expression made with a full knowledge of the facts and

11   an intent to waive the right.") (citation omitted). Plaintiffs must "prove the waiver by either clear and

12   unmistakable language or demonstrable behavior amounting to a waiver." *Cal. State Emps.' Ass'n v.*

13   *Pub. Emp't Relations Bd.*, 51 Cal. App. 4th 923, 937 (1996) (internal quotation and citation omitted).

14   Plaintiffs point to no "clear and unmistakable" language from Google relinquishing its rights under

15   the contracts. And given that Plaintiffs' entire case is premised on Google allegedly ***not*** providing

16   refunds for invalid activity, they cannot as a matter of law show "clear and unmistakable" behavior by

17   Google intentionally waiving its rights. *Id.*

18       Even if Plaintiffs had pled facts supporting a clear and unmistakable waiver (they have not),

19   the doctrine cannot be used to create ***new*** obligations. *R&B Auto Ctr., Inc. v. Farmers Grp., Inc.*, 140

20   Cal. App. 4th 327, 352 (2006) (plaintiff could not use waiver doctrine to create new coverage

21   obligations in an insurance contract). Plaintiffs here are attempting to do just that: transform a

22   purported waiver by Google of one provision (that the sole remedy for invalid activity is to request

23   credits within 60 days) into an entirely new obligation (requiring Google to both monitor for invalid

24   _____

25   [6] Nor can Plaintiffs escape these terms by asserting that some putative class members would not be bound by this language, because they only signed the DBM agreement ***and*** only purchased ads on
26   non-Google networks. The SAC does not allege that a single advertiser fits this narrow description, and, in fact, Plaintiffs allege that the vast majority of all ads purchased through DBM are placed on
27   AdX. (SAC ¶ 32.) Plaintiffs cannot use facts outside the bounds of their amended pleading to defeat a motion to dismiss. *UCAR Tech. (USA), Inc. v. Yan Li*, No.5:17-cv-01704, 2018 WL 2555429, at *7
28   n. 10 (N.D. Cal. June 4, 2018) ("These allegations are not in the complaint and will not be considered in deciding the instant motion to dismiss').

activity and issue credits whenever it finds such activity). Aggravating this, Plaintiffs, once again, rely on a game of smoke and mirrors, as they lump together Google's statements regarding one product and claim it applies to all products. For instance, Google could not possibly have made a clear and knowing waiver of its rights with respect to DBM when it was talking about AdWords. *See AdTrader*, 2018 WL 3428525, at *8 (dismissing claims where "the FAC does not sufficiently allege how Google's various 'representations' . . . pertain to the DBM agreement").

### e.   Google is not estopped from enforcing the contracts as written.

In their last attempt to save their breach claim, Plaintiffs have added yet another argument to the SAC, which is their most far-fetched: that Google is now estopped from asserting its rights under the plain meaning of the contracts. This argument fails for two distinct reasons. First, like the doctrine of waiver, estoppel cannot be used to create new obligations in an integrated agreement. *R&B Auto Ctr.*, 140 Cal. App. 4th at 352 (estoppel cannot be used to create new obligations).

Second, promissory estoppel applies only "whenever a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance would result in an injustice if the promise were not enforced." *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185 (1998) (internal quotation and citation omitted). But Plaintiffs do not come close to meeting this standard. Crucially, the promise in question "must be clear and unambiguous." *Id.* (citations omitted). Plaintiffs cannot point to any clear and unambiguous promise by Google to refund for invalid activity. Indeed, the evidence they rely on contains qualifiers making apparent Google is not promising anything. For example:

- Ex. 6: When Google "find[s] something wrong, we ***try*** to make it right as soon as possible. We suspend or disable invalid accounts, and ***may*** withhold payments to the publisher. ***When appropriate and possible***, that money is credited back to the advertisers." (emphasis added)

- Ex. 7: No mention of withholding or refunds based on invalid activity in a discussion of how Google detects and filters invalid clicks.

- Ex. 8: "From time to time, Google ***might*** tweak your AdWords balance." (emphasis added)

- Furthermore, extrinsic evidence for one product (*e.g.*, SAC Ex. 8 (AdWords)) cannot provide a clear promise to refund for another (DBM). *See AdTrader*, 2018 WL 3428525, at *8.

Cooley LLP
Attorneys At Law
San Francisco

14.

Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF

1  This failure of pleading is dispositive. *Macris v. Bank of Am., N.A.*, No. 11-cv-1986, 2012 WL 273120,
2  at *8 (E.D. Cal. Jan. 30, 2012) (dismissing claim without a "clear promise" to modify a contract).

3      Moreover, Plaintiffs cannot show that they reasonably relied on these supposed promises or
4  that any injustice would result from enforcing the terms as written.  All of the webpages on which they
5  rely pre-date their contracts with Google, meaning that all of their ad buys came *after* they explicitly
6  agreed in an integrated agreement that their "sole remedy" for invalid activity was to apply to Google
7  for credits within 60 days. *Mehta v. Wells Fargo Bank, N.A.*, No. 10-cv-0944, 2011 WL 1157861, at
8  *3 (S.D. Cal. Mar. 29, 2011) ("The first allegation of reliance . . . does not establish reliance at all; at
9  that time, the promise had not yet been made").  Not issuing refunds for invalid activity merely
10  enforces the agreement Plaintiffs signed onto when they chose to purchase ads through Google.

11      In sum, Plaintiffs should not be allowed to continue their throw-everything-at-the-wall
12  approach to pleading theories of breach of contract.  The agreements in question are clear, written,
13  integrated, and make no mention of refunds.  That is the end of the matter.

14              **2.      Breach of the implied covenant of good faith and fair dealing (Count VI).**

15      As with AdTrader's individual implied covenant claim, Plaintiff's SAC fails to cure the
16  deficiencies this Court identified in dismissing the class implied covenant claim.  This Court found in
17  its previous Order that "the FAC attempts to add new obligations that do not expressly appear in the
18  parties' agreements." *AdTrader*, 2018 WL 3428525, at *10.  And, because "Plaintiffs may not rely
19  on new obligations to assert a claim for breach of the implied covenant," the Court dismissed the
20  claim. *Id.*; *see also Integrated Storage Consulting Servs., Inc. v. NetApp., Inc.*, No. 12-cv-6209, 2013
21  WL 3974537, at *7 (N.D. Cal. July 31, 2013) ("the implied covenant . . . ***cannot be extended to create***
22  ***obligations not contemplated by the contract***") (internal quotation and citations omitted); *Dameron*
23  *Hosp. Ass'n v. AAA N. Cal., Nev., & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569-70 (2014).

24      Plaintiffs have not redressed this basic shortcoming in the SAC.  Indeed, the only substantive
25  change to this cause of action is that they now assert it solely in the alternative if "it is determined that
26  under the [contracts] Google's obligation to provide refunds or credits to advertisers under the
27  previously described circumstances is a matter of Google's subjective discretion."  (SAC ¶ 201.)  But
28  as with their breach of contract claim, Plaintiffs have already admitted these alleged duties cannot be

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

found in the actual language of the agreements, further proving that Plaintiffs are improperly trying to shoehorn new duties into the contract through the implied covenant.  (FAC ¶¶ 253-55.)  Moreover, Plaintiffs' attempt to bring this claim in the alternative also fails as they allege no facts showing that the unwritten, implied terms of the agreements on which they purportedly rely could plausibly be found to impose any "subjective discretion[ary]" obligations for Google to consider refunds.

### 3. Google did not breach any implied duty of reasonable care (Count VII).

The FAC alleged that Google breached the implied duty of reasonable care by failing to monitor for invalid activity and refund advertisers.  (*See* FAC ¶¶ 268-276.)  After the Court dismissed the claim, Plaintiffs completely scrapped their previous theory of liability and now contend that "Google failed to use reasonable care in performing its contractual obligation to provide Plaintiffs [and class members] with advertising metrics."  (SAC ¶ 216.)  But, just as with their previous try, Plaintiffs' notable failure to cite a relevant provision of the contracts here is dispositive.  Without an underlying contractual duty to provide advertising metrics to its customers, Google cannot be liable for breach of the duty to perform with reasonable care, as implied duties "cannot be asserted to create new contractual obligations." *Franconero v. Universal Music Corp.*, No. 02-cv-1963, 2003 WL 22990060, at *3 (S.D.N.Y. Dec. 19, 2003); *see also Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968) (Plaintiffs cannot use extra-contractual documents to "add to or vary [a contract's] terms").  Indeed, Plaintiffs do not merely seek to add a duty to the contract requiring Google to provide advertising metrics (which the SAC concedes Google actually does), Plaintiffs seek to impose a duty on Google to provide specific metrics regarding invalid activity in a form Plaintiffs deem appropriate and to update that data on an ongoing basis.  The words of the contract cannot support such a granular unwritten obligation.

### 4. The Court should dismiss the False Advertising Law claim (Count VIII).

In this third bite at the apple, Plaintiffs bring a brand-new claim under California's False Advertising Law ("FAL") based on two alternative theories, both equally flawed.  Plaintiffs first argue that Google made statements, which they term "Refund Promises," about issuing refunds to advertisers that were "untrue or misleading."  (*See* SAC ¶¶ 222-23.)  Plaintiffs list these "Refund Promises" *en masse* in the SAC (*see id.* ¶ 222) without attempting to distinguish which Plaintiff relied on which

Cooley LLP
Attorneys At Law
San Francisco

16.

Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF

1    statement when signing up for a particular service (*see id.* ¶¶227-28).[7]  Alternatively, Plaintiffs include

2    a second theory, arguing that if an advertiser's "sole remedy [for invalid activity] is to make a claim

3    for advertising credits within the Claim Period," as the AdWords Agreement and AdX Buyer

4    Agreement provide (*see* SAC Ex. 2 § 6, Ex. 4 § 7), the Refund Promises were "plainly misleading"

5    because they contradicted the contracts (*id.* ¶¶ 230-31).  Both theories are merely a rehash of their

6    fraud and negligent misrepresentation claims that this Court dismissed and Plaintiffs did not re-plead.

7    Not surprisingly, this reframed claim fails for reasons similar to the causes of action it replaces.

8                       **a.    Plaintiffs fail to plead the "untrue or misleading" statements with
                                sufficient particularity.**
9

10          As an initial matter, Plaintiffs must plead their FAL claim with Rule 9(b) particularity.  *See In*

11   *re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011)

12   ("Rule 9(b)'s heightened pleading standards apply to CLRA and UCL claims as well because those

13   claims are 'grounded in fraud' or 'sound in fraud.'  For the same reason, courts have also applied Rule

14   9(b) to claims under California's FAL.") (citations omitted); *Noll v. eBay, Inc.*, 282 F.R.D. 462, 468

15   (N.D. Cal. 2012); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. 09-cv-1597, 2010 WL

16   3448531, at *6 (N.D. Cal. Sept. 1, 2010) (Rule 9(b) applied where "[t]he gravamen of [the] claims is

17   that [d]efendants made affirmative misrepresentations or failed to disclose material facts . . . .").

18   Accordingly, Plaintiffs must allege facts constituting a violation of the FAL, including the "who, what,

19   when, where, and how of the misconduct charged."  *See In re Apple & AT&T iPad Unlimited Data*

20   *Plan Litig.*, 802 F. Supp. 2d at 1075 (internal quotation and citation omitted).

21          The SAC again lumps together five statements that allegedly are "untrue or misleading." (SAC

22   ¶ 222; *see also id.* ¶ 231.)  These statements, Plaintiffs claim, appeared on various Google webpages

23   (*see id.* ¶ 222), including the Ad Traffic Quality Resource Center, which "are an authoritative source

24   of [Google's] policies and positions regarding invalid activity on Google's advertising platforms" (*id.*

25   ¶ 170) and which Plaintiffs allegedly reviewed before entering into the relevant agreements with

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] Apparently only AdTrader, Classic, LML, Ad Crunch, and Fresh Break (which the SAC defines as
28   "ADTRADER+") (*see* SAC ¶ 158) bring this claim based on statements made about DBM and AdX
     Buyer (*id.* ¶ 227).  Only SCB brings this claim based on statements made about AdWords.  (*Id.* ¶ 228.)

Google to use Google's advertising products (*id.* ¶¶ 106-10).  This Court's prior ruling on the motion to dismiss is highly analogous and instructive.  In that decision, the Court found nearly identical allegations of fraud and negligent misrepresentation to be insufficient under Rule 9(b).  *AdTrader*, 2018 WL 3428525, at *8.  Specifically, this Court pointed out that "the FAC references at least three distinct agreements . . . [but] does not adequately plead when a certain representation was made, how that representation related to which of the three agreements, and how Plaintiffs relied on a specific representation in relation to the three agreements."  *Id.*

Plaintiffs' new FAL claim suffers from these same deficiencies.  In fact, four of the five statements that form the basis of the FAL claim were also the focus of their previous fraud and misrepresentation claims and the fifth was contained in an Exhibit to the prior, dismissed complaint.[8] (*Compare* SAC ¶¶ 222, 231 *with* FAC ¶¶ 102-05; *see also* FAC ¶¶ 201 ("Google also represented . . . that it would refund or give credits to [Plaintiffs and putative class members] for invalid impressions and clicks."), 221.)   This Court made clear, however, that it was not enough under Rule 9(b) just to throw a bunch of allegedly misleading statements into a pleading and survive a motion to dismiss.  Indeed, in plain disregard of the Court's clear instructions regarding heightened pleading under Rule 9(b), Plaintiffs entirely ignore that each service requires agreement to a specific and separate contract.  Therefore, they ignore the Court's mandate to plead "***how*** [they] relied on a specific representation ***in relation to the three agreements***."  *AdTrader*, 2018 WL 3428525, at *8 (emphasis added). Instead, apparently unaware that changing their claim did not free them from the strictures of Rule 9(b), Plaintiffs use the same statements upon which they based their fraud and negligent misrepresentation claims, and continue to simply lump them together, alleging in a conclusory fashion that they relied on all the statements when entering into all the various agreements and using all the various services. (*Compare* SAC ¶¶ 227-28, 233 *with* FAC ¶¶ 201-03, 214-15, 221-22, 234-35.)

In short, Plaintiffs' FAL claim is a transparent attempt to escape this Court's ruling on their fraud and negligent misrepresentation claims, without actually cure their defective allegations.

<b>b.      Plaintiffs cannot bring a FAL claim related to the DBM Agreement because that agreement is governed by New York law.</b>

---

[8] The fifth statement was in Exhibit 5 to the Amended Complaint.  (*See* FAC Ex. 5; SAC ¶ 222(a).)

Cooley LLP
Attorneys At Law
San Francisco

18.

Def. Google LLC's Motion to Dismiss
Certain Claims in Second Amended Compl.
Case No. 5:17-cv-07082-BLF

Plaintiffs bring a FAL claim based on statements relating to DBM (SAC ¶¶ 220, 222) and ADTRADER+ purports to allege reliance on the DBM Agreement (*id.* ¶ 227). But the DBM Agreement contains a New York choice-of-law provision. (*Id.* Ex. 3.) ADTRADER+ are not California residents (*id.* ¶¶ 7-11) and do not allege any reason why the application of New York law would be improper here. Thus, Plaintiffs' FAL claim should be dismissed to the extent it relates to DBM. *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d at 1076 (dismissing FAL claim where plaintiffs were not California residents and contracts contained choice-of-law provisions selecting the law of the consumers' home states).

> **c.     Plaintiffs also lack statutory standing to bring their FAL claim.**

FAL standing requires a plaintiff to show that a misstatement was made *to consumers* or *the general public* and that he lost money or property "because of his own ***actual and reasonable reliance*** on the allegedly untrue or misleading statements." *Woods v. Google Inc.*, No. 11-cv-1263, 2011 WL 3501403, at *8 (N.D. Cal. Aug. 10, 2011) (emphasis added); *see also Singh*, 2017 WL 2404986, at *5.

> **(1)     AdTrader's continued use of DBM undercuts its supposed actual reliance.**

First, AdTrader alleges, in a conclusory manner, that it reviewed Google's statements and relied on them when entering the DBM Agreement. (SAC ¶ 227.) Classic, LML, Fresh Break, and AdCrunch purport to have reviewed and relied upon the DBM Agreement "through their agent, AdTrader" (*id.* ¶ 227), and allege they "engaged AdTrader to use DBM to advertise [their] business[es] . . ." (*id.* ¶¶ 53-56). But in order to plead actual reliance, Plaintiffs must allege "that the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327 (2011) (internal quotation and citation omitted). This means Plaintiffs must "specify . . . whether [the] misrepresentation induced [p]laintiff's decision to use [the product], or whether [p]laintiff would have acted differently had there been no misrepresentation." *Noll*, 282 F.R.D. at 468. Although Plaintiffs make conclusory allegations that attempt to meet this requirement (*see, e.g.*, SAC ¶ 227), other allegations in the SAC contradict Plaintiffs' claimed reliance.

Specifically, AdTrader alleges it began investigating around May 2017 whether Google issues credits for invalid activity and that "[e]ven before filing this action [on December 13, 2017], AdTrader

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

had independent proof that Google did not refund all of the revenue it withheld from AdTrader to advertisers." (*See* SAC ¶¶ 74-75, 77; *see also* Compl. (filed December 13, 2017).)  But AdTrader never alleges that Google terminated its DBM account or, more importantly, that it chose to stop using DBM.  Indeed, AdTrader admitted it continued using DBM in its prior complaint.  (*See* FAC ¶ 98).

Indeed, even in the SAC, AdTrader as an NPM advertiser continues to use the present tense when referring to its use of DBM, alleging it "***uses*** DBM to place advertising bids on behalf of its advertising clients, ***handles*** implementation of their advertisements, and ***monitors*** advertising campaigns to ensure they ***are*** reaching their intended targets at the intended prices." (SAC ¶ 47 (emphasis added); *compare id.* ¶ 2 ("AdTrader [as an NPM publisher] . . . ***used*** AdX to display ads . . . until Google suddenly terminated its AdX account.") (emphasis added).)  AdTrader's continued use of DBM belies its allegation that Plaintiffs were "induced" by Google's statements and "would have acted differently" absent Google's assurance that it would credit advertisers for invalid activity, and is fatal to Plaintiffs' FAL claim based on statements about DBM.  *See Kane v. Chobani, Inc.*, No. 12-cv-2425, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) (actual reliance not pled where plaintiff was aware of the alleged falsity but still purchased the product); *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, No. 10-cv-3304, 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011) (dismissing fraud claim where plaintiff did not show it materially relied on defendant's omission because it had access to the information it claimed defendant failed to disclose); *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1127 n.6 (D. Ariz. 2010) (rejecting fraud claim because plaintiff "chose to continue doing business with" defendant after the alleged material misrepresentation, such that there was a "substantial reason in the record to doubt that [defendant's] representation . . . played any meaningful role in the [plaintiff's] decision," and, instead, reason to believe it "was not material to [that] decision"); *see also Kwikset*, 51 Cal. 4th at 326–27 (actual reliance for the FAL is the same as fraud).

### (2)  Plaintiffs' reliance was not "reasonable" because of the terms of the AdWords and AdX Buyer Agreements.

Moreover, Plaintiffs' reliance on any extra-contractual statements regarding AdWords or AdX Buyer could not be "reasonable" because the agreements they signed explicitly informed them how advertisers could receive refunds or credits and contained integration clauses.  As previously stated,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

1   in order to have standing to bring an FAL claim, Plaintiffs must have reasonably relied on the

2   statements at issue. *Woods*, 2011 WL 3501403, at *8. Where the parties are contractually bound by

3   an agreement contradicting their reliance claim, the Court can find at the pleading stage that Plaintiffs'

4   reliance could not be reasonable. *See id.* (dismissing FAL claim and finding reliance unreasonable

5   where a party purported to rely on statements extraneous to Google's AdWords Agreement).

6        Here, AdTrader entered into the AdX Buyer Agreement (SAC ¶ 38) and Classic, LML, Ad

7   Crunch, and Fresh Break are allegedly third-party beneficiaries of that agreement (*id.* ¶ 162). SCB

8   entered into the AdWords Agreement.[9] (*Id.* ¶ 161.) Both the AdWords Agreement and AdX Buyer

9   Agreement specifically state that an advertiser's "sole remedy [for invalid activity] is to make a claim

10  for advertising credits within the Claim Period." (*See* SAC Ex. 2 § 6, Ex. 4 § 7.) Moreover, both

11  agreements contain integration clauses. (*Id.* Ex. 2 § 12, Ex. 4 § 12.) And although Plaintiffs allege

12  they are "small businesses—not sophisticated corporate entities" (*id.* ¶ 236), the number of employees

13  of a company has does not necessarily dictate its sophistication. This is especially true here, as

14  Plaintiffs only allege the number of employees each Plaintiff ***now*** employs, making no reference to

15  the number of employees any Plaintiff employed at the time it entered into (or became an alleged third-

16  party beneficiary of) a contract with Google. (*See id.*) In fact, AdTrader especially holds itself out

17  as being a sophisticated entity, alleging it has "worked extensively with Google," "heavily utilized

18  Google's various DoubleClick products," and is "extremely knowledgeable about how to use [those

19  products] properly in accordance with Google's guidelines."[10] (SAC ¶ 51.) Therefore, Plaintiffs could

20  not reasonably rely on any statements outside of those integrated contracts, and Plaintiffs claims

21  related to AdWords and AdX Buyer, under both Plaintiffs' theories, should be dismissed.

22

23  [9] AdTrader also entered into the AdWords Agreement (SAC ¶ 40) and Classic, LML, Ad Crunch, and
    Fresh Break are allegedly third-party beneficiaries of that agreement as well (*id.* ¶ 162). However,

24  ADTRADER+ does not allege it relied upon the AdWords Agreement to its detriment. (*See* SAC ¶¶
    227-28.) To the extent any Plaintiff other than SCB purports to bring an FAL claim based on

25  AdWords, that claim fails because they (1) failed to allege actual reliance, and (2) could not have
    reasonably relied on the statements because they were bound by the AdWords Agreement.

26  [10] Plaintiffs have tactically deleted their allegations that AdX is a more sophisticated service that offers
    advertisers more "granular control" and caters to larger and more experienced publishers. (FAC ¶ 27.)

27  However, Plaintiffs cannot contradict those allegations now by pleading that they are small,
    unsophisticated companies. *Azadpour v. Sun Microsystems, Inc.*, No. 06-cv-3272, 2007 WL 2141079,

28  at *2 n.2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in
    a prior complaint, a district court need not accept the new alleged facts as true") (citations omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

1   Additionally, in all events, Plaintiffs' second theory (that the Refund Promises were "plainly

2   misleading" (*id.* ¶¶ 230-31)) should be dismissed because Plaintiffs expressly allege that the

3   statements they claim to have relied upon contradict the contracts they entered (*id.*).

### (3)   Plaintiffs' FAL claim is not on behalf of the public.

5   The FAL, like the UCL, protects against the deception *of the public*, not corporate customers.

6   *See* Cal. Bus. & Prof. Code § 17500 (". . . to make or disseminate . . . before **the public** in this

7   state . . . ") (emphasis added). The California Supreme Court has specified that "to state a claim under

8   either the UCL or the false advertising law, based on false advertising or promotional practices, it is

9   necessary only to show that **members of the public** are likely to be deceived." *Kasky v. Nike, Inc.*, 27

10  Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002) (internal quotation and citations omitted)

11  (emphasis added); *see also Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103 (N.D. Cal. 2012)

12  ("The FAL makes it unlawful to induce **the public** to enter into any obligation through the

13  dissemination of 'untrue or misleading' statements.") (citation omitted).  This is the reason the court

14  in *Dollar Tree Stores, Inc. v. Toyama Partners LLC* dismissed a UCL claim—because the claim there

15  rested on a breach of contract claim between "commercial parties" and "[did] not implicate the public

16  in general or individual consumers."  875 F. Supp. 2d 1058, 1083 (N.D. Cal. 2012).  Indeed, in

17  analyzing the bill meant to extend "unlawful advertising restrictions to Internet sales," the Assembly

18  included an entire comment entitled "Measure Intended to Protect Internet **Consumers**."  (Wong Decl.

19  Ex. A (Cal. Bill Analysis, S.B. 597 Assem. (Reg. Sess. 1997-98), June 23, 1998) (emphasis added).[11]

20  Moreover, as stated below, Plaintiffs' conclusory allegations linking their claims to the public

21  are a transparent attempt to mask that their claims actually are between only businesses.  (*See* Part

22  III.B.5.) Therefore, like Plaintiffs' UCL claim, Plaintiffs lack statutory standing under the FAL.

### d.   Plaintiffs' allegations about AdX Buyer and AdWords are insufficient to sustain either theory of their FAL claim.

---

[11] Google requests judicial notice of Exhibit A to the Wong Declaration.  Judicial notice is proper because Exhibit A is part of the legislative history of the FAL.  *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice.") (citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on motion to dismiss "courts *must* consider . . . matters of which a court may take judicial notice") (citation omitted) (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

Finally, in order to sustain a claim under the FAL, Plaintiffs must allege facts showing Google made a statement that is "untrue or misleading." Cal. Bus. & Prof. Code § 17500. Although Plaintiffs purportedly premise their FAL claim on all three Google advertising services (*see* SAC ¶ 221), just as with their last complaint, notably absent are adequate factual allegations explaining how the statements were "untrue or misleading" for either AdX Buyer or AdWords (*see id.* ¶¶ 78-84).

Instead, with regards to AdX Buyer,[12] Plaintiffs allege only that a non-party called "Criteo" "informed AdTrader that the company's records did not show any evidence of it having received refunds from Google for advertising expenditures it made via AdX Buyer." (SAC ¶ 83.) But Plaintiffs have no standing to assert this claim on behalf of a non-party. *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 n.17 (N.D. Cal. 2014) (dismissing UCL claim in part because the claimant "ha[d] no standing to pursue this claim on behalf of those third-parties"). Further, SCB never alleges that it used AdWords and did not receive credits or refunds. Its lone allegation that it was harmed "[w]hen Google failed to issue such refunds or credits as promised" (SAC ¶ 228) both fails to actually allege that Google did not issue it a refund or credit, and is vague and conclusory and should be disregarded. *See Shuting Kang v. Harrison*, No. 17-cv-3034, 2017 WL 6558676, at *5 (N.D. Cal. Dec. 22, 2017) ("Vague or conclusory allegations are insufficient to satisfy [Rule 9(b)].") (citation omitted); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 637 (N.D. Cal. 1980) (same).

This defeats Plaintiffs' first theory as to AdX Buyer and AdWords, and Plaintiffs' entire second theory. *See Singh*, 2017 WL 2404986, at *6 (dismissing FAL claim where the plaintiff "[did] not adequately allege that he was ever charged for invalid clicks" and "[did] not plausibly allege[] that [Google's] statements were false and/or misleading . . . "); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-1875, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) (dismissing FAL claim where plaintiff "[did] not adequately allege how the . . . statements [were] false").

### 5.    Plaintiffs fail to state a claim under the UCL (Count IX).

No statutory standing. This Court already found that Plaintiffs lack standing to sue under the

---

[12] Only ADTRADER+ attempts to allege reliance on, and thus brings a claim under, the AdX Buyer Agreement. (*See* SAC ¶¶ 227-28.) Similarly, only SCB attempts to allege reliance upon the AdWords Agreement, so only SCB brings that portion of the claim. This is with good reason; AdTrader explicitly alleges it received refunds in its AdWords account. (SAC ¶ 82.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

UCL because they did not bring this case for "the public in general or individual consumers." *AdTrader*, 2018 WL 3428525, at *11 (citing *Dollar Tree*, 875 F. Supp. 2d at 1083). Indeed, "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (citation omitted). Plaintiffs responded to the Court's dismissal for lack of standing only by repeating conclusory statements that Google's conduct involves the public at large and by assiduously scrubbing the SAC of the previous allegations upon which this Court based its prior ruling that they lacked standing. For all their efforts, however, Plaintiffs cannot escape the fact that this case does not involve individual consumers or the public.

As an initial matter, Plaintiffs' allegations only implicate relationships between corporations or companies: 1) Google and AdTrader, and 2) AdTrader and its advertiser clients. Plaintiffs have expanded the class definition to include "persons" (SAC ¶¶ 90-94) and make oblique and unsupported innuendo that "millions" of small businesses may be included in the class (*see*, *e.g.*, *id.* ¶ 28). But these allegations are simply conclusory—they do not identify a single alleged individual who would be in the class, nor do they show that these alleged "millions" of small businesses are unsophisticated.[13] More to the point, these claims are flatly contradicted by Plaintiffs' assertion to this Court in the parties' discovery dispute that Plaintiffs seek to represent a putative class of "**businesses,** not consumers." (Sept. 13, 2018 Joint Disc. Letter Br., ECF No. 74 ("Letter Br."), at 4 (emphasis in the original).) This admission is lethal to their UCL claim.

These allegations also cannot erase the fact that Plaintiffs previously characterized DBM as an especially sophisticated platform that requires significant expertise to manage and "a high minimum

---

[13] Plaintiffs also make much of the fact that all the various Plaintiffs "currently" have less than 25 employees each and are not "sophisticated corporate entities." (*See* SAC ¶¶ 53-57, 236; *see also* ¶ 240.) As with their other conclusory allegations here, Plaintiffs' argument carries no water. Unlike the *Free Range* case, there are no individual plaintiffs, only corporate entities, one of which lauded its own knowledge and expertise in sophisticated advertising campaigns and systems. (SAC ¶ 51.) The number of employees, moreover, does not demonstrate that a corporation is unsophisticated. For example, Goldstein & Russell, P.C., boasts of employing attorneys who have argued over 75 cases in the United States Supreme Court— hardly the stuff of an unsophisticated business—yet it lists only eight attorneys on its website. (*See, e.g.*, http://www.goldsteinrussell.com/practice-areas/supreme-court-practice/.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
24.
DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

monthly ad spend to access." (FAC ¶¶ 37-38.)  According to Plaintiffs, this is hardly a product for the everyday consumer, as this Court recognized.  *AdTrader*, 2018 WL 3428525, at *11 (quoting from FAC ¶ 31:  "AdX is viewed by industry participants as a more sophisticated ad placement service compared to AdSense, and therefore attracts more experienced and/or larger publishers.").  Despite the deletion of these previous allegations, Plaintiffs cannot un-ring the bell.  *See Moore*, 2016 WL 4917103, at *4 (statements in prior complaints are judicial admissions); *Elofson*, 2017 WL 566323, at *7 (Plaintiffs cannot amend to contradict earlier pleadings).

This case is about an alleged wrong to businesses, which does create UCL standing. *See Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-cv-3074, 2017 WL 4236934, at *8 (N.D. Cal. Sept. 25, 2017).

<u>Not Unlawful</u>.  Plaintiffs' claim under the unlawful prong should be dismissed because, as described in detail above, they state no claim on which they can base an "unlawful" UCL claim.  *See, e.g.*, *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (affirming dismissal of UCL claim based on violation of underlying law for which plaintiff did not state a claim).

<u>Not Fraudulent</u>.  Plaintiffs' claim under the UCL's fraudulent prong fails for the same reasons its FAL claim fails. (*See* Section III.B.4, *supra*.)  As such, this claim must be dismissed.

<u>Not Unfair</u>.   Finally, Plaintiffs claims under the unfair prong are no stronger than under the other prongs.  As the Court previously observed, Plaintiffs do not explain how Google's alleged conduct violates a legislative policy that is "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  Nor are their conclusory allegations that Google's conduct is "immoral, unethical, oppressive, and unscrupulous" sufficient under the law.  (SAC ¶ 243; *see also* FAC ¶ 291.)  *See Drum*, 182 Cal. App. 4th at 257 (". . . whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers . . . ") (internal quotation and citations omitted); *Elias v. Hewlett-Packard Co.,* 950 F. Supp. 2d 1123, 1139 (N.D. Cal. 2013) (similar).  Nothing in the amended allegations changes this failure of pleading.

**IV.   CONCLUSION.**

For these reasons, the Court should dismiss these inadequately pled claims with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF

1    Dated: September 18, 2018                    COOLEY LLP
                                                  MICHAEL G. RHODES (116127)
2                                                 JEFFREY M. GUTKIN (216083)
                                                  KYLE C. WONG (224021)
3                                                 AUDREY J. MOTT-SMITH (300550)

4

5                                                 /s/ *Jeffrey M. Gutkin*
                                                  _____
6                                                 Jeffrey M. Gutkin
                                                  Attorneys for Defendant
7                                                 GOOGLE LLC

8

9

10   186026597

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

DEF. GOOGLE LLC'S MOTION TO DISMISS
CERTAIN CLAIMS IN SECOND AMENDED COMPL.
CASE NO. 5:17-CV-07082-BLF