UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADTRADER, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 17-cv-07082-BLF (VKD)<br><br>**ORDER RE SEPTEMBER 18, 2018 JOINT DISCOVERY DISPUTE LETTER**<br><br>Re: Dkt. Nos. 75-3, 75-4 |

Plaintiff AdTrader, Inc. ("AdTrader") challenges defendant Google LLC's ("Google") confidentiality designation for a portion of Google's response to AdTrader's Interrogatory No. 5. Dkt. No. 75-4. Google moves to maintain the confidentiality designation. The Court finds this matter suitable for decision without a hearing.

Having considered the submissions of the parties, the Court grants Google's request to maintain the confidentiality designation for its response to Interrogatory No. 5 and denies AdTrader's request to de-designate the response.

I.  **BACKGROUND**

Using Google's Ad Exchange ("AdX") service, website publishers sell advertising space on their webpages in exchange for a share of the revenue advertisers pay to Google, and advertisers buy space to display their advertising online. Dkt. No. 72 ¶ 1. Intermediary companies may facilitate publishers' and advertisers' use of the AdX service. Network Partner Managers ("NPMs") assist publishers, and advertising agencies assist advertisers. *Id.* ¶¶ 25-26.

AdTrader was both a publisher and an NPM on behalf of other publishers, as well as an advertising agency on behalf of advertisers. *Id.* ¶¶ 47-49. Google terminated AdTrader's

publisher-side NPM account after notifying AdTrader that all of the advertising impressions on AdTrader's websites were invalid. *Id.* ¶ 63. As a result, Google allegedly advised that it was withholding all revenue associated with those impressions and would refund that revenue to the affected advertisers. In its role as advertising agency on behalf of those affected advertisers, AdTrader says it should have received the refunded revenue, but that Google did not refund the revenue. *Id.* ¶¶ 76-84.

AdTrader asserts individual claims for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, and declaratory relief. AdTrader also asserts claims on behalf of a putative class of AdX advertisers.

AdTrader's Interrogatory No. 5 to Google asks:

> If YOU contend that any of the websites registered to PLAINTIFF's AdX account engaged in invalid activity or violated YOUR policies, state the date of such invalid activity or non-compliance with YOUR policies, DESCRIBE the nature of each such invalid activity or policy violation, and IDENTIFY the specific website on which the invalid activity or policy violation took place.

Dkt. No. 75-5. In response, Google identified specific publisher websites managed by AdTrader that it contends were responsible for invalid activity and policy violations, and explained the nature of the invalid activity and violations. It designated this response "Confidential" under the protective order, which means that AdTrader may see the response but may not disclose it to non-parties, including the AdTrader client websites identified in the response. *See* Dkt. No. 66, sec. 7.2.

According to Google, fraudulent advertising is "a large and complex problem that seriously affects online advertising by creating lucrative business opportunities for unethical actors." Dkt. No. 75-4 at 2. Google says that it has implemented systems and procedures to detect such fraud, and it argues that disclosure of its response to Interrogatory No. 5 would expose important information about those systems and procedures. *Id.* In particular, Google contends that if its interrogatory response is disclosed to certain AdTrader clients, the alleged fraudsters with learn details of which fraudulent activity was detected and which was not, which will then allow them to evade detection in the future. Google further observes that without a confidentiality

2

1  designation, the interrogatory responses are subject to public disclosure, which will assist other
2  would-be fraudsters in successfully perpetuating advertising fraud. *Id.* at 3.

3  AdTrader argues that Google's response to Interrogatory No. 5 does not contain the kind of commercially sensitive information that qualifies for a "Confidential" designation under the protective order. AdTrader observes that there has been extensive public reporting about advertisers who have engaged in fraud, and therefore, there is no meaningful risk that Google's fraud detection systems will be compromised by the disclosure of the information in Interrogatory No. 5. However, AdTrader's primary concern appears to be that the "Confidential" designation prevents it from testing Google's claim that it terminated AdTrader's AdX account due to the fraudulent activity of particular AdTrader clients. *Id.* at 5. AdTrader argues that it is effectively precluded from developing evidence from these clients to challenge Google's grounds for termination.

## II. DISCUSSION

Generally, the public may access litigation documents and information produced during discovery unless the party opposing disclosure shows good cause for a protective order. *In re Roman Catholic Archbishop of Portland in Oregon v. Various Tort Claimants*, 661 F.3d 417, 424 (9th Cir. 2011); *Muench Photography, Inc. v. Pearson Education, Inc.*, Case No. 12-cv-01927 WHO, 2013 WL 4475900 at *3 (N.D. Cal. Aug. 15, 2013). The parties have stipulated to, and the Court has entered, a protective order in this case which permits the parties to designate certain materials as "Confidential," preventing their public disclosure. *See* Dkt. No. 66, sec. 2.2. A party may challenge any such designation made by another party, as AdTrader does here. *Id.*, sec. 6.

In addressing the parties' dispute, the Court first considers whether Google has shown it will suffer particularized harm or prejudice from disclosure of the information in its interrogatory response to AdTrader's clients and to the public. *See In re Roman Catholic Archbishop*, 661 F.3d at 424. The Court concludes that Google has described with specificity the harm it expects to suffer if its response to Interrogatory No. 5 is disclosed to the specific AdTrader clients referenced in the response or to the general public. *See* Dkt. No. 75-4 at 2-3. The fact that there has been public reporting and discussion of advertising fraud by specific companies does not answer

3

Google's concern, which is that the interrogatory response reveals information about Google's own fraud detection activities, including what Google knows and what it does not know about particular non-parties' potentially fraudulent activities, which in turn reveals to potential perpetrators of advertising fraud the limitations of Google's fraud detection systems and procedures.

The Court next considers whether Google's private interest in protecting its interrogatory response from disclosure outweigh the public's interest in disclosure. *See In re Roman Catholic Archbishop*, 661 F.3d at 424 and n.5 (citing seven factors for consideration). Here, the public has no substantial interest in knowing particular information about Google's fraud detection procedures and systems (save those members of the public who might be interested in evading detection), and AdTrader has not articulated any such interest. AdTrader has identified no issue of public health and safety or of other importance to the public that is implicated by this particular interrogatory response. *See id.* (describing factors four and seven). The most critical factor, in the Court's view, is whether AdTrader's prosecution of this action will be impaired if it is not able to share Google's interrogatory response with particular clients. *See id.* (describing factors two and five).[1]

The Court disagrees that AdTrader's investigation efforts will be prejudiced if it is not able to share the confidential portion of Google's interrogatory response with AdTrader's clients. Google's designation of its interrogatory response gives AdTrader itself access to the information Google has provided. As Google acknowledges, AdTrader may conduct whatever investigation of those matters that it requires, so long as it does not reveal the content of Google's interrogatory response to a non-party. For example, AdTrader may ask specific clients about particular advertising activity and practices, but may not reveal Google's contentions about those activities and practices or that Google has identified those activities and practices to AdTrader in response to Interrogatory No. 5. Similarly, AdTrader may ask its clients about publicly reported fraudulent advertising activity.

---

[1] None of the remaining factors bears on this dispute. No privacy interests are at stake. Disclosure of the information will not cause any party embarrassment. Google is not a public entity.

4

Having considered the private and public interests identified above, the Court finds that the applicable factors favor protecting the information Google has redacted from its response to Interrogatory No. 5. *See* Dkt. No. 75-5.

### III. CONCLUSION

Google has shown good cause for maintaining the confidentiality of the designated portion of its response to AdTrader's Interrogatory No. 5. Accordingly, the Court grants Google's request to maintain the confidentiality designation for its response to Interrogatory No. 5 and denies AdTrader's request to de-designate the response.

**IT IS SO ORDERED.**

Dated: October 30, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge