United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADTRADER, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 17-cv-07082-BLF (VKD)<br><br>**ORDER RE NOVEMBER 19, 2018 JOINT DISCOVERY DISPUTE LETTER**<br><br>Re: Dkt. No. 97 |

Plaintiff AdTrader, Inc. ("AdTrader") moves to compel defendant Google LLC ("Google") to provide additional information in response to AdTrader's Interrogatories Nos. 7-10, 11 and 13. Dkt. No. 97. Google objects that the information AdTrader seeks is not relevant to any claim or defense. *Id.* The Court finds this matter suitable for decision without a hearing.

Having considered the submissions of the parties, the Court grants in part and denies in part AdTrader's motion to compel.

## I. BACKGROUND

Using Google's Ad Exchange ("AdX") service, website publishers sell advertising space on their webpages in exchange for a share of the revenue advertisers pay to Google, and advertisers buy space to display their advertising online. Dkt. No. 72 ¶ 1. Intermediary companies may facilitate publishers' and advertisers' use of the AdX service. Network Partner Managers ("NPMs") assist publishers, and advertising agencies assist advertisers. *Id.* ¶¶ 25-26.

AdTrader was both a publisher and an NPM on behalf of other publishers, as well as an advertising agency on behalf of advertisers. *Id.* ¶¶ 47-49. Google terminated AdTrader's publisher-side NPM account after notifying AdTrader that all of the advertising impressions on AdTrader's websites were invalid. *Id.* ¶ 63. Google allegedly advised AdTrader that it was

withholding all revenue associated with those impressions and would refund that revenue to the affected advertisers. In its role as advertising agency on behalf of those affected advertisers, AdTrader says it should have received the refunded revenue, but that Google did not fully refund the revenue. *Id.* ¶¶ 76-84.

AdTrader asserts individual claims as a publisher/NPM for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, and declaratory relief. AdTrader also asserts claims on behalf of a putative class of AdX advertisers.

## II. LEGAL STANDARD

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). AdTrader bears the burden to show in the first instance that the information it seeks is relevant to a claim or defense.

Here, the case involves both individual claims and putative class claims. The Court understands that the presiding judge has not ordered bifurcation of discovery as between the individual claims and the class claims.

## III. DISCUSSION

### A. Interrogatories Nos. 7-10

Broadly speaking, AdTrader's Interrogatories Nos. 7-10 are directed to discovery of information regarding Google's withholding of advertising earnings from any publisher or NPM due to invalid advertising activity, and Google's alleged failure to refund or credit those withheld earnings to the advertisers who paid for the ads associated with invalid activity. *See* Dkt. No. 97-1. Although some of the interrogatories refer to other interrogatories that are not part of the record of this dispute,[1] the Court infers that the information sought by AdTrader is not limited to

---

[1] Interrogatories Nos. 7 and 10 refer to Google's response to Interrogatory No. 6, which is not before the Court.

2

advertisements and earnings associated with AdTrader's own publisher-side NPM account or its own activities as an advertising agency, but encompasses discovery of activities associated with the putative class or classes. *See* Dkt. No. 97 at 5.

The parties apparently have agreed that in responding to these interrogatories Google will randomly select 150 AdX publishers and 300 advertisers (from each of the three different advertising platforms at issue) for whom it will provide the requested information. Google objects to providing the names and contact information for the sampled publishers and advertisers; AdTrader insists that such information must be produced.

As Google correctly observes, this dispute differs from the dispute the Court addressed previously. *See* Dkt. Nos. 84, 101. Interrogatories Nos. 7-10 seek information beyond the claims asserted by the named plaintiffs, whereas Interrogatory No. 4, at issue in the earlier dispute, sought information limited to advertising earnings withheld from AdTrader only. Google observes that the Court has not yet certified a class and that discovery directed to the merits of class member claims is irrelevant to the question of class certification.

The Court understands that all of the information sought by AdTrader is maintained by Google in one or more databases. Dkt. No. 99. The databases may be queried to obtain the requested information, and Google does not contend that the process of extracting the requested information is disproportionately burdensome. Dkt. No. 97 at 5. For purposes of this dispute the Court separately considers AdTrader's requests for publishers' and advertisers' names and publishers' and advertisers' contact information.

### 1. Publisher and Advertiser Names

Given the parties' agreement to produce a sample of responsive information, the Court assumes that the substantive information sought by Interrogatories Nos. 7-10 (as opposed to the identifying information in dispute) is relevant to issues of class certification or other matters subject to pre-certification discovery. If the substantive information is relevant, then the Court must consider whether Google may remove information that uniquely identifies the entities associated with responsive substantive information and replace that information with anonymous identifiers.

As a general matter, courts disfavor redaction of information from responsive documents solely on grounds that some information contained in the documents is not relevant. *See, e.g., Live Nation Merchandise, Inc. v. Miller*, No. 13-cv-03936 CW (NC), 2014 WL 1877912 at *3 (N.D. Cal. May 9, 2014) (collecting cases). Google gives five reasons why it nevertheless should be permitted to withhold publishers' and advertisers' names associated with information responsive to Interrogatories Nos. 7-10.

First, Google argues that AdTrader's stated desire to test Google's contentions about the nature and amounts of advertising revenue received and refunds or credits provided is based on an unfounded suspicion that Google's database records are inaccurate. Second, Google argues that AdTrader does not need to know which entities' information is produced because Google is "segmenting" the sample by product and any other information about the publishers and advertisers is irrelevant. Third, Google argues that because it wishes to contact each of the publishers and advertisers in advance of producing their information to AdTrader, Google will have to devote resources to contacting these entities and responding to their inquiries and this effort will prove unduly burdensome. Fourth, the names of publishers and advertisers cannot be relevant to whether AdTrader has standing to assert a claim under California's Unfair Competition Law, as the standing issue will be decided on the pleadings. Fifth, Google argues that AdTrader should not be permitted to discover the names of these publishers and advertisers in order to identify new class representatives. *See* Dkt. No. 97 at 5-6.

As Google acknowledges, some of these objections were made in connection with the parties' earlier dispute. For the reasons stated in the Court's prior order, Google's concerns about the burden associated with its desire to contact publishers and advertisers and about AdTrader's possible efforts to identify new class representatives are not persuasive objections to providing the names of the publishers and advertisers at issue. *See* Dkt. Nos. 84, 101.

With respect to the remainder of Google's objections, the Court is not persuaded that there are good reasons to anonymize the identities of the publishers and advertisers whose relevant substantive information the parties have already agreed Google will produce, even if the identities of these entities are not relevant for all of the purposes AdTrader identifies in its portion of the

joint discovery dispute letter. At a minimum, AdTrader should be able to know which publishers and advertisers are associated with the responsive substantive information that Google has already agreed to produce for the purely practical reason that such a production permits AdTrader to understand and analyze the information it receives from the sample, and to understand how the information relates to other information it has developed or discovered in the case. Moreover, there is simply no legitimate reason for Google to specially curate its production to edit out information it considers irrelevant where the underlying substantive information is relevant and responsive.

Google does not contend that the entities' names are confidential. Rather, its primary objection continues to be that AdTrader intends to use the information to contact publishers and advertisers to seek discovery that it should not be permitted to obtain, or that AdTrader will attempt improperly to solicit new class representatives. As Google acknowledges, neither of these objected-to efforts by AdTrader is before the Court at this time. The Court will not bar discovery of information that has a legitimate use simply because it may also be used for an improper purpose.

Google must produce responsive information for the sampled publishers and advertisers that includes those entities' names.

### 2. Publisher and Advertiser Contact Information

AdTrader also seeks contact information for the sampled publishers and advertisers. Google objects to producing contact information for the same reasons it objects to producing the names of the publishers and advertisers.

Presumably, AdTrader wishes to have contact information for the sampled publishers and advertisers so that it may contact some or all of them about matters related to the class claims. Here, Google's argument that Interrogatories 7-10 seek information that is not limited to the claims of the named plaintiffs carries more weight, as discovery from putative class members for purposes of the class claims is more circumscribed than discovery from third parties in connection with the individual claims of the named plaintiffs. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Hollman v. Experian*, No. C11-0180 CW (DMR), 2012 WL 2568202 at *3-5

1  (N.D. Cal. July 2, 2012)  In addition, unlike the names of the publishers and advertisers, Google is not proposing to manipulate or anonymize data that is otherwise associated with relevant and responsive substantive information.  More importantly, AdTrader's ability to understand and analyze the substantive information Google will produce in response to Interrogatories Nos. 7-10 will not be impeded if Google does not also provide the contact information for these publishers and advertisers.

It is not clear from the parties' briefing what information AdTrader ultimately seeks to obtain from the sampled publishers and advertisers and whether that information is discoverable at this time.  For this reason, the Court denies without prejudice AdTrader's motion to compel production of contact information in response to Interrogatories Nos. 7-10, subject to the further discovery management procedures described below.

### B. Interrogatories Nos. 11 and 13

Interrogatory No. 11 asks Google to state, on a quarterly basis, the total revenue it received from publishers and NPMs from January 1, 2013 through July 31, 2018.  Interrogatory No. 13 asks Google to state, on a quarterly basis, the total revenue it received from advertisers from January 1, 2013 through July 31, 2018.  AdTrader says that this information is needed so that its damages expert can develop a model of "the ratio of refunds/credits paid out to advertising revenues received, while measured against historical figures of invalid activity detected through offline analysis."  Dkt. No. 97 at 3-4.  Google objects that information concerning total publisher and advertising revenue is not relevant to the claims at issue in the case.  Moreover, Google asserts that it *will* produce information about the total amount of revenue it has withheld from publishers and the total amount of revenue it has refunded or credited to advertisers.  *Id.* at 7.

The Court is not convinced that the revenue information AdTrader seeks in Interrogatories Nos. 11 and 13 is relevant to a damages model that will actually represent damages suffered based on the claims asserted in this case.  As Google observes, plaintiffs' claims are directed to the alleged discrepancy between payments Google withheld from publishers based on invalid advertising activity and refunds or credits provided to advertisers whose ads were implicated in that invalid activity.  The damages model to which AdTrader refers does not appear designed to

model damages for *that* discrepancy; rather, it appears to model damages for possible under-reporting of invalid activity to advertisers, which is not at issue here. *Id.* at 4 n.3.

For these reasons, the Court denies AdTrader's motion to compel Google's responses to Interrogatories Nos. 11 and 13.

## IV. SUMMARY OF RULINGS

The Court grants AdTrader's motion to compel Google to produce the names of the publishers and advertisers whose information will be produced in response to Interrogatories Nos. 7-10. The Court denies, without prejudice, AdTrader's motion to compel Google to produce contact information for the publishers and advertisers whose information will be produced in response to Interrogatories Nos. 7-10. The Court denies AdTrader's motion to compel responses to Interrogatories Nos. 11 and 13.

## V. DISCOVERY MANAGEMENT

In recent discovery disputes both parties have raised concerns about communications with and discovery of third parties who are also putative class members. Although the scope of such communications and discovery has not crystallized into a dispute that requires the Court's attention, the Court believes that proactive management of such matters might benefit the conduct of discovery in this case. Accordingly, the Court will hold a discovery conference on **January 15, 2019 at 10:00 a.m.** At the conference, the parties should be prepared to discuss (1) anticipated communications with putative class members, (2) anticipated discovery of putative class members, and (3) any stipulated or ordered limits on pre-certification discovery (*see, e.g.*, Dkt. No. 55 at 10).

**IT IS SO ORDERED.**

Dated: January 3, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge