

Michael Rhodes  
+1 415 693 2181  
mrhodes@cooley.com

VIA ECF FILING

April 26, 2018

Hon. Virginia K. DeMarchi  
Robert F. Peckham Federal Building  
Courtroom 2  
280 South 1st Street Room 2112  
San Jose, CA 95133

**Re: AdTrader, Inc. et. al. v. Google LLC, No. 5:17-CV-07082**

Dear Judge DeMarchi:

Pursuant to the Court's Standing Order for Civil Cases, defendant Google LLC ("Google") and Plaintiffs AdTrader, Inc. et al. ("Plaintiffs") hereby submit this letter brief regarding their dispute over Google's intended communications with advertisers using DoubleClick Bid Manager ("DBM" or as it is now known, DV360") who will soon receive credits for certain previously-uncredited invalid activity detected between 2012 and 2017.

**Statement of the Dispute**

Google intends to inform certain DBM advertisers that Google will issue them one time invalid activity credits or, cash refunds for previously uncredited invalid activity detected between 2012 and late 2017. Some of the recipients of these communications will be putative class members. Google's proposed email is attached as Exhibit A, and its verbal communications will hew to the same substance. Plaintiffs object to the verbal communications entirely, and to the proposed email because it fails to disclose that Google's liability for not issuing these refunds is being litigated in this action, and Plaintiffs claim that receiving them could impact their rights.

At a status conference on April 25, Judge Freeman indicated that the credits may proceed whenever Google is ready to issue them and the Parties' dispute is limited to the communications that may accompany them. Plaintiffs' counsel recalls Google's counsel saying that, but not Judge Freeman.

**Google's Position**

**Google's Proposed Communications Are Appropriate**

This Court can only limit Google's communications with its advertisers if it makes "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981). The Court must determine that Google's proposed communications are "misleading, coercive, or improper" before it restricts Google's speech. *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *5 (N.D. Cal, Nov. 10, 2017). The touchstone for the Court's inquiry is whether there is any "potential abuse[] and potential interference" with the class action. *Magna v. DoorDash, Inc.* 343 F. Supp. 3d 891, 903 (N.D. Cal. 2018); *see also In re Apple Inc. Device Performance Litig.*, 2018 WL 4998142, at *4 (N.D. Cal. Oct. 15, 2018) ("the key is whether there is potential interference with the rights of the parties in a class action").



Hon. Virginia K. DeMarchi
April 26, 2018
Page Two

Furthermore, Google's planned communications with its advertisers are constitutionally protected speech. *In re Apple Inc. Device Performance Litig.*, 2018 WL 4998142, at *4 ("pre-certification communications to potential class members are permitted and are considered constitutionally protected speech"). The Court should not impose any limitation, but, in all events, limitations can only be imposed through a "carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* As the U.S. Supreme Court has explained, "[t]he mere possibility of abuses does not justify routine adoption of a communications ban." *Gulf Oil Co. v. Bernard*, 452 U.S. at 104.

Nothing about Google's planned communications is misleading, coercive, or could interfere with this case. Google is issuing these credits unilaterally, <u>and is not asking for a release or waiver of participation in this class action (or any other litigation).</u>  Google's personnel that may interact directly with advertisers receiving credits will be specifically instructed not to reference this lawsuit. If the advertisers ask Google about this lawsuit, Google will respond by saying that it cannot discuss pending litigation with them.

Plaintiffs'' attempt to portray these credits and related communications as improper appears to be motivated by a concern over what attorneys' fees Plaintiffs' counsel may be able to collect -- not by a concern about the advertisers receiving the credits.  Plaintiffs assert that (1) the Court should prohibit Google from verbally communicating with any advertisers regarding the planned credits; and (2) the Court should require that Google disclose this litigation in its announcements. Both should be rejected.

<u>Nothing justifies restricting Google to written communications</u>

Plaintiffs have no basis to restrict Google from verbally communicating with its customers. Given that Google will not discuss this litigation in its messaging, Plaintiffs cannot offer anything other than baseless conjecture about "unsupervised" verbal communications. But this is far from evidence that could support "specific findings" that Google's First Amendment protected communications would interfere with Plaintiffs' rights in this dispute. *Gulf Oil*, 452 U.S. 89, at 104. Plaintiffs' speculate about the "myriad directions" the conversations may go in—but ignore that Google will not to discuss this litigation in any of its communications. Without more, Plaintiffs have no right to restrict Google's speech. *Castenda v. Burger King Corp.*, 2009 WL 2382688, at 3, 6-8* (N.D. Cal. July 31, 2009) (rejecting plaintiffs' request that all communications with putative class members be in writing and any oral communications be monitored by plaintiffs' counsel).

Moreover, limiting Google's communications would severely infringe its rights to communicate with its business partners.  Google must communicate with its advertisers through a variety of channels on a regular basis, including about credits. Google cannot simply issue these credits without any explanation. Given the complexity of many of the largest agencies' accounts, limiting Google's communications could interfere with their ability to process the credits. Google will also need to communicate with advertisers without current accounts that can be credited.

Plaintiffs' authorities are inapposite. In *Kleiner v. First. Nat'l Bank of Atlanta*, the Defendant's unilateral communications were phone calls specifically to solicit class action opt-outs to customers vulnerable to financial pressure from the defendant. 751 F.2d 1193, 1203 (11th Cir. 1985). And in *Ralph Oldsmobile, Inc. v. Gen Motors Corp.*, the defendant was contacting class members specifically to seek releases.  2001 WL 1035132, at *3 (S.D.N.Y. Sep. 7, 2001).

Google has a First Amendment right to communicate, by whatever channel necessary, about a significant development in its business relationships. *Gulf Oil*, 452 U.S. 89, at 104. Plaintiffs have not come close to showing why these rights must be restricted.



Hon. Virginia K. DeMarchi
April 26, 2018
Page Three

Plaintiffs' assertions that the communications are misleading are baseless

Plaintiffs argue that in the absence of some reference to this litigation, Google's proposed communications would somehow be coercive or misleading. Not only is Plaintiffs' demand asking the Court to compel speech (*U.S. v. United Foods, Inc.*, 533 U.S. 405, 410 (2001)), but they do not come close to showing that, absent this serious infringement on Google's rights, the communication will be in any way coercive or misleading. Indeed, Plaintiffs do not identify anything misleading about Google's draft e-mail save for the fact that they believe that Google is contractually required to issue these refunds—a position which Google obviously disputes. But the law is clear: Google is not required to disclose this lawsuit in every statement regarding credits for invalid activity and, while it will not do so here, could even argue its own side of the case in these communications. *Magna*, 343 F. Supp. 3d at 903. ("This court will not require DoorDash to disclose every putative class action … in every email it sends to its drivers"); *Swamy*, 2017 WL 5196780, at *4-5 (defendant in wage and hour class action was permitted to tell putative class members that the lawsuit had no merit and that anyone who joined the action could be responsible for paying the defendants' attorney's fees and costs).[1] As written, the communication could not have any impact on this litigation—but inserting a cryptic reference to an ongoing dispute *would* mislead advertisers.

Moreover, Plaintiffs' argument that the refunds could threaten the fairness of this litigation because the refunds may reduce the damages available to the putative class is false and seemingly contrary to statements Plaintiffs made at a conference before Judge Freeman just yesterday. Plaintiffs' suggest that the fact that these payments may "substantially eradicate" DBM advertisers' claims is a cause for concern, but as Google explained to Judge Freeman, it is voluntarily providing these advertisers credits with no conditions. That Plaintiffs' counsel's lawsuit (and entitlement to attorneys' fees) may be affected does not make these credits remotely unfair. Putative class members have no reason to prefer that they receive money through damages in this lawsuit rather than through voluntary credits from Google that will be delivered in the coming months, whereas any damages would come, if ever, years from now. The only party that would prefer that payments take the form of damages is Plaintiffs' counsel. Given that, why counsel needs to inform class members of this lawsuit is never explained.

The decision in *In re Apple Inc. Device Performance Litig.* is highly instructive here. There, plaintiffs filed class action lawsuits against Apple alleging that Apple had installed defective batteries in its mobile devices. 2018 WL 4998142, at *1. Before the putative class was certified, Apple announced a voluntary battery replacement program, offering its customers a $50 credit for off-warranty battery replacement services. *Id.* at*1-2. Apple was clear that it did "not intend participation in [the replacement program] to extinguish any legal rights." *Id.* at *2. Plaintiffs objected claiming Apple's communications about the battery replacement program were "misleading"; plaintiffs moved for an order requiring Apple to issue corrective communications and turn over copies of all communications with putative class members. *Id.* at 1.

Judge Davila denied the motion in its entirety, finding that none of Apple's communications were misleading or coercive. *In re Apple Inc. Device Performance Litig.*, 2018 WL 4998142, at *5-6. And, in stark contrast to those cases where a Court had ordered corrective communications, there was nothing inherently coercive about Apple's messages to its customers about the replacement program. *Id.* at 7-8 (discussing corrective communication cases, generally involving employer-employee litigation or similarly imbalanced

---

[1] *In re School Asbestos Litig.* does not hold otherwise. That case concerned a communication which the Court found was deliberately designed to appear to be both factually neutral and to have come from an objective third party—when in fact it was distributed by the Defendant and presented their self-serving view of contested facts. 842 F.2d 671 (3rd Cir. 1988). And *Cheverez v. Plains all Am. Pipleline* concerned communications with putative class members in which the defendant was seeking a release of claims. 2017 WL 861107, at *3-4 (C.D. Cal. March 3, 2016).



Hon. Virginia K. DeMarchi
April 26, 2018
Page Four

relationships). There are no meaningful differences between the facts of *Apple Device Performance Litig.* and those here—and no reason to depart from Judge Davila's reasoning.

**Plaintiffs' Position**

**Overview**

Google does not tell the Court that the refunds for invalid activity it plans to issue to DBM advertisers total approximately ***$75 million***. Nor does Google mention that these refunds may encompass the entirety of the monetary damages Plaintiffs have been fighting for in this litigation on behalf of DBM advertisers for the past year and a half. And only after Plaintiffs raised it in an earlier draft did Google mention that its lead counsel told Judge Freeman just yesterday at a CMC that these refunds may "***substantially eradicate***" the claims Plaintiffs brought on behalf of DBM advertisers.

Google has no intention of disclosing any of this to the receiving DBM advertisers, either. Instead, Google wants to tell these advertisers—who may not even know about this lawsuit—that the refunds are being issued to ensure "the highest standards," without mentioning this lawsuit at all, or the impact receiving those refunds could have on their putative class claims in this action. And who knows what Google will say to these advertisers in unsupervised phone calls? Thus, if Google is allowed to proceed with its proposed communications, these advertisers may unwittingly "substantially eradicate" their own putative class claims and additional relief, such as injunctive relief and years' worth of prejudgment interest, that they may be entitled to. Google's proposed communications unquestionably risk potential interference with this class action.

Google's communications should at least include the additions proposed by Plaintiffs in Exhibit B.

**Google's Proposed Email Inherently Risks Coercing or Misleading Putative Class Members**.

Google deliberately *obscures* the connection between the refunds and this lawsuit by describing them as being made simply because of Google's commitment to the "highest standards" after conducting an "analysis of historic crediting practice." Nor does Google want its advertisers or the public to know the staggering amount of these refunds. Google insists that figure is confidential, but has no problem claiming that it is issuing refunds because of its "highest standards commitment" generally—a characterization that would be undercut by admitting it overcharged DBM advertisers for years to the tune of $75 million. All this, while Google has publicly decried this lawsuit as meritless (*see* ECF No. 72-10 at page 5 of 5)—thereby impugning the reputation of plaintiff AdTrader to its clients and potential clients—and while Google plans to claim that any damages should be offset by these refunds.

Google's planned communications are thus far from "neutral." They are crafted to mislead advertisers about the real reason for and extent of refunds reaching back as far as 2012 for invalid activity charged to them, and distance Google from Plaintiffs' allegations in this case. *See In re School Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir.1988) (requiring defendant to identify its interest in the litigation in contacts with prospective class members regarding facts at issue in litigation). If Google were not planning to claim a damages offset against these advertisers, Plaintiffs would not object. But since Google plans to argue that the DBM advertisers' damages have possibly been eliminated, Google must at least alert these advertisers that the refunds are being issued in connection with this lawsuit. Because Google's proposed communications are misleading or coercive and threaten the fairness of this litigation, the Court should exercise its broad authority under Rule 23(d) and require Google to disclose this litigation with the language Plaintiffs suggest. *See*, *e.g.*, *Cheverez v. Plains all Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016).



Hon. Virginia K. DeMarchi
April 26, 2018
Page Five

*In re Apple* provides Google no cover, because *none* of the assurances of fairness that were critical in that case are present here. *See In re Apple Inc. Device Performance Litig.*, 2018 WL 4998142 (N.D. Cal. Oct. 15, 2018). The *Apple* plaintiffs' consumer protection and related claims were vast and not premised on the battery replacements, and the $50 refund was a mere fraction of the damages plaintiffs sought at best. *See id.* at *8; N.D. Cal. Case No. 5:18-md-02827-EJD (ECF 145) (07/02/18 Consolidated Class Action Complaint). Moreover, Apple expressly assured—and was willing to stipulate—that the refunds would not affect a waiver, nor render moot or settle putative class members' claims in the pending litigation. *Id.* at *1-3. Indeed, Apple was willing to *further* stipulate that it would not rely on the refunds in opposing class certification. *Id.* at *4. Apple just insisted on preserving its right to object to any double-recovery at the damages phase—i.e., that a plaintiff who originally paid $79 for a battery replacement and then received the $50 refund could not seek the entire $79 as part of much larger potential compensatory damages.

Here, Google's refunds are exactly the subject of Plaintiffs' DBM class claims they have been litigating for 16 months. Google's proposed email to advertisers describing these refunds as being made voluntarily now because of its "highest standards commitment" without also notifying them of this litigation is highly misleading indeed.  *See Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, *4 (N.D. Cal. July 8, 2010) (letters enclosing refund checks were misleading in part because they suggested defendant undertook refunds on own volition instead of as required by related litigation). And unlike in *In re Apple*, Google likely plans to use the fact of these refunds in arguing against class certification or otherwise seek to dispose of the DBM class claims. *E.g.*, *Imber-Gluck v. Google Inc.*, 2015 WL 1522076, at *3 (N.D. Cal. Apr. 3, 2015) (Google arguing that refunds issued pursuant to settlement rendered class action not superior). Google's refunds implicate far more than limited potential "double recovery" down the line—they threaten to undermine the class certification process entirely without even mentioning litigation in which these same refunds are at issue. Google's assertion that it will not seek or obtain a release from DBM advertisers—an assertion it does not plan on communicating to putative class members—is hollow. As proposed by Plaintiffs, including a basic description of this action and an assurance that Google is not issuing the refunds in exchange for any release of claims with respect to it will neutralize Google's communications—not vice versa.

**Google's Unsupervised Verbal Communications Inherently Risk Coercing or Misleading Putative Class Members**.

Google should be precluded entirely from telephoning its largest advertisers about the refunds because those communications necessarily raise the risk of inconsistent messaging without any way for the Court or Plaintiffs to monitor whether Google has stuck to an appropriate script. Unilateral communications schemes like these are "rife with potential for coercion." *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202–03 (11th Cir. 1985).  Some of these advertisers will surely want to know what the refunds are for. Given the vague and misleading nature of Google's proposed email communication, "hewing" to that message is likely to raise plenty of questions—not all predictable ones—and Google has not given any explanation as to how its various employees will respond in any uniform manner. Such conversations are not at all like those at issue in *Castenda*. 2009 WL 2382688 at *3 (defendant in ADA case would only ask putative class customers to identify the restaurant(s) they visited, whether they felt there were barriers in existence at the restaurant(s), and the nature of any such barriers).

As just one example, Google's representatives may suggest that the refunds are simply a "courtesy" made because of Google's "highest standards commitment," and say nothing about the fact these refunds in total represent approximately $75 million worth of invalid activity Google had detected *for years* prior to late 2017.  (Google, in fact, used that characterization in an earlier version of its planned communication   until



Hon. Virginia K. DeMarchi
April 26, 2018
Page Six

Plaintiffs objected to it.) And in that example, Google implying that such refunds were given gratuitously without disclosing that it would eliminate or reduce their damages exposure to the DBM advertisers is misleading on its face—a "courtesy" refund implies that it is being given with no strings attached and no consequences. That neither the Court nor Plaintiffs will be able to monitor the myriad directions these conversations will likely take alone supports a "specific finding" of potential interference with putative class members' rights and the fairness of this litigation. Given that DBM advertisers depend on Google for information about the refunds, Google's misleading "highest standards commitment" messaging makes such interference a practical certainty. *See Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 CIV. 4567 (AGS), 2001 WL 1035132, at *4 (S.D.N.Y. Sept. 7, 2001) (even without evidence of actually coercive communications, the fact that "the potential class members depend upon the defendant for information, supplies, and credit" presented "the clear potential for abuse."); *compare Castenda*, 2009 WL 2382688 at *8 (defendant had no pre-existing relationship with putative class customers and "no power over these prospective plaintiffs."). Google should at least be required to commit it will only discuss the technicalities of refund processing—it should not have free rein to communicate misleading messaging to advertisers.

**Google's Position on the Necessity of a Hearing**

If the Court is considering constraining Google's proposed communications in any way, a hearing is both appropriate and necessary, as the Court must make specific findings before it limits Google's constitutionally protected speech to its business partners.

**Plaintiff's Position on the Necessity of a Hearing**

Plaintiffs do not believe a hearing is necessary to resolve this dispute, as they have shown ample grounds to support specific findings that Google's proposed communications will potentially interfere with the rights of putative class members and the integrity of these class action proceedings. **Discovery Cut-Off Dates**

The fact-discovery cut-off for this case is April 2, 2021. The expert discovery cut-off for this case is July 23, 2021. Plaintiffs are required to file their motion for class certification by September 17, 2019.

**Statement of Compliance**

Lead counsel for AdTrader (Randolph Gaw) and Google (Michael Rhodes) met and conferred vi**a telephone** regarding this dispute on April 19.

Respectfully submitted,


/s/ *Randy Gaw*
Randy Gaw
Gaw Poe LLP
Counsel for Plaintiffs

/s/ *Michael Rhodes*
Michael Rhodes
Cooley LLP
Counsel for Defendant