UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADTRADER, INC., et al., <br><br>Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 17-cv-07082-BLF (VKD) <br><br> **ORDER RE AUGUST 27, 2019 DISCOVERY DISPUTE RE PRIVILEGE CLAIM AND GOOGLE'S MOTION FOR PROTECTIVE ORDER** <br><br> Re: Dkt. Nos. 187, 197 |

Defendant Google LLC ("Google") and plaintiffs (collectively, "AdTrader") dispute whether certain information Google has redacted from a responsive document qualifies for protection as a privileged attorney-client communication and, if so, whether Google has waived that privilege. Dkt. No. 197. In addition, AdTrader demands that Google produce the witness with whom it intended to use the disputed document for a second deposition and that Google compensate AdTrader for the fees and costs incurred in connection with that second deposition and with this challenge to Google's privilege claim. Finally, AdTrader asks for an order precluding Google from "clawing back" other documents on privilege grounds less than seven days before a deposition. At the Court's request, Google submitted the document in question for *in camera* review.[1] Google has separately moved for a protective order, requesting that prior Court filings quoting the disputed material be removed from the docket. Dkt. No. 187. The parties do not request a hearing on the dispute.

Having considered the submissions of the parties, the Court concludes that the disputed document contains privileged information, but that Google has waived that privilege.

---

[1] The disputed portion of the document was quoted in an unredacted brief AdTrader previously filed with the Court. *See, e.g.*, Dkt. No. 111-6.

1  Accordingly, the Court orders production of the document without redactions and a further
2  deposition, as set forth below.

## I. BACKGROUND

The document in question is an email written by Alice Yu, a Google product manager, which was sent on August 25, 2017 ("Yu email") to several other Google employees. Google produced the Yu email (labeled GOOG-ADTR-00016152 – 16156) to AdTrader in December 2018 as part of a production of almost 10,000 pages of documents. Dkt. No. 197 at 4. The email describes Google's efforts to issue credits for previously uncredited invalid advertising activity and the reasons for those efforts. Google contends that one of the reasons "reflect[s] and paraphrase[s] legal advice [Ms. Yu] had received from Google in-house counsel Oliver Zee" and that this portion of the email should be redacted. *Id.*

The parties agree that after Google produced the Yu email (without redactions), AdTrader relied on and quoted from the disputed portion of the email in four filings made in February 2019 (Dkt. Nos. 111, 113, 119 and 122). *Id.* at 2, 6. Google took no action with respect to the Yu email at that time or during the following five months. *Id.* at 6.

Google says that it first discovered that the Yu email included privileged material on August 6, 2019 during counsel's discussions with Ms. Yu in preparation for her deposition, which was scheduled for the next day. *Id.* at 4. Google says that because the email does not bear any indicia of privilege on its face, it had no reason to claim privilege prior to counsel's meeting with Ms. Yu for deposition preparation. *Id.* at 4, 6. The parties agree that Google did not advise AdTrader of its privilege claim regarding the Yu email until the day before Ms. Yu's deposition and that Google objected to AdTrader questioning Ms. Yu about the purportedly privileged material during her deposition. *Id.* at 2, 7.

## II. DISCUSSION

### A. Attorney-Client Privilege

In their joint submission, neither party expressly takes a position regarding whether federal law or California state law governs application of the attorney-client privilege here; instead, both parties rely on a mix of federal and state authority. In a prior dispute before the Court, Google

2

argued that California law applies with respect to whether material is within the scope of the attorney-client privilege. AdTrader disagreed. *See* Dkt. No. 162. Because the sole basis for federal jurisdiction in this case is diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), California state law supplies the rule of decision in this action, and California state law governs application of the attorney-client privilege. Fed. R. Evid. 501; *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *Lawson v. GrubHub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 1684964, at *1 (N.D. Cal. May 3, 2017).

In California, the attorney-client privilege is described in the Evidence Code § 950 *et seq*. According to that code, a client has the privilege "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Cal. Evid. Code § 954. A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952. The privilege is not limited to confidential communications between attorney and client, but may also encompass internal client communications that contain a discussion or summary of counsel's legal advice. *Zurich American Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1502, 1503 (Ct. App. 2007) (privilege encompasses communications between client employees that reflect, discuss, or contain legal advice); *see also Ins. Co. of N. Am. v. Superior Court,* 108 Cal. App. 3d 758, 766 (Ct. App. 1980) (disclosure may be made to persons not present at the attorney-client consultation, so long as such persons are within the scope of section 952). As the party asserting attorney-client privilege, Google bears the burden of establishing that the privilege encompasses the disputed material in the Yu email.[2] *Costco*

---

[2] Google does not contend that it is entitled to a presumption that the disputed material is a confidential attorney-client communication. *See* Cal. Evid. Code § 917. To the contrary, it argues that neither it nor anyone else would have reason to suspect that the material was privileged from the face of the email. Dkt. No. 197 at 6.

3

*Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733, 219 P.3d 736, 741 (2009).

Google argues that the disputed portion of the Yu email "reflect[s] and paraphrase[s] legal advice" Ms. Yu received from Google's in-house counsel. *Id.* at 4. Although AdTrader does not dispute that Ms. Yu communicated directly with Google's in-house counsel about issuing credits to advertisers, it argues that the Yu email reflects only that Google's counsel weighed in on a business decision. *Id.* at 2. The question is whether the disputed portion of the email reveals that legal advice or merely reflects a business decision.

One California appellate court has described a similar problem as follows:

> [W]e point out that when the privilege is extended to cover orally relayed attorney-client communications, as section 952 indicates it is proper to do . . . , it is probable that nice factual questions will arise involving differentiation between legal advice (which is confidential) and discussion of corporate policy (which is not). For example, if an officer of INA reported to an officer of INA Corporation on the legal advice given by Gallagher with respect to asbestos coverage, under section 952 that report would be confidential. But if, after delivery of the report, the two officers undertook to discuss what business policies the corporations should pursue in the light of Gallagher's legal advice, the latter discussion would not be confidential under the attorney-client privilege and would be discoverable.

*Ins. Co. of N. Am.*, 108 Cal. App. 3d at 770-71. The Court considers both the email itself, as well as information presented by the parties, to determine whether the disputed material is privileged.

In the unredacted version of the email, Ms. Yu describes two reasons for Google's efforts to issue credits to advertisers. Her description of the first reason[3] accords with Google's explanation that the reason given reflects or paraphrases advice of counsel. While a product manager or other business person might, on her own initiative or after consultation with other business people, identify that same reason as a basis for issuing credits to advertisers without any advice from counsel, Google represents that that the reason Ms. Yu describes does, in fact, reflect counsel's recommended course of action. AdTrader cites no information to the contrary.

Accordingly, the Court concludes that the disputed material reflects advice of counsel and that advice is privileged. However, Google's privilege claim goes too far. By redacting the word

---

[3] As this order is subject to review, the Court will refrain from quoting the disputed material in the order.

"and," Google materially alters the meaning of the sentence in which the disputed material appears, making it appear that only one reason prompted Google's efforts to issue credits to those advertisers. Only the first four words of the sentence are privileged.

**B.      Waiver of Privilege**

The attorney-client privilege may be waived. Unlike the question of what information falls within the protection of the attorney-client privilege, the question of whether that protection is waived is governed by federal law. Fed. R. Evid. 502(f). The parties agree that Rule 502(b) of the Federal Rules of Evidence provides the rule of decision here:

> [T]he disclosure does not operate as a waiver in a federal . . . proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error
> . . . .

Fed. R. Evid. 502(b).

AdTrader contends that if the disputed material in the Yu email is privileged, Google waived that privilege by failing to assert it after AdTrader made prominent use of the document and quoted from the privileged material in filings made in February 2019. Dkt. No. 197 at 3. Google argues that its failure to claim privilege before August 6, 2019 was inadvertent. It says that it took reasonable steps to prevent the disclosure in the first place, and took reasonable steps to rectify the error when it discovered the material was privileged on August 6, 2019. *Id.* at 4-7.

The parties do not seriously dispute that Google's initial production of the Yu email in December 2018 was inadvertent, or that Google took reasonable steps with respect to that initial production to avoid producing privileged material. *See* Dkt. No. 197 at 4. For this reason, Google's arguments about whether it should be faulted for failing to identify the privileged content in this single email in a production of over 10,000 pages are largely irrelevant. Rather, the critical issue is whether Google promptly took reasonable steps to assert its privilege claim after AdTrader relied on the privileged material in its February 2019 filings.

Google correctly observes that Rule 502(b) does not require a producing party to engage generally in a post-production review to determine whether any privileged documents or

5

information have been produced by mistake. However, "the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed. R. Evid. 502 advisory committee's note, explanatory note revised 11/28/2007, subsection (b).

The disputed material contains a reference to legal matters, which (according to Google) reflect and paraphrase the advice of counsel. AdTrader's quotation from and reliance on this portion of the Yu email in February 2019 should have put Google on notice to at least inquire promptly about whether such a reference, in fact, reflected advice of counsel. Google did not inquire promptly, and the Court is not persuaded that it had no reason to suspect the material might be privileged simply because no lawyer was copied on the email exchange or referenced in it. Given the language of Ms. Yu's email and AdTrader's use of it, Google had an obligation to investigate once the email came to its attention. [4] While AdTrader's use of the Yu email in February 2019 was not as extensive as the use of privileged material in *Luna Gaming*, the lack of diligence by the producing party in that case is similar to Google's lack of diligence here, considering the nature of the document and the nature of the privileged material it contains. *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06cv2804 BTM (WMc), 2010 WL 275083 at *4-6 (S.D. Cal. Jan. 13, 2010) (finding waiver where producing party failed to raise privilege claim promptly after documents were used in deposition and summary judgment motions); *see also Preferred Care Partners Holding Corp v. Humana, Inc.*, 258 F.R.D. 684, 699-700 (S.D. Fla. 2009) (producing party had obligation to review motion to determine whether privileged documents had been inadvertently produced). Unlike the producing parties in the cases on which it principally relies, Google did not act promptly to investigate and remedy its inadvertent disclosure of privileged information in the Yu email after that email was brought to its

---

[4] On this point, the Court notes that during the several months following AdTrader's February 2019 filings, the parties briefed and argued a separate dispute about privilege redactions Google had previously made in documents that also discussed the possibility that Google would issue credits or refunds to advertisers. That dispute highlighted the importance of these types of documents and the fact that many of them contained purportedly privileged information. *See* Dkt. Nos. 162, 169.

6

attention. *See California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2018 WL 1468371, at *4 (C.D. Cal. Mar. 19, 2018) (declining to find waiver where producing party raised privilege claim at deposition following investigation, where privilege not evident from face of document); *Datel Holdings Ltd. v. Microsoft Corp.*, , 2011 WL 866993 at *4-*5 (N.D. Cal. Mar. 11, 2011) (declining to find waiver where producing party immediately investigated email exchange used in deposition and raised privilege claim after discovering that exchange originated with a request from counsel).

For these reasons, the Court concludes that Google has waived the attorney-client privilege with respect to the disputed material in the Yu email. That email must be produced in unredacted form.

### C. Relief Requested

AdTrader seeks a remedy for Google's redaction of the Yu email and refusal to allow questioning about the unredacted document in Ms. Yu's recent deposition. The Court has discretion under Rules 30(d) and 37(a) of the Federal Rules of Civil Procedure to order further deposition and other relief, including sanctions in appropriate circumstances, where a party has impeded or frustrated the fair examination of a witness. Here, Google's redaction of a portion of the Yu email frustrated the fair examination of Ms. Yu about that document. Moreover, the timing of Google's clawback notice, which appears to have occurred while AdTrader's counsel was already en route to Ms. Yu's deposition in New York, precluded the possibility of rescheduling the deposition for a date following resolution of this dispute.

In these circumstances, AdTrader is entitled to further deposition of Ms. Yu regarding the unredacted email. Unless the parties stipulate otherwise, Google must produce Ms. Yu for a further deposition in San Francisco at its own expense. The further deposition is limited to not more than 30 minutes of questioning by AdTrader regarding the Yu email. Google's counsel may ask follow up questions limited to the scope of AdTrader's examination. The parties must otherwise bear their own fees and costs for Ms. Yu's prior deposition, her further deposition, and the joint submission of this discovery dispute.

AdTrader also asks that the Court require Google to give notice of any further clawback

requests at least seven days in advance of any depositions. For the reasons Google cites (*see* Dkt. No. 197 at 7), such a notice requirement is not practical, for either party, and the Court declines to amend the protective order to require such notice.

## III. CONCLUSION

The Court grants AdTrader's motion to require production of the Yu email in unredacted form and to require a further, limited deposition of Ms. Yu in San Francisco. AdTrader's motion is denied in all other respects.

Given the Court's decision regarding the discovery dispute, Google's administrative motion for a protective order (Dkt. No. 187) is denied as moot.

**IT IS SO ORDERED.**

Dated: September 5, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge