1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADTRADER, INC., et al.,

           Plaintiffs,

    v.

GOOGLE LLC,

           Defendant.

Case No. 17-cv-07082-BLF (VKD)

**ORDER RE MARCH 8, 2021
DISCOVERY DISPUTE LETTER**

Re: Dkt. No. 306

      Defendant Google LLC ("Google") moves for a protective order limiting plaintiffs' questioning regarding four topics in plaintiffs' Rule 30(b)(6) deposition notice. Dkt. No. 306. The deposition is scheduled for March 17, 2021. The parties do not request a hearing on the dispute, and the Court finds the matter suitable for decision without oral argument. Civil L.R. 7-1(b).

      For the reasons explained below, the Court grants Google's motion for a protective order.

## I.      BACKGROUND

      The operative complaint in this action alleges that Google failed to properly refund or credit advertisers for invalid traffic on three of Google's advertising platforms: DoubleClick Ad Exchange ("AdX"), AdWords program ("AdWords"), and DoubleClick Bid Manager ("DBM"). Dkt. No. 72. Plaintiffs moved for certification of three putative classes and one subclass with respect to these claims. Dkt. No. 278 at 5. On March 13, 2020, the Court certified only a plaintiff class of AdWords advertisers (the "AdWords Advertiser Class") with respect to claims for breach of the AdWords agreement, violation of California's False Advertising Law ("FAL"), and violation of California's Unfair Competition Law ("UCL"). *See id.* at 32. The Court denied class

1   certification with respect to plaintiffs' other proposed classes. *Id.*

2      In addition to claims asserted on behalf of a class, plaintiff AdTrader, Inc. ("AdTrader")

3   asserts four individual claims against Google for breach of the AdX Publisher Agreement, breach

4   of the implied covenant of good faith and fair dealing with respect to the AdX Publisher

5   Agreement, intentional interference with contract, and declaratory relief.  Dkt. No. 72 ¶¶ 99-156.

6      In February 2021, plaintiffs served Google with a Rule 30(b)(6) notice of deposition.  The

7   parties' dispute whether four of the noticed deposition topics are within the scope of permissible

8   discovery.

9   **II.    LEGAL STANDARD**

10      A party may obtain discovery of any matter that is relevant to a claim or defense and that is

11  "proportional to the needs of case, considering the importance of the issues at stake in the action,

12  the amount in controversy, the parties' relative access to relevant information, the parties'

13  resources, the importance of the discovery in resolving the issues, and whether the burden or

14  expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

15      "The court may, for good cause, issue an order to protect a party or person from . . . undue

16  burden or expense, including . . . forbidding the disclosure or discovery."  Fed. R. Civ. P.

17  26(c)(1)(A).

18  **III.   DISCUSSION**

19      Google moves for a protective order limiting discovery of matters within the scope of

20  Topics 4, 5, 6 and 7, arguing that such discovery is not relevant given the Court's ruling on class

21  certification and the limited nature of AdTrader's individual claims.  Google also argues that the

22  discovery is unduly burdensome and disproportionate to the needs of the case.  Plaintiffs argue

23  that the topics are at least relevant to AdTrader's individual claims and that the three advertising

24  platforms are so similar that all of the discovery is likely to be relevant to the AdWords platform.

25  Plaintiffs dispute Google's contention that the discovery is unduly burdensome.

26      **A.    Topic 4**

27      Topic 4 asks Google to provide testimony concerning Google's "policies, guidelines,

28  procedures, and practices" for providing refunds to all advertisers (regardless of which advertising

United States District Court
Northern District of California

2

1  platform they used) in connection with Google's "withholding or debiting of funds to an AdX

2  Publisher due to invalid traffic or policy violations."  Dkt. No. 306-1 at 3.  Google agrees to

3  produce a witness to testify about its refund policies and practices with respect to AdWords

4  advertisers, but not AdX and DBM advertisers.

5       With respect to the class claims, Google agrees to provide testimony concerning its refund

6  policies and practices with respect to AdWords advertisers.  However, it asserts that the three

7  types of advertisers—AdWords, AdX, and DBM—are "very different" and subject to "different"

8  or "very different" agreements, and therefore discovery of refund policies and practices for AdX

9  and DBM advertisers is irrelevant.  Dkt. No. 306 at 2 (distinguishing between practices concerning

10  AdWords advertisers and practices concerning AdX and DBM advertisers because the latter

11  practices have "no bearing on the interpretation of Google's agreements with the AdWords

12  class.").

13       Plaintiffs do not dispute that the AdWords and DBM agreements are materially different,

14  but they say that the AdWords and AdX agreements contain identical language regarding

15  Google's obligations to provide refunds for invalid activity, and for this reason, plaintiffs should

16  be permitted to discover Google's refund policies and practices regarding AdX advertisers.  *Id.* at

17  5.  Specifically, plaintiffs argue:

18         Google's refund policies and practices for AdX are relevant to
       Google's understanding of its refund obligations not only under the
19         AdX agreement, but also under the identical term in the AdWords
       agreement.  To the extent there are material deviations between
20         Google's refunds policies and practices for AdX and AdWords
       advertisers, those deviations may support Plaintiffs' claim of breach
21         of the AdWords agreement.  For instance, if Google implemented a
       policy or practice designed to ensure refunds to AdX advertisers but
22         failed to implement it for AdWords advertisers, that would tend to
       support a finding of breach.
23

24  *Id.* at 5-6.

25       This argument is puzzling.  Google either breached the refund provision of the AdWords

26  agreement or it did not.  If Google adopted policies and practices that were inconsistent with or

27  tended to undermine its timely compliance with its contractual obligations to the AdWords

28  advertisers, such evidence likely would be relevant to plaintiffs' class claims.  However, the Court

does not understand, and plaintiffs do not explain, how Google's adoption of the same or different policies or practices with respect to its contractual obligations to *AdX advertisers* has any bearing whatsoever on Google's performance of its obligations to AdWords advertisers under the AdWords agreement, even if those obligations are the same.  In short, Google's adoption of "better" or "worse" policies for AdX advertiser refunds reveals nothing about whether it failed to comply with its contractual obligations to AdWords advertisers.

Both parties cite cases discussing "course of performance," but no one explains whether or how the parties' course of performance of the AdWords agreement or the AdX agreement is relevant to any issue in the case.  Is the refund provision ambiguous, such that resort to evidence of performance is relevant to determine how the provision should be interpreted?  Does any party contend that the agreement has been modified by the parties' actual performance over time?  *See, e.g., Chiquita Fresh N. Am., LLC v. Greene Transport Co.*, 949 F. Supp. 2d 954, 969 (N.D. Cal. 2013) (discussing different uses of evidence of parties' performance of contract).  Absent some explanation, the Court fails to see how performance of the *AdX agreement* by Google and AdX advertisers has anything to do with the AdWords advertisers' claim for breach of the AdWords agreement.

Plaintiffs also argue that Google has made a "uniform promise" concerning refunds applicable to all advertisers and that Google's conduct is inconsistent with this promise and therefore a violation of the FAL.  Relying on "broad standards of relevancy," plaintiffs argue that "[a]ny material differences between Google's refunds policies or practices as to DBM or AdX or AdWords would be relevant to whether Google honored this uniform promise as to one set of advertisers and not another."  Dkt. No. 306 at 6.  The Court is not persuaded that Google's refund policies and practices as to AdX and DBM advertisers, whether consistent or inconsistent with the generic "promise" plaintiffs cite, have anything to do with whether the AdWords advertisers suffered a violation of the FAL.

Finally, plaintiffs argue that Topic 4 is relevant to AdTrader's individual claims because AdTrader was both an AdX advertiser and a DBM advertiser.  AdTrader does not dispute that its individual claims do not include a failure to refund for invalid traffic on the AdX platform.  That

4

1  leaves its individual claim that Google failed to refund AdTrader $173 for invalid traffic on the

2  DBM platform.  AdTrader asserts that discovery of Google's failure to implement or follow its

3  own refund policies and practices "would tend to show that AdTrader was not provided all refunds

4  due," but it fails to explain why this is so or to connect this assertion with any issue in dispute as

5  to its individual claims.  Even if it could make this connection, the Court agrees with Google that

6  the discovery AdTrader seeks in Topic 4 is disproportionate to a claim worth only $173.

7       Accordingly, the Court concludes that Google need not provide testimony for Topic 4

8  beyond what it has already agreed to provide.

9       **B.    Topic 5**

10      Topic 5 asks Google to provide testimony concerning Google's "policies, guidelines,

11  procedures, and practices" for providing refunds to DBM advertisers "in connection with invalid

12  traffic originating from a third-party ad exchange."  Dkt. No. 306-1 at 3.  Google objects to

13  providing testimony on any aspect of this topic.

14      The parties appear to agree that this discovery is not relevant to any claims of the AdWords

15  advertiser class.  Plaintiffs argue only that the discovery is relevant to AdTrader's individual claim

16  for a refund as a DBM advertiser.  Dkt. No. 306 at 6.  AdTrader does not explain how discovery of

17  Google's policies and practices is relevant to any issue in dispute as to its individual claims.  The

18  mere fact that Google withheld payments for invalid traffic on third-party exchanges beginning in

19  2017 and started issuing credits for that activity in 2019 does not support AdTrader's request.

20  Moreover, the Court agrees with Google that the discovery AdTrader seeks in Topic 5 is

21  disproportionate to a claim worth only $173.

22      Accordingly, the Court concludes that Google need not provide testimony for Topic 5.

23      **C.    Topic 6**

24      Topic 6 asks Google to provide testimony concerning Google's representations to

25  AdWords and AdX advertisers, third-party exchanges, the Securities and Exchange Commission

26  ('SEC"), and the Media Rating Council ("MRC"), regarding Google's policy of refunding

27  AdWords and AdX advertisers for invalid traffic.  Dkt. No. 306 at 4.  Google agrees to provide

28  testimony regarding representations to AdWords advertisers, the SEC, and the MRC about refund

United States District Court
Northern District of California

5

1   policies for AdWords advertisers, but objects to providing testimony regarding its representations

2   to AdX advertisers and third-party exchanges and to providing testimony about its policies for

3   refunding AdX advertisers.

4         The Court has already concluded with respect to Topic 4 that Google's policies and

5   practices for refunding AdX advertisers are not relevant.  It is not clear from the abbreviated

6   discussion in the parties' discovery letter why testimony concerning representations to third

7   parties about these policies and practices (not the policies and practices themselves) is relevant to

8   any issue in the case.  In any event, plaintiffs again rely on the arguments they made in support of

9   Topic 4 and have not explained why the Court should permit testimony beyond the scope that

10  Google has already agreed to provide.

11        Accordingly, the Court concludes that Google need not provide testimony for Topic 6

12  beyond what it has already agreed to provide.

13        **D.      Topic 7**

14        Topic 7 asks Google to provide testimony concerning Google's "policies, guidelines,

15  procedures, and practices" for charging AdWords and AdX advertisers for the services Google

16  provides to them.  Dkt. No. 306-1 at 3.  Google agrees to produce a witness to testify about how it

17  charges AdWords advertisers for services, but objects to the remainder of the topic.  Dkt. No. 306

18  at 4.

19        Citing their earlier arguments with respect to Topic 4, plaintiffs argue that because the

20  AdWords and AdX agreements contain identical language regarding advertiser charges, "any

21  material differences between [the policies and practices] would potentially be relevant to Google's

22  compliance with its obligations [under the AdWords agreement]."  *Id.* at 7.  In addition, plaintiffs

23  say that this testimony is "unquestionably relevant to AdTrader's individual AdX refund claim."

24  *Id.*

25        As with Topic 4, plaintiffs do not provide an adequate justification for discovery of

26  Google's policies and practices with respect AdX advertisers, and do not demonstrate how such

27  discovery is proportional to the needs of the case with respect to AdTrader's individual claims.

28        Accordingly, the Court concludes that Google need not provide testimony for Topic 7

United States District Court
Northern District of California

1    beyond what it has already agreed to provide.

2    **IV.      CONCLUSION**

3           Google's motion for a protective order is granted.

4           **IT IS SO ORDERED.**

5    Dated: March 12, 2021

6

7

8                                                     VIRGINIA K. DEMARCHI
                                                      United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28