1 RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
2 MARK POE (S.B. #223714)
  mpoe@gawpoe.com
3 SAMUEL SONG (S.B. #245007)
  ssong@gawpoe.com
4 VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
5 FLORA VIGO (S.B. #239643)
  fvigo@gawpoe.com
6 GAW | POE LLP
  4 Embarcadero, Suite 1400
7 San Francisco, CA 94111
  Telephone: (415) 766-7451
8 Facsimile: (415) 737-0642

9 Class Counsel

10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13                         **SAN JOSE DIVISION**

14

15   ADTRADER, INC., et al.,                Case No. 5:17-CV-07082-BLF

16                    Plaintiffs,           **PLAINTIFF SPECIALIZED**
                                            **COLLECTIONS BUREAU'S MOTION FOR**
16                                          **PRELIMINARY APPROVAL OF**
17          v.                              **SETTLEMENT; MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN SUPPORT**
18   GOOGLE LLC,                            **THEREOF**

                     Defendant.
19                                          Judge:        Hon. Beth L. Freeman
                                            Hearing Date: August 25, 2022
20                                          Time:         9:00 a.m.
                                            Courtroom:    3
21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION ................................................................................. 1

I.       INTRODUCTION AND BACKGROUND.................................................................. 3

         A.       Plaintiff's Claims. ........................................................................................ 3

         B.       Proceedings to Date. ..................................................................................... 4

         C.       Summary Judgment....................................................................................... 5

         D.       Settlement...................................................................................................... 5

         E.       Settlement Payments to AdWords Class Members....................................... 6

         F.       Notice and Objection Procedures, and Renewed Opt-Out Opportunity. ................. 8

         G.       Content of Notice and Release of Claims. .................................................... 8

         H.       Service Award and Attorney's Fees, Costs, and Expenses. ......................... 9

II.      ARGUMENT .......................................................................................................... 10

         A.       Legal Standard. ........................................................................................... 10

         B.       The Parties' Settlement Meets the Standard for Preliminary Approval................. 11

                  1.    SCB and Class Counsel have adequately represented the class. .......... 11

                  2.    The proposed Settlement was negotiated at arm's length. ................... 12

                  3.    The relief provided for the class is adequate. ...................................... 13

                        i.     The costs, risks, and delay of trial and appeal......................... 14

                        ii.    The method of distributing relief and processing claims. ........ 15

                        iii.   The terms and timing of the proposed attorneys' fees award. ........ 17

                        iv.    Statement of agreements required to be identified.................... 18

                  4.    The proposed settlement treats class members equitably relative to each other. . 20

         C.       The Court Should Approve the Proposed Class Notice. .............................. 21

         D.       The Court Should Set a Schedule Toward Final Approval of the Parties' Settlement........................................................................................................ 22

CONCLUSION ................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
   No. 17-CV-01892-HSG, 2021 WL 5991060 (N.D. Cal. July 12, 2021) ............................... 16

*Birch v. Off. Depot, Inc.*,
   06-CV-1690 DMS, 2007 WL 9776717 (S.D. Cal. Sept. 28, 2007) ........................................ 20

*Carlotti v. ASUS Computer Int'l*,
   No. 18-CV-03369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020).............................. 22

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
   No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016), *dismissed*
   *sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017
   WL 3468376 (9th Cir. Mar. 2, 2017) ................................................................................. 13

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................... 14

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
   No. CV09-5457 PSG (JCX), 2016 WL 5938722 (C.D. Cal. May 16, 2016) ........................ 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. 06-cv-4333-PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013).................................... 17

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017), *aff'd*
   *sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021) ....................................... 13

*Fraley v. Facebook, Inc.*,
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................................................ 14

*Free Range Content, Inc. v. Google, LLC*,
   No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ................... 10, 13, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).......................................................................... 10, 11, 12, 14

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008)................................................................................................ 10

*Kakani v. Oracle Corp.*,
   No. 06-cv-06493-WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007)............................... 16

*In re Lenovo Adware Litig.*,
   No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ............................. 10

*McDonald v. CP OpCo, LLC*,
  No. 17-CV-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019)................................ 21

*In re Myford Touch Consumer Litig.*,
  No. 13-CV-03072-EMC, 2018 WL 10539266 (N.D. Cal. June 14, 2018) ............................ 16

*Nachsin v. A.O.L., LLC*,
  663 F.3d 1034 (9th Cir. 2011)................................................................................................. 21

*In re Nexus 6P Prod. Liab. Litig.*,
  No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)................................. 22

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................................. 14

*Parker v. Cherne Contracting Corp.*,
  No. 18-CV-01912-HSG, 2021 WL 3209825 (N.D. Cal. July 29, 2021) ................................ 20

*Perkins v. Linkedin Corp.*,
  No. 13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)..................................... 14

*Perks v. Activehours, Inc.*,
  No. 5:19-CV-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...................... 11, 12

*Rabin v. PricewaterhouseCoopers LLP*,
  No. 16-CV-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021)...................................... 13

*Redwen v. Sino Clean Energy, Inc.*,
  11-cv-3936-PA-(SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013)................................... 17

*Rodriguez v. Nike Retail Servs., Inc.*,
  No. 14-CV-01508-BLF, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ................................... 18

*Rodriguez v. West Pub'g Corp.*,
  563 F.3d 948 (9th Cir. 2009).................................................................................................. 10

*Shahar v. Hotwire, Inc.*,
  No. 12-CV-06027-JSW, 2014 WL 12647737 (N.D. Cal. July 25, 2014).............................. 13

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)................................................................................................ 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................... 10, 13

*Taylor v. Shutterfly, Inc.*,
  No. 5:18-CV-00266-BLF, 2021 WL 5810294 (N.D. Cal. Dec. 7, 2021) .............................. 21

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Other Authorities**

*Manual for Complex Litigation*, § 13.14 (4th ed. 2004) ............................................................. 10

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 25, 2022, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 3, Plaintiff Specialized Collections Bureau, Inc. ("SCB") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order (1) preliminarily approving the Settlement[1] it has reached with Defendant Google LLC; (2) approving the Parties' proposed Notice program, including as set forth in the attachments to the Declaration of Steven Weisbrot Regarding Settlement Notice Plan and Claims Processing ("Weisbrot Declaration"), and directing Notice of the proposed Settlement to the AdWords Class; (3) appointing Angeion Group as the Settlement Administrator and directing it to carry out the duties assigned to it in the Settlement Agreement; (4) approving the Parties' proposed Claim Form (as attached to the Weisbrot Declaration), and the proposed procedures for submitting Claims, objecting to the Settlement, and requesting exclusion; (5) staying all non-settlement-related proceedings in the this case pending final approval; and (6) setting the following schedule:

| Notice Date | No later than 60 days after Preliminary Approval |
|---|---|
| Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 30 days prior to the Objection and Exclusion Deadline |
| Claims Deadline | 60 days after Notice Date |
| Opt-Out Deadline | 60 days after Notice Date |
| Deadline for Objection to Settlement | 60 days after Notice Date |
| Motion for Final Approval | At least 14 days before Final Fairness Hearing |

---

[1] Unless otherwise indicated by context, all capitalized terms in this motion refer to capitalized terms in the Parties' Settlement Agreement.

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

| Responses to Objections | At least 14 days before Final Fairness Hearing |
|---|---|
| Final Fairness Hearing | Approximately 150 days after Preliminary Approval, subject to the Court's availability |

This motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the Declarations of Randolph Gaw, Steven Weisbrot, and Hon. Jeremy Fogel (Ret.), all papers and pleadings on file with the Court, and such other argument and materials as may be presented to the Court at the hearing on this motion.

**STATEMENT OF RELIEF SOUGHT**

SCB, on behalf of itself and the AdWords Class, moves for preliminary approval of a Settlement regarding the AdWords Class's allegation that Google wrongfully failed to pay refunds or credits for invalid advertising traffic whose monetary value Google had debited from publishers during the applicable limitations period.  The Settlement covers the claims of these AdWords advertisers whose accounts were subject to the Google Inc. Advertising Program Terms for the United States ("Terms") and who opted out of the arbitration clause of the Terms.

The Settlement provides for a non-reversionary sum of $7 million to satisfy these claims, payable on a claims-made basis, under which each Claimant with a Valid Claim will receive a proportional share of the Net Settlement Fund based on its AdWords advertising spend on AdX publishers' webpages during the relevant limitations period as a percentage of the total such spend for all Claimants with Valid Claims.  The Settlement further includes payment for the costs of administration and notice; a Class Representative Service Award; and Plaintiff's reasonable attorneys' fees, costs, and expenses.  The Parties reached this Settlement after vigorous discovery and litigation, and numerous direct and mediated settlement conversations and exchanges of information.  Regarding Notice, the Parties have agreed to a strong, comprehensive program whose centerpiece is Direct Email Notice, coupled with Postcard Notice sent by U.S. Mail.  An identical notice program was undertaken in conjunction with issuing notice regarding this Court's certification order, and it proved highly effective.  (*See* Dkt. No. 346-1 (Settlement Administrator reporting notice effectuated on 777,310 out of 792,612 identified Class members).)  As Plaintiff

demonstrates below, the Settlement warrants preliminary approval and presentation to the AdWords Class.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should preliminarily approve the Parties' Settlement, which followed extensive motion practice and discovery; is the product of intense, arm's-length negotiations, including mediation conducted by the Honorable Jeremy Fogel, an experienced, esteemed mediator who is also a former District Court Judge; and which provides valuable monetary compensation to the certified AdWords Class following implementation of a comprehensive Notice program.

2.     Whether the Court should approve Angeion Group as Settlement Administrator; approve the Parties' proposed Claim Form; approve the Claim and Objection and exclusion procedures set forth in the Settlement Agreement; and schedule a Final Fairness Hearing as well as a hearing on Plaintiff's motion for Service Award and recovery of Plaintiff's attorney's fees, costs, and expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND BACKGROUND

### A.  Plaintiff's Claims.

Plaintiffs filed a proposed class action on December 13, 2017, alleging that Google wrongfully failed to provide refunds or credits to advertisers who used what was then known as its DoubleClick Bid Manager ("DBM") platform (now "Display & Video 360") for invalid activity that Google detected.  Plaintiffs subsequently extended their claims to include advertisers who used Google's AdWords platform as well, among others.  (Dkt. Nos. 1, 29, 72 ("SAC").) Google's DoubleClick Ad Exchange ("AdX") is a Google-owned and operated advertising exchange serving both advertisers and website publishers.  Website publishers using AdX can monetize their inventory and be matched via an auction format with online advertisers looking to bid on that inventory.  Google pays publishers a portion of the revenues Google receives for ads displayed on the publisher's websites.  (Dkt. No. 154 ("Answer") ¶ 23.)  AdWords is a service that allows advertisers to run both display and search advertising campaigns.  AdWords

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

advertisers could buy inventory from AdX publishers under the AdWords default settings. (Answer ¶ 27.)  Plaintiff SCB was an AdWords advertiser.  (*Id.* ¶ 57.)  Google attempts to detect invalid ad traffic ("IVT") and issue credits or refunds to advertisers for such traffic.  (*Id.* ¶¶ 41-45.)  On behalf of itself and the AdWords Class, Plaintiff SCB alleges Google breached the AdWords Agreement and violated California's False Advertising Law ("FAL") and Unfair Competition Law ("UCL") by failing to fully refund or credit advertisers for invalid ad traffic even though it had contemporaneously withheld payment to AdX publishers for that same traffic. (SAC ¶¶ 157-248.)

**B. Proceedings to Date.**

Google's first motion to dismiss Plaintiffs' complaint was mooted by Plaintiffs' Amended Complaint, which Google also moved to dismiss.   The Court granted in part and denied in part Google's second motion.  (Dkt. Nos. 36, 39, 51, 63.)  On August 13, 2018, Plaintiffs filed the operative Second Amended Complaint, as to which the Court subsequently granted in part and denied in part Google's third motion to dismiss.  (Dkt. No. 72, 76, 131.)

On March 13, 2020, the Court certified under Rule 23(b)(3) Plaintiff's proposed AdWords Class, membership in which is defined as follows:

> All persons and entities: (1) whose Google AdWords advertiser accounts were subject to the Google Inc. Advertising Program Terms for the United States; (2) who were charged by Google through their AdWords accounts for clicks or impressions on advertisements appearing on any DoubleClick Ad Exchange publisher website at any time during the applicable limitations period; (3) who did not receive refunds or credits from Google even though it withheld payment to that publisher for those clicks or impressions in connection with any invalid activity or any breach of contract, including any policy violation; and (4) who opted out of the arbitration clause of the Terms.

(Order Granting in Part and Denying in Part Plaintiffs' Mot. for Class Cert. at 32 (Dkt. No. 278).) The order further appointed SCB as the representative of the Class, and Gaw | Poe LLP as class counsel.  (*Id.*)  The Court declined to certify Plaintiffs' proposed DBM and AdX classes.  (*Id.*)

Following the Court's ruling on class certification, Plaintiffs filed an unopposed motion for approval of notice to the litigation class ("Litigation Notice"), which the Court granted on March 23, 2021.  (Dkt. Nos. 305, 308).  The Court approved Angeion Group as the Administrator

1  for purposes of sending the Litigation Notice, collecting opt outs, administering the case website,

2  and tabulating the associated information for reporting to the Court through Class Counsel.  (Dkt.

3  No. 308.)  Pursuant to the notice plan, on or about August 12, 2021, Angeion sent notice to the

4  litigation class, consisting of 651,294 emails and 141,318 mailed postcard notices, which resulted

5  in 34 opt-outs, as shown in the administrator's report filed October 21, 2021.  (Dkt. No. 346-1.)

6  **C.  Summary Judgment.**

7  On September 23, 2021, the Parties filed cross-motions for partial summary judgment,

8  which the Court stayed upon being notified of the Parties' agreement to settle the case.  (Dkt.

9  Nos. 334, 338.)  As to Plaintiff's class claims, Google contends SCB lacks both Article III and

10  statutory standing to proceed as the class representative, and that the AdWords Class's claims

11  should be dismissed in their entirety.  (Dkt. No. 334.)  The Parties' motions, and Plaintiffs'

12  motion for class certification before it, were the result of intensive written and oral discovery,

13  including review and analysis of tens of thousands of documents, among them, large volumes of

14  highly-detailed, dense, and technical material produced by Defendant, and of initial disclosures,

15  and interrogatory answers; extensive expert discovery; and over a dozen depositions of the Parties

16  and their experts.  (Gaw Decl. ¶¶ 3, 4, 15.)

17  **D.  Settlement.**

18  On February 25, 2022, the Parties attended a mediation session with the Honorable

19  Jeremy Fogel, Ret. (the "Mediation").  These discussions were successful, and the Parties

20  executed a binding term sheet memorializing certain material terms of a class settlement made

21  pursuant to a mediator's proposal.  (Fogel Decl. ¶ 4.)  The Settlement provides for a Settlement

22  Fund of $7 million in non-reversionary monetary relief.  (*Id*.; Gaw Ex. A, §§ 1.42, 1.44, 2.4.)

23  The amount of the settlement measures favorably to the $7 million in class damages that

24  Plaintiff's expert had estimated in conjunction with Plaintiff's motion for class certification.

25  (Gaw Decl. ¶ 17.)  It is also within the $2.7 to $111 million dollar range that Plaintiff's expert had

26

27

28

1  further calculated in his reports on the merits.[2]  (Gaw Decl. ¶ 17.)  And it is a highly favorable

2  outcome considering the analysis and opinion of Google's expert witness, who has opined that

3  there was no "credit shortfall" affecting the AdWords Class at all, such that the class is owed $0.

4  (*Id.*)

5          The Settlement Agreement provides that proceeds payable to the AdWords Class are net

6  of (1) the cost of notice and administration (presently estimated at $217,000); (2) attorney's fees,

7  costs, and expenses (if approved); and (3) a Service Award to the Class Representative, SCB, not

8  to exceed $10,000.  (Gaw Decl. ¶¶ 12-14 & Ex. A, §§ 1.24, 1.42, 1.44, 2.4.)  Plaintiff and its

9  counsel Gaw | Poe, whom the Court appointed Class Counsel for the AdWords Class, endorse the

10  value and reasonableness of this proposed Settlement.  (Gaw Decl. ¶¶ 1, 8, 15-19.)  Class Counsel

11  propose to request up to 33% of the Settlement Fund in attorneys' fees for this nearly five-year

12  litigation, which amount will measure favorably to a lodestar cross-check, even under the now-

13  historic hourly rates that this Court approved for Gaw | Poe more than two years ago.  (Gaw Decl.

14  ¶ 13; Dkt. No. 281.)

15          **E.  Settlement Payments to AdWords Class Members.**

16          The proposed Settlement is to be distributed on a claims-made basis, where AdWords

17  Class Members are entitled to submit a Claim for a Settlement Payment, either via an online

18  portal on the Settlement Website, or by printing and submitting by fax or postal mail a hard copy

19  claim form to the Settlement Administrator.  (Gaw Ex. A, §§ 1.7, 1.17, 1.28, 1.30, 1.45, 1.47, 3.)

20  The Settlement Payment amount for each Claimant who submits a Valid Claim will be calculated

21  in proportion to that Claimant's AdWords advertising spend on AdX publishers' webpages during

22  the Class Period as a percentage of the total such spend for all Claimants with Valid Claims.

23

---

24  [2] Plaintiffs' expert had initially calculated classwide damages of between $0.278 million to $7.48

25  million.  (Gaw Decl. ¶ 17.)  Based on certain Google interrogatory responses served late in the
discovery period, however, he opined that it might be appropriate to apply a variable multiplier to

26  his damages calculations, yielding a broad range of possible damages with an increased upper
bound.  (*Id.*)  Google argued that Plaintiffs' expert's damages estimates were speculative and

27  unsupported by Google's data, and that the multiplier Plaintiffs' expert applied to arrive at a
revised damages range was based on inadvertently incorrect interrogatory responses that Google

28  subsequently corrected.  (Dkt. Nos. 318, 334, 354, 363, 369.)

1    (Gaw Ex. A, § 2.)  In other words, the total spend on AdX publishers' webpages through

2    AdWords for all Claimants with Valid Claims will be totaled up based on Google's records, and

3    then each Claimant will receive a share of the Net Settlement Fund that is in equal proportion to

4    its share of that total.  (*Id.*)  To ensure that the administrative expense for a given claim does not

5    exceed the associated Settlement Payment, the Settlement imposes a $1.00 Settlement Payment

6    threshold; no Claimant with a Valid Claim shall be entitled to any Settlement Payment that would

7    be less than $1.00.  (Gaw Ex. A, § 2.4.1.)  The Claims Deadline is 60 days after the Notice Date.

8    (*Id.* at § 1.8.)

9           Claims will be submitted to the Settlement Administrator via a short form (the "Claim

10   Form") available on the Settlement Website, which asks the Claimant a few simple questions, *i.e.*,

11   the AdWords Class Member's contact information, identification number assigned to the

12   AdWords Class Member by Angeion, and preferred payment method.  (Weisbrot Decl. ¶¶ 17-23

13   & Exs. B-D.)  To minimize administrative costs, the default payment method is to be electronic

14   (through ACH, Zelle, Venmo, or PayPal), but Class Members may also request payment by

15   check.  (Gaw Decl. ¶ 9 & Ex. A at § 2.4.2.)  Claimants may submit the Claim Form online,

16   through the Settlement Website, or can download the Claim Form and return a hard copy to the

17   Settlement Administrator via fax or postal mail.  (Weisbrot Decl. ¶¶ 17-23 & Exs. B-D.)  As a

18   fraud-protection measure, Claimants will be required to certify that they did not "intentionally

19   violate Google's policies or intentionally cause invalid clicks with regard to the funds that Google

20   withheld in connection with the Settlement Class Member's AdWords account."  (Gaw Ex. A,

21   § 3.1.2.)

22          Due to the distribution the Parties and Settlement Administrator have devised, the

23   Settlement Administrator does not anticipate much if any residuum in the Net Settlement Fund

24   after distribution.  (Weisbrot Decl. ¶¶ 12, 25-26; Gaw Decl. ¶ 11.)  Should any amount remain,

25   however, it will be donated to Public Justice, a worthy *Cy Pres* Recipient.  (Gaw Decl. ¶ 11 & Ex.

26   A, §§ 1.12, 2.4.)  Public Justice has national reach and a reputation for consumer protection.

27   (Gaw Ex. B.)

28

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

**F.  Notice and Objection Procedures, and Renewed Opt-Out Opportunity.**

The Parties' Settlement provides for robust direct email and postcard notice to the same group of AdWords Class Members as to whom the Settlement Administrator gave court-approved Litigation Notice on or about August 12, 2021, plus any new Class Members who may have joined between that date and the date of the Settlement.  (Gaw Ex. A, § 4.2; Weisbrot Decl. ¶ 13; Dkt. Nos. 305, 305-1, 308.)

The Email Notice will summarize the AdWords class's claims and provide a link to the Settlement Website where AdWords Class Members can submit a Claim Form, Opt-Out Form, or Objection, learn more about the case, and review the long-form settlement notice and the Settlement Agreement.  (Gaw Ex. A, § 4.2; Weisbrot Decl. ¶¶ 22-23 & Exs. B-D.)  The Settlement Website will also highlight important deadlines, make a Claim Form available for download, provide contact information for the Settlement Administrator, and host key case documents.  (Gaw Ex. A, §§ 1.47, 4.4; Weisbrot Decl. ¶¶ 22-23 & Exs. B-D.)

As was done with the Litigation Notice, Postcard Notice will be sent by U.S. Mail to those AdWords Class Members as to whom Direct Email Notice cannot be made.  (Gaw Ex. A, § 4.3; Weisbrot Decl. ¶¶ 18-21 & Ex. C.)  The Settlement Administrator will also serve notice of the Settlement and other required documents on relevant government officials in accordance with the Class Action Fairness Act.  (Gaw Ex. A, § 4.6.)

Finally, as contemplated in Rule 23(e)(4), the Email notice, postcard notice, and long-form notice available on the Settlement Website will inform class members of their renewed opportunity to exclude themselves from the class.  (Weisbrot Exs. B-D.)

**G.  Content of Notice and Release of Claims.**

The Website Notice (*i.e.*, the long-form notice) describes the material terms of the Settlement and the procedures that AdWords Class Members must follow in order to submit Claims.  (Weisbrot Ex. D.)  It also describes the procedures for AdWords Class Members to object to the Settlement, or exercise their renewed right to opt out of the Settlement.  (*Id*.)  The short-form notices (*i.e.*, the email and postcard notices) provide a summary of the foregoing, and

1    direct AdWords Class Members to the Settlement Website for more information.  (Weisbrot Exs.

2    B-C.)

3        If the Court grants final approval of the Settlement, then the Releasing Named Plaintiff

4    and Releasing Class Members who did not exclude themselves from the AdWords Class in

5    response to the Litigation Notice or from the Settlement in response to the Settlement Notice will

6    be deemed to have released all Released Claims against the Releasees.  (Gaw Ex. A, §§ 1.36,

7    6.2.)  The Released Claims are those that "arise out of or relate to the allegations in the operative

8    complaint and that occurred during the AdWords Class Period, including, but not limited to, those

9    relating to any AdWords Class Member whose AdWords account was not refunded or credited

10   for Invalid Traffic."  (Gaw Ex. A, § 1.36.)

11       **H.  Service Award and Attorney's Fees, Costs, and Expenses.**

12       The Parties have agreed that SCB may apply for a Service Award of no more than

13   $10,000.  (Gaw Decl. ¶ 12 & Ex. A, §§ 1.40, 9.)  Plaintiff SCB has assisted counsel with the

14   preparation of complaints in this matter; worked with counsel on initial disclosures; consulted

15   with counsel as requested and on its own initiative; monitored the proceedings on its own behalf

16   and on behalf of the class; worked with counsel to prepare, review, and submit declarations in

17   support of its claims and those of the AdWords Class; answered interrogatories and responded to

18   requests for production, including by gathering and producing documents, in consultation with

19   counsel; prepared for and sat for deposition; and attended the Mediation.  (Gaw Decl. ¶ 12.)  SCB

20   will be entitled to the same Settlement benefits, subject to the same conditions, as any other

21   AdWords Class Member.  (*Id*. at ¶ 9.)

22       As for Plaintiff's attorneys' fees, costs, and expenses, the Settlement Agreement

23   contemplates that Plaintiff will make a request for these by motion.  (*Id.* ¶ 13.)  Google reserves

24   the right to oppose Plaintiff's motion.  (*Id*.)  Plaintiff plans to request 33% of the Settlement Fund

25   as fees.  Plaintiff will file that motion within 30 days after the Notice Date, and the Settlement

26   Administrator will host a copy of that motion on the Settlement Website, to allow AdWords Class

27   Members to review it well in advance of the Objection and Exclusion Deadline (60 days after the

28

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

1  Notice Date).  (Gaw Ex. A, § 8.)  Plaintiff also expects to request reimbursement of costs and

2  expenses in the approximate sum of $825,000.  (Gaw Decl. ¶ 13.)

3  **II.     ARGUMENT**

4        **A.     Legal Standard.**

5        Settlements are to be encouraged in class-action lawsuits.  *See*, *e.g.*, *Free Range Content,*

6  *Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019)

7  ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class

8  action litigation is concerned.'") (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

9  However, under Federal Rule of Civil Procedure 23(e) the "claims, issues, or defenses of a

10  certified class—or a class proposed to be certified for purposes of settlement—may be settled . . .

11  only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect

12  the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re*

13  *Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a district court

14  approves a class action settlement, it must conclude that the settlement is "fundamentally fair,

15  adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

16  Approval of a class-action settlement proceeds through two stages:  preliminary approval and

17  final approval (with notice in between).  *See Manual for Complex Litigation*, § 13.14, at 173

18  (4th ed. 2004).

19        Under this Circuit's precedent following *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th

20  Cir. 1998), courts may preliminarily approve a settlement and notice plan to the class if the

21  proposed settlement: (1) appears to be the product of serious, informed, non-collusive

22  negotiations; (2) does not grant improper preferential treatment to class representatives or other

23  segments of the class; (3) falls within the range of possible approval; and (4) has no obvious

24  deficiencies.  *See In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7

25  (N.D. Cal. Nov. 21, 2018) (citation omitted); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

26  1078, 1079 (N.D. Cal. 2007).  In determining whether to grant approval, the Ninth Circuit "has

27  long deferred to the private consensual decision of the parties" to settle.  *Rodriguez v. West Pub'g*

28  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

1
2
3
4
5
6

private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citation omitted).

7
8
9
10
11

   The *Hanlon* factors largely overlap with the factors specified in the 2018 amendments to Rule 23, which are now set forth in subsection (e)(2) of that rule. *See Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021). Under that subsection, a court is to consider the following factors in assessing whether a proposed class settlement is "fair, reasonable, and adequate":

12
    (A) the class representatives and class counsel have adequately represented the class;

13
    (B) the proposal was negotiated at arm's length;

14
    (C) the relief provided for the class is adequate, taking into account:

15
      (i) the costs, risks, and delay of trial and appeal;

16
17
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

18
19
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

20
      (iv) any agreement required to be identified under Rule 23(e)(3); and

21
    (D) the proposal treats class members equitably relative to each other.

22
Fed. R. Civ. P. 23(e)(2).

23
   For ease of review, we consider the factors under the rubric used in the Rule.

24
   **B.  The Parties' Settlement Meets the Standard for Preliminary Approval.**

25
     **1. SCB and Class Counsel have adequately represented the class.**

26
27
28
   In granting class certification, the Court explained that "Gaw Poe are able attorneys who have litigated this action vigorously on behalf of the class." (Dkt. No. 288 at 21.) The Court further found an absence of any conflict between Gaw | Poe and the AdWords class. (*Id.*) In the

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

two years since that order was written, Gaw | Poe has continued to vigorously represent the interests of the AdWords class, through continuing to pursue discovery in support of the class's claims against Google, moving for and opposing summary judgment, and by fronting hundreds of thousands of dollars from its own pockets to fund class notice, discovery expenses, and expert witness fees.  (Gaw Decl. ¶¶ 3-4, 13, 15-16.)  In short, Gaw | Poe's vigor in support of the class's claims has continued unabated since the Court's prior finding.

The Court likewise found that SCB had fulfilled its role as an adequate representative of the AdWords class.  (Dkt. No. 288 at 19.)  In support of Plaintiff's motion for class certification, SCB's principal Ramzy Rahib submitted a declaration describing how SCB came to be a named-plaintiff in this litigation, and the role and efforts he has undertaken in furtherance of that responsibility.  (Dkt. No. 205-2 ¶¶ 12-14; *see also supra* at § I(H) (describing, in conjunction with the requested service award, Mr. Rahib and SCB's contributions to the class's goals).)  There has been relatively little need for further contributions from SCB between the time of class certification and the present other than to participate in the mediation on the class's behalf, but suffice it to say, nothing has happened between then and now that could call SCB's adequacy into question.

## 2.  The proposed Settlement was negotiated at arm's length.

As this Court recently noted in *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4, the "arm's length" inquiry under Rule 23(e)(2)(B) overlaps with the *Hanlon* factor requiring a court to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . ."  150 F.3d at 1027 (internal quotes and citations omitted).  As set forth above, the Settlement was achieved only after extensive written and oral discovery, including review and analysis of tens of thousands of documents and of initial disclosures and interrogatory answers, much with the aid of consulting experts, and over a dozen depositions of the parties and their experts; three motions to dismiss; a motion for class certification; and cross-motions for summary judgment.  (Gaw Decl. ¶¶ 3-4, 13, 15-16.)  Under such circumstances, where the settlement is the result of long, hard-fought, adversarial work by capable counsel, the Court affords a proposed class settlement a "presumption of fairness, adequacy, and reasonableness."

1    *See Free Range Content*, 2019 WL 1299504, at *6; *Manual for Complex Litigation* (Third) §

2    30.42 (1995).

3         The involvement of a neutral mediator such as Judge Fogel additionally supports this

4    factor.  *See, e.g.*, *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2021 WL

5    837626, at *5 (N.D. Cal. Feb. 4, 2021) ("'[T]he involvement of a neutral ... mediator or facilitator

6    in [ ] negotiations may bear on whether they were conducted in a manner that would protect and

7    further the class interests.'") (quoting Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv.

8    (e)(2) (2018)); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL

9    3623734, at *5 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538

10   (9th Cir. 2021) (arms' length negotiations presided over by a neutral mediator supported

11   settlement approval); *Shahar v. Hotwire, Inc.*, No. 12-CV-06027-JSW, 2014 WL 12647737, at *2

12   (N.D. Cal. July 25, 2014).  Indeed, Judge Fogel attests that, in his opinion, the proposed

13   Settlement reached at mediation is fair, adequate, and reasonable.  (Fogel Decl., ¶¶ 3-5.)

14                  **3.   The relief provided for the class is adequate.**

15        To evaluate whether the settlement is within the range of possible approval, "courts

16   primarily consider plaintiffs' expected recovery balanced against the value of the settlement

17   offer."  *In re Tableware*, 484 F. Supp. 2d at 1080.  It is "'well-settled law that a proposed

18   settlement may be acceptable even though it amounts to only a fraction of the potential recovery

19   that might be available to the class members at trial.'"  *In re: Cathode Ray Tube (Crt) Antitrust*

20   *Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016), *dismissed sub*

21   *nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir.

22   Mar. 2, 2017).

23        Given the 4+ years of pre-settlement discovery and litigation, Plaintiff's counsel was well-

24   situated to evaluate the strength and weakness of Plaintiff's case.  (Gaw Decl., ¶¶ 3-4, 13, 15-16.)

25   As noted, the $7 million settlement value Class Counsel obtained mirrors the amount of class

26   damages that their expert witness estimated at the class certification stage and is well within the

27   broad range of possible damages he opined in his merits report.  (*Supra* at § I(D).)  Additionally,

28   and as explained above, Google's expert maintained that the data showed that there was no

1    "credit shortfall" affecting the AdWords Class at all, such that the class was owed $0, and that the

2    multiplier on which Plaintiff's expert relied to provide his revised damages range was not

3    supported by Google's supplemental discovery responses. (*Id*.)  Especially where a class may

4    "risk getting nothing," courts routinely approve settlements where the settlement value is a small

5    portion of what plaintiffs allege is the defendant's total potential exposure. *In re Omnivision*

6    *Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also, e.g.*, *Perkins v. Linkedin*

7    *Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *5 (N.D. Cal. Feb. 16, 2016) (approving $13

8    million settlement where the total exposure exceeded $1.6 billion because this was "a fair and

9    adequate compromise in light of significant risks faced by the class"); *Destefano v. Zynga, Inc.*,

10   No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) ("it is well-settled law

11   that a proposed settlement may be acceptable even though it amounts to only a fraction of the

12   potential recovery that might be available to the class members at trial"); *Fraley v. Facebook,*

13   *Inc.*, 966 F. Supp. 2d 939, 943-44 (N.D. Cal. 2013) (the adequacy of [the] settlement should not

14   be evaluated against some theoretically available judgment, but against what plaintiffs could

15   reasonably expect to recover").

16           We now turn to the individual factors identified in Rule 23(e)(2)(C).

17                   **i.    The costs, risks, and delay of trial and appeal.**

18           The $7 million settlement fund is a fair and admirable result in light of the risks and delay

19   posed by further trial proceedings and a potential appeal. *See, e.g.*, *Hanlon*, 150 F.3d at 1026

20   (courts should consider "the risk, expense, complexity, and likely duration of further litigation"

21   when assessing whether a settlement is fair and reasonable).  The AdWords class faced a distinct

22   risk that the Court may have ruled in Google's favor on its pending summary judgment motion.

23   (*See* Dkt. No. 333-3 (Google MSJ), at pp. 19-32.)  Even short of an outright loss at summary

24   judgment, the Class faced a distinct risk that its damages would be severely limited.  Google

25   forcefully argued that the Terms included a contractual limitation provision that limited class

26   recovery to a 60-day claim period instead of the four-year limitations period advocated by Class

27   Counsel.  (*Id*.)  While Plaintiff disagreed based on its reading of the provision and evidence

28   obtained during discovery, as well as its argument that the limitation of liability is unenforceable,

it was nevertheless imperative for Plaintiff and Class Counsel to take those risks into account in arriving at a mediated settlement.  (Gaw Decl. ¶¶ 16-19.)

Even assuming that the class would have overcome the several risks presented by summary judgment, there was the additional risk that the jury might have either (A) sided with Google on the merits, or (B) awarded a smaller amount in damages than the $7 million all-cash deal that Class Counsel and SCB obtained (perhaps all the way down to the $0 damages amount opined by Google's expert), especially since the overwhelming majority of the estimated class damages was based upon the use of a multiplier derived from what Google contends were inadvertently erroneous interrogatory responses.  The Court denied Plaintiffs' motion to exclude the use of Google's supplemental interrogatory responses (*see* Dkt. No. 354), which left Plaintiffs' damages calculations especially vulnerable should a jury believe Google that its initial responses should be disregarded.  And even had the class prevailed at trial, it still would have faced a risky road in proceeding through post-trial motions and an appeal, all of which likely would have delayed compensation to the class for two years or more.  In sum, the compromise that Class Counsel and SCB ably reached on the class's behalf can hardly be second-guessed by anyone familiar with this litigation.

### ii. The method of distributing relief and processing claims.

Class Counsel and SCB propose a distribution method that is as equitable as possible.  As described above, *supra* at § I(E), the proposed settlement would distribute to each Claimant with a Valid Claim a share of the Net Settlement Fund based on its AdWords advertising spend on AdX publishers' webpages during the relevant limitations period, in proportion to the total such spend for all Claimants with Valid Claims.  In this way, class members who spent greater sums through the relevant advertising platform (and thus would have been expected to have been deprived of a larger amount in refunds under Plaintiff's theory) will obtain a greater share, while class members who suffered a smaller injury (under Plaintiff's theory) will obtain a proportionately smaller share.[3]  Courts have repeatedly approved analogous settlement

---

[3] We note that Google and its counsel should be commended for agreeing to this structure, which would not be possible without Google's agreement to undertake the data-intensive task of compiling spend-data for each Claimant.

PLTF'S MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL
CASE NO. 5:17-CV-07082-BLF

1    distribution methods.  *See, e.g.*, *Baird v. BlackRock Institutional Tr. Co., N.A.*, No. 17-CV-01892-

2    HSG, 2021 WL 5991060, at *5 (N.D. Cal. July 12, 2021) (approving allocation plan that provided

3    for settlement payments in proportion to the size of class members' investment accounts);

4    *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL

5    5938722, at *8 (C.D. Cal. May 16, 2016) (settlement allocation based on roughly proportionate

6    delta between each class member's billed charges as compared to reimbursement shortage had

7    rational basis).

8            While in some sense it might be deemed more "equitable" to distribute a share of the Net

9    Settlement Fund to every class member on an automated basis (without requiring them to submit

10   claims) such a structure is not feasible here because (A) Google does not have a physical address

11   for all members of the class such that the Settlement Administrator could send them a check, (B)

12   the addresses it does have are up to nine years old given the beginning of the limitations period,

13   and (C) neither Class Counsel nor Google has electronic payment information for the class

14   members.  (Gaw Decl. ¶ 10.)  In other words, an automatic distribution method would be arbitrary

15   because it would fail to reach an untold number of class members through no fault of their own,

16   and the "residue" remaining in the Net Settlement Fund after the distribution attempt would likely

17   be very high.  For that reason, it is far more efficient and equitable to distribute the Net

18   Settlement Fund to those class members who affirmatively make a claim on it.

19           Importantly, while the proposed method of distribution could be colloquially described as

20   a "claims-made settlement," it is not one in which the defendant's exposure is limited by the

21   number of claims made, or one in which unclaimed amounts will revert to the defendant or the

22   plaintiff's counsel—characteristics that are often considered "'indicia of collusion.'"  *In re*

23   *Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 10539266, at *1 (N.D. Cal.

24   June 14, 2018) (quoting 4 Newberg on Class Actions § 13:9 (5th ed. 2018)); *see also Kakani v.*

25   *Oracle Corp.*, No. 06-cv-06493-WHA, 2007 WL 1793774, at *5 (N.D. Cal. June 19, 2007).

26   Rather, it is "claims-made" only in the sense that class members who desire to make a claim on

27   the Net Settlement Fund must identify themselves and provide appropriate payment information,

28   out of pragmatic necessity.  Furthermore, the claims process is designed to be as minimally

1   burdensome as possible.  The only thing that a Claimant needs to do is input the ID# it is assigned

2   by the Settlement Administrator into the online-portal found on the class website, and then input

3   any updated contact information, and identify its preferred form of payment.  (*See* Weisbrot Decl.

4   ¶¶ 22-23 & Exs. B-D; Gaw Ex. A, § 3.)  Any class member who cannot find its ID# (for any

5   reason) can alternatively contact the Settlement Administrator to find out whether it is an eligible

6   member of the class, and proceed to make a claim if so.  (Weisbrot Ex. D.)

7          Finally, so that the cost of administering a claim does not exceed that claim's value, the

8   proposed settlement would impose a minimum $1.00 threshold on Settlement Payments.  (Gaw

9   Decl. ¶ 9 & Ex. A, § 2.4.1.)  Minimum thresholds for class distributions are routinely deemed

10  appropriate.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 06-cv-4333-

11  PJH, 2013 WL 12333442, at *81 (N.D. Cal. Jan. 8, 2013) ("The concept of setting a *de minimis*

12  payment amount below which checks will not be issued has long been accepted as a feature of

13  class action distributions.") (collecting citations); *Redwen v. Sino Clean Energy, Inc.*, 11-cv-

14  3936-PA-(SSX), 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013) (recognizing that *de minimis*

15  payment threshold preserved settlement fund from being overburdened and benefited class as a

16  whole because "it saves the settlement fund from being depleted by the administrative costs").

17                    **iii.    The terms and timing of the proposed attorneys' fees award.**

18         Pursuant to the Settlement Agreement and as explained in the Website Notice (*i.e.*, the

19  long-form notice) to the Class, Class Counsel and SCB will file a motion for attorneys' fees and a

20  "service award" at least 30 days prior to the deadline for submitting claims, objections, and opt-

21  out requests, and the Settlement Administrator will promptly make that motion available for

22  review on the Settlement Website.  (Gaw Ex. A, § 8.2; Weisbrot Ex. D.)  The Website Notice

23  further explains that Class Counsel will seek up to 33% of the Settlement Fund for attorneys' fees

24  for this long-fought litigation, which will be more than supported by a lodestar cross-check, even

25  at the hourly rates this Court approved for Class Counsel more than two years ago.  (Weisbrot Ex.

26  D; Gaw Decl. ¶ 13.)  SCB and Class Counsel respectfully submit that 33% is fair in light of the

27  years they spent in this hard-fought litigation against formidable opposing counsel and their

28  formidable client, and the significant result achieved for the proposed AdWords Class.  *See*

- 17 -

*Rodriguez v. Nike Retail Servs., Inc.*, No. 14-CV-01508-BLF, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) (awarding class counsel 33% of an $8.5 million settlement, which translated to a lodestar of 1.17). Google has reserved the right to oppose that motion for any reason, at its discretion. (Gaw Decl. ¶ 13 & Ex. A, § 8.1.)

Plaintiffs' motion for fees will also seek to recover that portion of Class Counsel's out-of-pocket costs properly attributable to their pursuit of this outcome for the AdWords Class, which are expected to be approximately $825,000. (Gaw Decl. ¶ 13.) By far the largest component of those costs were expert fees, which were necessarily and reasonably incurred given the multiple expert reports necessary to achieve this result, and the extremely data-intensive subject matter of those reports. (*Id.*) The second largest component involved issuing Litigation Notice to the certified litigation class, which amounted to approximately $97,000. (*Id.*) As will be seen, none of those out-of-pocket costs were avoidable in achieving this result.

Furthermore, the finality of the Settlement is specifically untethered to Class Counsel's right to attorneys' fees, and the amount of those fees. In other words, neither SCB nor Class Counsel can seek to terminate the Settlement based on the outcome of the Court's ruling on the fee motion or Service Award. (Gaw Ex. A, § 7.6.)

Regarding the timing of any fee award, the Settlement provides that it becomes payable within 15 days after the date the Final Approval Order is entered. (*Id.* at § 8.4.)

### iv. Statement of agreements required to be identified.

At the February 25, 2022 mediation with Judge Fogel, in addition to reaching settlement as to the AdWords class, the parties agreed to settle the remaining individual claims of AdTrader, Inc., as well as Gaw | Poe's claim for attorneys' fees on the "common fund" created by Google's decision to issue $65.7 million in refunds to advertisers on Google's DBM advertising platform. (Gaw Decl. ¶¶ 21-22.) As the Advisory Committee notes to Rule 23(e)(2) explain, it is important for the parties to identify "related undertakings," out of concern that they "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2), Ad. Comm. Notes (2018). The Committee notes further recognize, however, that this obligation is tempered by "concerns of confidentiality"—an

issue that is particularly presented by the AdTrader settlement, given that AdTrader is neither a class representative nor even a member of the AdWords Settlement Class.

Here, the two additional separate agreements the parties reached did not trade away any advantages for the class. To avoid any potential for a conflict of interest in mediating AdTrader's individual claims simultaneously with the claims of the AdWords Class, Gaw | Poe insisted that AdTrader obtain separate counsel for the mediation. (Gaw Decl. ¶ 22.) It did so by independently finding and retaining a highly experienced attorney named Sven Reithmueller, who had previously worked as an associate for Cleary Gottlieb and Sullivan & Cromwell, and later been a partner at Foley & Larder and Pepper Hamilton.[4] Mr. Reithmueller independently prepared and submitted to Judge Fogel his own mediation statement on behalf of AdTrader. (*Id*.) Furthermore, during the mediation itself, Mr. Reithmueller and AdTrader negotiated separately with Google through Judge Fogel. (*Id*.)

Nor can Gaw | Poe be said to have benefitted at the expense of the class. Between the fees and expense reimbursements the firm is to receive from AdTrader's separate settlement and the compromise of its own fees claim (*i.e.*, Gaw | Poe's contention that the Court erred in awarding it just $727,503.74 in conjunction with the $65.7 million "common fund" created by Google's refunds to DBM advertisers (Dkt. No. 289 at 18)),[5] Gaw | Poe will receive a total of only $1.2 million in combined fees and expense reimbursements, inclusive of and not in addition to the approximately $730,000 the Court previously awarded. (*Id*.; Gaw Decl. ¶¶ 23-24.) Even setting aside the possibility that Gaw | Poe would have received a far greater amount from a successful appeal of the Court's prior DBM fees order, assuming that the firm would have been entitled to 10% California prejudgment interest between the date that the $727,503.74 amount was fixed in March 2020 and the date final judgment would likely enter (year-end of 2022), Gaw | Poe would

---

[4] *See* https://www.linkedin.com/in/sven-riethmueller-3556931/details/experience/.

[5] The Court will recall that Gaw | Poe LLP took an appeal from the Court's order granting in part its fees claim to challenge the amount awarded by the Court, but the Ninth Circuit dismissed that appeal for lack of appellate jurisdiction, holding that the appeal must await entry of final judgment in this case. (*See* Dkt. No. 329 (9th Cir. opinion).)

have been entitled to $921,503 in connection with only its DBM fees claim, win or lose.[6]

Accordingly, a $1.2 million compromise of Gaw | Poe's DBM fees claim (combined with its

share of fees and expenses from the separate AdTrader settlement) was eminently reasonable, and

cannot be thought to have "trad[ed] away possible advantages for the class."  Fed. R. Civ. P.

23(e)(2), Ad. Comm. Notes (2018).

     A further assurance that the AdTrader and Gaw | Poe settlements did not come at the

expense of the class is the fact that the three settlements were the result of a "mediator's

proposal," which Judge Fogel proposed to "achiev[e] a global settlement."  (Fogel Decl. ¶ 4.)

### 4.  The proposed settlement treats class members equitably relative to each other.

     The Settlement does not grant preferential treatment to Class Representative SCB or any

segment of the AdWords Class.  As explained in the Website Notice, and as described above, the

Settlement provides cash relief to all eligible Class Members on a fair and proportionate claims-

made basis, and SCB is entitled to make a claim just like any other class member.  (Gaw Decl. ¶ 9

& Ex. A, §12.)  Under the Agreement, there is no biased treatment of AdWords Class Members

or segments of the class, as each AdWords Class Member with a Valid Claim will receive a

Settlement Payment proportionate to its AdWords spend through the AdX platform during the

class period.  (*Id.*)  All AdWords Class Members, including the Class Representative SCB, are

treated equally under the Settlement Agreement.

     As for the proposed Service Award to SCB, $10,000 is an appropriate amount considering

the time and attention that SCB has devoted to this matter.  *See supra* at § I(H) (describing SCB's

work in support of this case); *see also*, *e.g.*, *See, e.g., Parker v. Cherne Contracting Corp.*, No.

18-CV-01912-HSG, 2021 WL 3209825, at *5 (N.D. Cal. July 29, 2021) (considering distribution

of settlement funds and proposed service award to class representative in evaluating preferential

treatment factor); *Birch v. Off. Depot, Inc.*, 06-CV-1690 DMS (WMC), 2007 WL 9776717, at *2

(S.D. Cal. Sept. 28, 2007) ($15,000 and $10,000 service awards awarded to class representatives

were "well within amounts awarded by courts for efforts by named representative plaintiffs that

---

[6] 10% interest would translate to $72,750 per year, or $6,062 per month for 32 months.

1   lead to successful resolution on behalf of the class"); *McDonald v. CP OpCo, LLC*, No. 17-CV-

2   04915-HSG, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) (service award of twice the

3   presumption of $5,000 was fair and reasonable considering plaintiff's participation).

4            Regarding the possibility of *cy pres* distributions, the Ninth Circuit has stated that "[t]he

5   cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class

6   action settlement fund to the 'next best' class of beneficiaries." *Nachsin v. A.O.L., LLC*, 663 F.3d

7   1034, 1036 (9th Cir. 2011) (citation omitted)).  Here, as noted, there is unlikely to be much if any

8   residue in the Net Settlement Fund due to the distribution process the parties have agreed to.

9   (*Supra* at § I(E).)  If any amount remains, however, it will not revert to Google, SCB, or Class

10  Counsel, but will instead by turned over to Public Justice as the C*y Pres* Recipient here.  (Gaw

11  Decl. ¶ 11 & Ex. B.)

12           **C.  The Court Should Approve the Proposed Class Notice.**

13           Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class

14  members who would be bound by the proposal."  *See also Manual for Complex Litig. (Fourth)*, §

15  21.312, at 293.

16           Here the Settlement Administrator has devised an intensive and best-notice-practicable

17  Settlement Notice program that entails direct email notice to the AdWords Class Members;

18  Supplemental Postcard Notice; and a Settlement Website.  (*See* Weisbrot Decl. ¶¶ 13-26 & Exs.

19  B-D; Gaw Ex. A.)

20           Direct notice by email (followed by postcard notice for undeliverable emails) referring

21  class members to a settlement website is widely accepted as reasonable for Rule 23 purposes—

22  this Court and others in this District have approved nearly identical notice processes numerous

23  times.  *See*, *e.g.*, *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL

24  1299504, at *3 (N.D. Cal. Mar. 21, 2019) (notice to Google AdSense publisher settlement class

25  members sent by direct email, and supplemental postcard notice if the email notice was

26  undeliverable and Google knew the member's physical address); *Taylor v. Shutterfly, Inc.*, No.

27  5:18-CV-00266-BLF, 2021 WL 5810294, at *2 (N.D. Cal. Dec. 7, 2021) (Angeion Group

28  administered direct email notice, followed by postcard notice as necessarily and possible,

referring class members to settlement website); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *3 (N.D. Cal. Nov. 12, 2019) (email notice followed by mail notice to each individual for whom the email notice failed where physical address information available, along with dedicated settlement website); *Carlotti v. ASUS Computer Int'l*, No. 18-CV-03369-DMR, 2020 WL 3414653, at *3 (N.D. Cal. June 22, 2020).

As for the substance of the notice, notice should inform settlement class members of the "essential terms" of an agreement, including the benefits it provides; advise of other pertinent information, including as to attorneys' fees; and describe pertinent procedural matters. *Manual for Complex Litig. (Fourth)*, § 21.312, at 295 (listing elements). Here, the Notice forms attached to the Settlement Administrator's declaration satisfy these requirements. (*See* Weisbrot Exs. B-D.) The Notice program and documents are designed to afford notice in a comprehensive and reasonable manner. Plaintiff respectfully asks the Court to approve them.

**D.     The Court Should Set a Schedule Toward Final Approval of the Parties' Settlement.**

Finally, if the Court grants preliminary approval as described herein, Plaintiff requests that the Court adopt the further schedule set forth above and in Plaintiff's proposed order that accompanies this motion.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary approval of the Parties' Settlement, and set a schedule for final approval proceedings.


Dated:  April 28, 2022                          GAW | POE LLP


                                                By: _____
                                                      Randolph Gaw
                                                      Class Counsel

- 22 -