1    RANDOLPH GAW (S.B. #223718)
     rgaw@gawpoe.com
2    MARK POE (S.B. #223714)
     mpoe@gawpoe.com
3    VICTOR MENG (S.B. #254102)
     vmeng@gawpoe.com
4    FLORA VIGO (S.B. #239643)
     fvigo@gawpoe.com
5    GAW | POE LLP
     4 Embarcadero, Suite 1400
6    San Francisco, CA 94111
     Telephone: (415) 766-7451
7    Facsimile: (415) 737-0642

8    Class Counsel

9

10                     **UNITED STATES DISTRICT COURT**

11                   **NORTHERN DISTRICT OF CALIFORNIA**

12                          **SAN JOSE DIVISION**

13

14   ADTRADER, INC., et al.,                Case No. 5:17-CV-07082-BLF

15                          Plaintiffs,      **PLAINTIFF SPECIALIZED
                                             COLLECTIONS BUREAU'S MOTION FOR**
16          v.                               **FINAL APPROVAL OF SETTLEMENT;
                                             MEMORANDUM OF POINTS AND**
17   GOOGLE LLC,                             **AUTHORITIES IN SUPPORT THEREOF**

18                          Defendant.       Judge:        Hon. Beth L. Freeman
                                             Hearing Date: October 27, 2022
19                                           Time:         9:00 a.m.
                                             Courtroom:    3
20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT ................................................................................................................... 1

I.     INTRODUCTION ............................................................................................... 2

II.    STATEMENT OF FACTS .................................................................................. 3

     A.    Plaintiffs' Allegations. ............................................................................. 3

     B.    Overview of Proceedings to Date. ........................................................... 4

     C.    Notice to the AdWords Class and Regulators. ......................................... 5

     D.    Anticipated Settlement Payments to AdWords Class Members. ............... 6

III.   LEGAL STANDARD ......................................................................................... 7

IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT. ........... 8

     A.    Notice to the AdWords Class Was Adequate. ......................................... 8

     B.    The AdWords Class Meets the Requirements for Certification for Purposes of Entering Judgment on the Settlement. ................................................... 9

     C.    The Settlement is Fundamentally Fair, Reasonable, and Adequate. ........ 10

     1.    SCB and Class Counsel have adequately represented the class. ............ 11

     2.    The proposed Settlement was negotiated at arm's length. ..................... 11

     3.    The relief provided for the class is adequate. ........................................ 12

     4.    The relief provided for the class is adequate. ........................................ 13

     i.    The costs, risks, and delay of trial and appeal. ..................................... 13

     ii.    The method of distributing relief and processing claims. ...................... 14

     iii.   The terms and timing of the proposed attorneys' fees award. ............... 16

     iv.   Statement of agreements required to be identified. ................................ 18

5.    THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER. ................................................................................................ 19

6.    THE REACTION OF ADWORDS CLASS MEMBERS AND REGULATORS. ........... 20

CONCLUSION ............................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
  No. 17-CV-01892-HSG, 2021 WL 5991060 (N.D. Cal. July 12, 2021) ............................... 15

*Birch v. Off. Depot, Inc.*,
  06-CV-1690 DMS, 2007 WL 9776717 (S.D. Cal. Sept. 28, 2007) ........................................ 20

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
  No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016), *dismissed*
  *sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017
  WL 3468376 (9th Cir. Mar. 2, 2017) .................................................................................... 12

*Chavez v. PVH Corp.*,
  No. 13-CV-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015)................................. 21

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................... 13

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
  No. CV09-5457 PSG (JCX), 2016 WL 5938722 (C.D. Cal. May 16, 2016) ........................ 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. 06-cv-4333-PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013).................................... 16

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017), *aff'd*
  *sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021) ........................................ 12

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................................................. 13

*Free Range Content, Inc. v. Google, LLC*,
  No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ..................... 9, 10, 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)......................................................................................*passim*

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ....................................................................... 21

*Kakani v. Oracle Corp.*,
  No. 06-cv-06493-WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007)............................... 16

*Kumar v. Salov N. Am. Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017)..................................................................... 9, 10

*In re Lenovo Adware Litig.*,
  No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ................................ 7

*McDonald v. CP OpCo, LLC*,
  No. 17-CV-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019) ................................ 20

*In re Myford Touch Consumer Litig.*,
  No. 13-CV-03072-EMC, 2018 WL 10539266 (N.D. Cal. June 14, 2018) ............................ 16

*Nachsin v. A.O.L., LLC*,
  663 F.3d 1034 (9th Cir. 2011) ............................................................................................. 20

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................................. 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... 13, 20

*Parker v. Cherne Contracting Corp.*,
  No. 18-CV-01912-HSG, 2021 WL 3209825 (N.D. Cal. July 29, 2021) .............................. 20

*Perkins v. Linkedin Corp.*,
  No. 13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ................................. 13

*Perks v. Activehours, Inc.*,
  No. 5:19-CV-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ..................... *passim*

*Rabin v. PricewaterhouseCoopers LLP*,
  No. 16-CV-02276-JST, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) .................................... 12

*Redwen v. Sino Clean Energy, Inc.*,
  11-CV-3936-PA-(SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) .............................. 16

*Roberts v. Marshalls of CA, LLC*,
  2018 WL 510286 (N.D. Cal. Jan. 23, 2018) ....................................................................... 22

*Rodriguez v. Nike*,
  No. 14-CV-01508-BLF, 2022 WL 254349 (Jan. 27, 2022) ........................................... 10, 17

*Russell v. United States*,
  2013 WL 12172989 (N.D. Cal. Mar. 5, 2013) ..................................................................... 10

*Shahar v. Hotwire, Inc.*,
  No. 12-CV-06027-JSW, 2014 WL 12647737 (N.D. Cal. July 25, 2014) ............................. 12

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................... 7, 12

**Statutes**

California's False Advertising Law .............................................................................. 4

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................................... 5, 9

Unfair Competition Law .............................................................................................. 4

**Other Authorities**

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on October 27, 2022, at 9:00 a.m. in Courtroom 3 of the Robert F. Peckham Federal Building, located at 280 South 1st Street, San Jose, California (or by videoconference, as determined by the Court), Plaintiff Specialized Collections Bureau, Inc. ("SCB"), on behalf of itself and the certified AdWords Class, will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 23(e) for an order granting final approval to the Class Action Settlement Agreement ("the Settlement Agreement" or "Settlement")[1] it has reached with Google LLC ("Google") on grounds the Settlement is fair, reasonable, and adequate; that the Notice provided to the AdWords Class was adequate and comports with the requirements of due process; confirming, for settlement purposes, certification of the AdWords Class specified in the Settlement Agreement; directing the Settlement Administrator to distribute the Settlement Payments pursuant to the outcome of the Claims Process and SCB's motion separately pending for attorneys' fees, costs, and expenses to Class Counsel and a service award to SCB; reserving and continuing jurisdiction over the Settlement and any disputes regarding it; and directing that a final judgment of dismissal be entered.

This motion is based on the attached supporting memorandum; the Declaration of Steven Weisbrot; the pleadings and papers on file in this Action, including (but not limited to) those submitted by the Parties in support of SCB's motion for preliminary approval (Dkt. Nos. 385-387), and those submitted by SCB in support of SCB's motion for service award, attorney's fees, and costs and expenses (Dkt. Nos. 399, 400); and the oral argument of counsel to be presented at the scheduled hearing.

## STATEMENT OF RELIEF SOUGHT

SCB, on behalf of itself and the AdWords Class, moves pursuant to Fed. R. Civ. P. 23(e) for final approval of a Settlement regarding the AdWords Class's allegation that Google LLC

---

[1] Unless otherwise indicated, all capitalized terms in this motion refer to capitalized terms in the Parties' Settlement.

("Google") wrongfully failed to pay refunds or credits for invalid advertising traffic whose

monetary value Google had debited from publishers during the applicable limitations period.

SCB seeks an order granting final approval of the Settlement reached on behalf of the AdWords

Class on grounds the Settlement is fair, reasonable, and adequate; and that adequate notice of the

Settlement has been given to the class.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Settlement is fair, reasonable, and adequate under Federal Rule of

Civil Procedure 23(e)(2).

2.      Whether the Notice provided to the AdWords Class comports with due process

and was directed in an adequate manner to all AdWords Class Members who would be bound by

the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(1).

3.      Whether the Settlement Administrator should be directed to distribute the

Settlement Payments pursuant to the outcome of the Claims Process; and

4.      Whether to grant final approval of the Settlement and enter a judgment of

dismissal.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

After more than two years of hard-fought litigation, the class of AdWords advertisers that

SCB sought to represent (the "AdWords Class") was certified by this Court under Rule 23(b)(3).

Dkt. No. 278 ("Class Certification Order".)  Following nearly two *more* years of hard-fought

litigation, including dueling and fully briefed summary judgment motions, Google and SCB

reached a settlement of the claims of the AdWords Class, (*see* Dkt. Nos. 379, 385-87), which the

Court preliminarily approved on May 13, 2022.  (Dkt. No. 393 ("Preliminary Approval Order").)

Following an extensive direct Notice campaign, the Claims Process ensued in accordance with

the Court's Preliminary Approval Order.  To ask for a share of the negotiated benefits, AdWords

Class Members merely had to timely complete a simple claim form and had the option to submit

that form online, via postal mail, or by fax.  (Decl. of Steven Weisbrot ¶ 22; *see also* Dkt. No. 385

("Preliminary Approval Motion") at 6-8; Preliminary Approval Order at 2-3.)

1    The Claims Process was successful.  If approved, the Settlement will result in over 8,500

2   valid Claimants.  Each such Claimant will receive a share of the Net Settlement Fund that is

3   proportionate to its AdWords advertising spend on AdX publishers' webpages during the Class

4   Period, pursuant to the model agreed to by the Parties and preliminarily approved by the Court.

5   (Preliminary Approval Motion at 6-8; Preliminary Approval Order at 2-3.)  Only a single

6   AdWords Class Member objected to the Settlement, and only 17 AdWords Class Members

7   excluded themselves from its terms under the renewed opt-out opportunity the Parties provided

8   following preliminary approval.   (Weisbrot Decl. ¶¶ 29, 31.)  As discussed below, the sole

9   objection is based on that particular Class Member's alleged general complaints about the success

10   of the advertising campaigns he ran using Google's services, rather than being focused on any

11   specific element of *this* Settlement or the claims that were litigated in *this* case.  Accordingly, that

12   objection should not be afforded any weight and does not justify rejection or revision of the

13   Settlement.

14   **II.    STATEMENT OF FACTS**

15       **A. Plaintiffs' Allegations.**

16       Plaintiffs filed a proposed class action on December 13, 2017, alleging that Google

17   wrongfully failed to provide refunds or credits to advertisers who used what was then known as

18   its DoubleClick Bid Manager ("DBM") platform (now "Display & Video 360") for invalid

19   activity that Google detected.  Plaintiffs subsequently extended their claims to include advertisers

20   who used Google's AdWords platform as well, among others.  (Dkt. Nos. 1, 29, 72 ("SAC").)

21       Google's DoubleClick Ad Exchange ("AdX") is a Google-owned and operated

22   advertising exchange serving both advertisers and website publishers.  Website publishers using

23   AdX can monetize their inventory and be matched via an auction format with online advertisers

24   looking to bid on that inventory.  Google pays publishers a portion of the revenues Google

25   receives for ads displayed on the publisher's websites.  (Dkt. No. 154 ("Answer") ¶ 23.)

26   AdWords is a service that allows advertisers to run both display and search advertising

27   campaigns.  AdWords advertisers could buy inventory from AdX publishers under the AdWords

28   default settings.  (Answer ¶ 27.)  Plaintiff SCB was an AdWords advertiser.  (*Id.* ¶ 57.)  Google

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

attempts to detect invalid ad traffic ("IVT") and issue credits or refunds to advertisers for such traffic.  (*Id.* ¶¶ 41-45.)  On behalf of itself and the AdWords Class, Plaintiff SCB alleged that Google breached the AdWords Agreement and violated California's False Advertising Law ("FAL") and Unfair Competition Law ("UCL") by failing to fully refund or credit advertisers for invalid ad traffic even though it had contemporaneously withheld payment to AdX publishers for that same traffic.  (SAC ¶¶ 157-248.)

**B.  Overview of Proceedings to Date.[2]**

Plaintiffs filed the operative Second Amended Complaint on August 13, 2018, as modified by the Court's order granting in part Google's motion to dismiss the same.  (SAC; Dkt. No. 131.)  On March 13, 2020, the Court certified under Rule 23(b)(3) Plaintiff's proposed AdWords Class, membership in which is defined as follows:

> All persons and entities: (1) whose Google AdWords advertiser accounts were subject to the Google Inc. Advertising Program Terms for the United States; (2) who were charged by Google through their AdWords accounts for clicks or impressions on advertisements appearing on any DoubleClick Ad Exchange publisher website at any time during the applicable limitations period; (3) who did not receive refunds or credits from Google even though it withheld payment to that publisher for those clicks or impressions in connection with any invalid activity or any breach of contract, including any policy violation; and (4) who opted out of the arbitration clause of the Terms.

(Class Certification Order.)  The Class Certification Order further appointed SCB as the representative of the Class, and Gaw | Poe LLP as class counsel.  (*Id.*)  Following the Court's ruling on class certification, Plaintiffs filed an unopposed motion for approval of notice to the litigation class ("Litigation Notice"), which the Court granted on March 23, 2021.  (Dkt. Nos. 305, 308).  The Court approved Angeion Group as the Administrator for purposes of sending the Litigation Notice, collecting opt outs, administering the case website, and tabulating the associated information for reporting to the Court through Class Counsel.  (Dkt. No. 308.)  Pursuant to the notice plan, on August 12, 2021, Angeion sent notice to the litigation class, consisting of 651,294 emails and 141,318 mailed postcard notices, which resulted in 34 opt-outs,

---

[2] A more detailed recitation of facts and procedural background is contained in the Motion for Preliminary Approval (Dkt. No. 385).

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

1   as shown in the administrator's report filed October 21, 2021.  (Dkt. No. 346-1).

2   On February 25, 2022, after intensive written and oral discovery and with cross-motions

3   for summary judgment pending, the Parties attended a successful mediation session with the

4   Honorable Jeremy Fogel, Ret. (the "Mediation").  On April 28, 2022, SCB filed its Motion for

5   Preliminary Approval, which the Court granted on May 13, 2022.  (Preliminary Approval

6   Motion; Preliminary Approval Order.)  The Preliminary Approval Order approved the Settlement

7   and its Notice provisions, appointed Angeion Group to serve as the Settlement Administrator, and

8   established deadlines for Claims, Objections, and Opt-Outs.  (Preliminary Approval Order.)  As

9   detailed in the Settlement, the Settlement provides for a non-reversionary sum of $7 million to

10  satisfy these Claims, payable on a Claims-made basis, under which each Claimant with a Valid

11  Claim will receive a proportional share of the Net Settlement Fund based on its AdWords

12  advertising spend on AdX publishers' webpages during the relevant limitations period as a

13  percentage of the total such spend for all Claimants with Valid Claims.  (Dkt. No. 386-1

14  ("Settlement Agreement") at §§ 1.42, 1.44, 2.4.)

15  In its Preliminary Approval Order, the Court acknowledged the benefits of the Settlement

16  and found, on a preliminary basis, that the Settlement "substantially fulfills the purposes and

17  objectives of the class action, and provides substantial relief to the AdWords Class without the

18  risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal."

19  (Preliminary Approval Order at 2.)

20  **C.  Notice to the AdWords Class and Regulators.**

21  In accordance with the Preliminary Approval Order, the Settlement Administrator

22  provided the Court-approved Notice to the AdWords Class and provided notice to regulators, as

23  required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  (Dkt. No. 397

24  (Declaration of Ryan Chumley Regarding CAFA Notice Dissemination).)  Specifically, on May

25  9, 2022, the Settlement Administrator mailed the required CAFA notice to the United States

26  Attorney General and the Attorneys General of all 50 states, plus the 5 U.S. Territories.  (*Id.*)  The

27  Settlement Administrator likewise updated the class website following preliminary approval, to

28  include updated Settlement Notices, a Claim Form; an Opt-Out Form; answers to frequently

asked questions; a list of important deadlines; and important case documents.  (Weisbrot Decl. ¶¶ 17-20.)

On June 17, 2022, the Settlement Administrator caused Email Notice to be sent to the 870,509 advertisers for whom e-mail addresses were available, and caused Postcard Notice to be mailed to the 191,154 advertisers for whom only physical addresses were available or for whom emails were returned as undeliverable.  (*Id*. at ¶¶ 12-13.)  Regarding Email Notice, 817,741 were indicated as delivered; regarding Postcard Notice, 132,694 of those initially mailed were delivered, 58,990 of those initially mailed were returned as undeliverable, 32,379 were then re-mailed, and 808 were forwarded.  (*Id*. at ¶¶ 12-15.)  In total, Direct Notice was achieved with respect to approximately 95.6% of the AdWords Class.  (*Id.* at ¶ 16.)  The Settlement Administrator received 84,335 claims.  (*Id.* at ¶ 23.)  4,838 of those (covering 8,503 separate Customer IDs) were determined to be Valid Claims.  (*Id.* at ¶ 23.)  The great majority of the claims that were initially rejected were submitted by individuals who were either not on the class list, or had not submitted a valid email address or Customer ID.  (*Id.* at ¶¶ 24-25.)  For the rejected claims, the Administrator has followed up with an "initial claim deficiency notice" that affords such individuals 30 days to seek to cure their claim.  (*Id.* ¶ 26.)

The Administrator also received 17 exclusions, and one objection.  (*Id*. at ¶¶ 23, 29, 31)

**D.  Anticipated Settlement Payments to AdWords Class Members.**

Given that the amount of each payment for a Valid Claim is based on the proportion of (A) an individual claimant's total AdWords advertising spend (on AdX publishers' webpages) to (B) the total of such spend among all Claimants, and given that the Settlement Administrator only recently was able to complete its Claims validation process, as of the date of this filing Google is still working with the Administrator to calculate the amount that will be distributed to each of the 8,503 AdWords Class Members who submitted Valid Claims, as well as to any AdWords Class Members who are able to cure an invalid claim pursuant to the rejection notice they have received from the Administrator.  (*See* Weisbrot Decl. ¶ 26.)  Even without those final details, however, assuming the Court approves Class Counsel's fee motion, and assuming the accuracy of the Administrator's estimated budget of $193,380, the *average* award to each AdWords Class

1    Member is expected to be roughly $430.  That amount may decrease somewhat based on the

2    number of class members who are able to cure invalid claims, but alternatively may increase

3    somewhat when the Administrator screens for Settlement Payments that do not meet the $1.00

4    threshold.  (Settlement Agreement § 2.4.1.)  Finally, given the distribution system the Parties

5    devised and this Court approved, the Parties expect only a negligible amount of funds to remain

6    as residue following distribution; for example, there may be uncashed paper checks issued to

7    those who opt out of electronic payment.  Should any such residue remain, it would be donated to

8    the *Cy Pres* Recipient, Public Justice.  (Settlement Agreement, §§ 1.12, 2.4.)

9         If the Court grants final approval of the Settlement, then SCB and AdWords Class

10   Members who did not exclude themselves from the AdWords Class in response to the Litigation

11   Notice or from the Settlement in response to the Settlement Notice will be deemed to have

12   released all Released Claims against the Releasees.  (Settlement Agreement, §§ 1.36, 6.2.)

13   **III.    LEGAL STANDARD**

14        Before a district court finally approves a class action settlement, it must conclude that (A)

15   adequate notice of the proposed settlement has been given to the class; (B) the proposed class

16   meets the requirements for certification under Federal Rule of Civil Procedure 23; and (C) the

17   settlement reached on behalf of the class is fair, reasonable, and adequate.  *Hanlon v. Chrysler*

18   *Corp.*, 150 F.3d 1011, 1025–27 (9th Cir. 1998); *Perks v. Activehours, Inc.*, No. 5:19-CV-05543-

19   BLF, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) (citing *Hanlon*, 150 F.3d at 1025–27).

20   Under this Circuit's precedent following *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.

21   1998), courts may preliminarily approve a settlement and notice plan to the class if the proposed

22   settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

23   not grant improper preferential treatment to class representatives or other segments of the class;

24   (3) falls within the range of possible approval; and (4) has no obvious deficiencies.  *See In re*

25   *Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21,

26   2018) (citation omitted); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

27   2007).

28        The above *Hanlon* factors largely overlap with the factors specified in the 2018

amendments to Rule 23, which are now set forth in subsection (e)(2) of that rule.  *See Perks*, 2021 WL 1146038 at *4.  Under that subsection, a court is to consider the following factors in assessing whether a proposed class settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

### A.  Notice to the AdWords Class Was Adequate.

The notice provided in this case was very effective, meeting the high standards set by the Federal Judicial Center.  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  "The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."  *Perks*, 2021 WL 1146038 at *2 (citing *Bickel v. Sheriff of Whitley Cnty.*, No. 1:08-CV-102-TLS, 2015 WL 1402018, at *2 (N.D. Ind. Mar. 26, 2015); Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to

reach between 70–95%.  A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.")).

Here, the notice method approved by the Court in its Preliminary Approval Order resulted in Direct Notice to 95.6% of the AdWords Class.  (Weisbrot Decl. ¶ 16.)  Moreover, the Settlement Administrator issued the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, to the relevant governmental regulators, none of whom has objected.  (*Id.* ¶ 7.) These factors demonstrate that Notice was highly effective and more than adequate.  *See*, *e.g.*, *Perks*, 2021 WL 1146038 at *2 (finding notice exceeded the threshold requirement and was adequate where 95% of class received direct notice and no government regulators objected); *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *3 (N.D. Cal. Mar. 21, 2019) (notice adequate where 80% of class received direct notice, a settlement website was established, and a press release issued).

## B.    The AdWords Class Meets the Requirements for Certification for Purposes of Entering Judgment on the Settlement.

This Court previously found that the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) are met and certified an AdWords Class identical to the AdWords Class defined in the Settlement Agreement, except the latter expands the applicable "limitations period" to end on the date of the last signature to the Settlement Agreement (April 28, 2022).  (Class Certification Order; Settlement Agreement, § 1.4.)  Nothing has changed since the Court first certified the AdWords Class, except that members of the class have shown uniform support for the Settlement after having received notice of it, save for a sole objector.  (Weisbrot Decl. ¶ 31; Ex. F.)  The same facts that supported the Court previously certifying the AdWords Class also support class certification for final settlement approval.

While the AdWords Class proposed for final approval contains a limitations period that ends as of the date the Settlement Agreement was signed (April 28, 2022), this does not require application of the "higher *Bluetooth* standards for settlement approval, which normally apply only to agreements negotiated prior to class certification." *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *4 (N.D. Cal. July 7, 2017) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir.

2016) (noting that *Bluetooth's* "more strict" standards apply only "when a settlement is negotiated absent class certification")).  Here, as in *Kumar*, this Court already "undertook a thorough analysis of the evidence and claims in the context of the class certification motion," which will aid its current deliberations.  *See id.*[3]; *see also Russell v. United States*, 2013 WL 12172989, at *2 (N.D. Cal. Mar. 5, 2013) (granting certification for settlement purposes to "an expanded version of the class already certified under Rule 23(a) and (b)(3)").

The Court should thus reaffirm certification of the AdWords Class for entry of judgment on the Settlement.  *See, e.g.*, *Rodriguez v. Nike*, No. 14-CV-01508-BLF, 2022 WL 254349, *3 (Jan. 27, 2022) (granting final approval where settlement class materially the same as class previously certified); *Perks*, 2021 WL 1146038 at *3 (certifying class for final approval where no new facts arose that would alter preliminary certification); *Free Range*, 2019 WL 1299504 at *5 (same).

**C. The Settlement is Fundamentally Fair, Reasonable, and Adequate.**

In the Preliminary Approval Order, the Court found that the Settlement Agreement "substantially fulfills the purposes and objectives of the class action, and provides substantial relief to the AdWords Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal," and "is the result of arm's-length negotiations between experienced class action attorneys."  (Preliminary Approval Order at 1-2.)  That preliminary finding of fairness has since been strengthened by the fact that very few AdWords Class Members opted out of the Settlement, and only one objected to it.  (Weisbrot Decl. ¶ 31, Ex. F.)  SCB respectfully submits that the Court should once again find that the Settlement is fair, reasonable, and adequate in order to finally approve it.  As discussed above, the Ninth Circuit instructs district courts to consider and balance multiple factors to assess whether a settlement is "fair, adequate, and free from collusion" under the *Hanlon* factors, which largely overlap with the factors specified in Rule 23(e)(2).  For ease of review, we consider the factors under the rubric used in the Rule.

---

[3] In *Kumar*, an objector had unsuccessfully requested application of the *Bluetooth* standard on the basis that the scope of the class in the settlement agreement was broader than the scope of the class that had been certified by the court.

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

1.     **SCB and Class Counsel have adequately represented the class.**

In granting class certification, the Court explained that "Gaw Poe are able attorneys who have litigated this action vigorously on behalf of the class." (Class Certification Order at 21.) The Court further found an absence of any conflict between Gaw | Poe and the AdWords class. (*Id.*)  In the two years since that order was written, Gaw | Poe continued to vigorously represent the interests of the AdWords class, through continuing to pursue discovery in support of the class's claims against Google, moving for and opposing summary judgment, and by fronting over $800,000 from its own pockets to fund class notice, discovery expenses, and expert witness fees. (Dkt. No. 400 ("Gaw Fee Declaration") ¶¶ 2-5.)  Since the time the Court issued its Preliminary Approval Order, Class Counsel has continued to represent the AdWords Class diligently by complying with the Preliminary Approval Order and Notice procedures contained in the Settlement Agreement.  In short, Gaw | Poe's vigor in support of the class's claims has continued unabated since the Court's prior findings.

In granting class certification, the Court likewise found that SCB had fulfilled its role as an adequate representative of the AdWords class.  (Class Certification Order at 19.)  In support of Plaintiff's motion for class certification, SCB's principal Ramzy Rahib submitted a declaration describing how SCB came to be a named-plaintiff in this litigation, and the role and efforts he has undertaken in furtherance of that responsibility.  (Dkt. No. 205-2 ¶¶ 12-14; *see also* Preliminary Approval Motion at § I(H) (describing, in conjunction with the requested service award, Mr. Rahib and SCB's contributions to the class's goals); Dkt. No. 399-1, Rahib Declaration ¶¶ 1-6.) Nothing has happened between then and now that could call SCB's adequacy into question.

2.     **The proposed Settlement was negotiated at arm's length.**

As this Court recently noted in *Perks*, 2021 WL 1146038 at *4, the "arm's length" inquiry under Rule 23(e)(2)(B) overlaps with the *Hanlon* factor requiring a court to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . ." 150 F.3d at 1027 (internal quotes and citations omitted).  In its Preliminary Approval Order, this Court found that the Settlement Agreement "is the result of arm's-length negotiations between experienced class action attorneys."  (Preliminary Approval Order at 3.)  As set forth

above and detailed in the Motion for Preliminary Approval, the Settlement was achieved only after extensive written and oral discovery, including review and analysis of tens of thousands of documents and of initial disclosures and interrogatory answers, much with the aid of consulting experts, and over a dozen depositions of the parties and their experts; three motions to dismiss; a motion for class certification; and cross-motions for summary judgment.  (Dkt. 386, Gaw Preliminary Approval Decl. ¶¶ 3-4, 15-16.)  *See Free Range*, 2019 WL 1299504, at *6 (where settlement is the result of long, hard-fought, adversarial work and "arms-length negotiations between experienced counsel with the aid of a respected mediator," the Court affords a proposed class settlement a "presumption of correctness.").  The involvement of a neutral mediator such as Judge Fogel (who attested that in his opinion the Settlement is fair, adequate, and reasonable) additionally supports this factor.  (*See* Dkt. No. 385-1 (Fogel Decl.) at ¶¶ 3-5.)  *See*, *e.g.*, *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2021 WL 837626, at *5 (N.D. Cal. Feb. 4, 2021); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *5 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021); *Shahar v. Hotwire, Inc.*, No. 12-CV-06027-JSW, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014).

### 3. The relief provided for the class is adequate.

To evaluate whether the settlement is within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F. Supp. 2d at 1080.  It is "'well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.'"  *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017).

Given the 4+ years of pre-settlement discovery and litigation, Plaintiff's counsel was well-situated to evaluate the strength and weakness of Plaintiff's case.  (Gaw Preliminary Approval Decl. ¶¶ 3-4, 15-16.)  As also noted in SCB's Motion for Preliminary Approval, the $7 million

1    settlement value Class Counsel obtained mirrors the amount of class damages that their expert

2    witness estimated at the class certification stage and is well within the broad range of possible

3    damages he opined in his merits report.  (Gaw Preliminary Approval Decl. ¶¶ 15-19; Preliminary

4    Approval Motion at § I(D).)  Additionally, Google's expert maintained that the data showed that

5    there was no "credit shortfall" affecting the AdWords Class whatsoever, such that the class was

6    owed $0, and that the multiplier on which Plaintiff's expert relied to provide his revised damages

7    range was not supported by Google's supplemental discovery responses.  (Preliminary Approval

8    Motion at § I(D).)  Especially where a class may "risk getting nothing," courts routinely approve

9    settlements where the settlement value is a small portion of what plaintiffs allege is the

10   defendant's total potential exposure.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042

11   (N.D. Cal. 2008); *see also, e.g.*, *Perkins v. Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL

12   613255, at *5 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement where the total

13   exposure exceeded $1.6 billion because this was "a fair and adequate compromise in light of

14   significant risks faced by the class"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL

15   537946, at *11 (N.D. Cal. Feb. 11, 2016) ("it is well-settled law that a proposed settlement may

16   be acceptable even though it amounts to only a fraction of the potential recovery that might be

17   available to the class members at trial"); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943-44

18   (N.D. Cal. 2013) (the adequacy of [the] settlement should not be evaluated against some

19   theoretically available judgment, but against what plaintiffs could reasonably expect to recover").

20            **4.      The relief provided for the class is adequate.**

21        We now turn to the individual factors identified in Rule 23(e)(2)(C).

22                **i.      The costs, risks, and delay of trial and appeal.**

23        The $7 million settlement fund is a fair and admirable result in light of the risks and delay

24   posed by further trial proceedings and a potential appeal.  *See, e.g.*, *Hanlon*, 150 F.3d at 1026

25   (courts should consider "the risk, expense, complexity, and likely duration of further litigation"

26   when assessing whether a settlement is fair and reasonable).  The AdWords Class faced a distinct

27   risk that the Court may have ruled in Google's favor on its pending summary judgment motion.

28   (*See* Dkt. No. 333-3 (Google MSJ), at pp. 19-32.)  Even short of an outright loss at summary

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

1    judgment, the Class faced a distinct risk that its damages would be severely limited.  Google

2    forcefully argued that the Terms included a contractual limitation provision that limited class

3    recovery to a 60-day claim period instead of the four-year limitations period advocated by Class

4    Counsel.  (*Id.*)  While Class Counsel disagreed based on their reading of the provision and

5    evidence obtained during discovery, as well as their argument that the limitation of liability is

6    unenforceable, it was nevertheless imperative for SCB and Class Counsel to take those risks into

7    account in arriving at a mediated settlement.  (Gaw Preliminary Approval Decl. ¶¶ 16-19.)

8         Even assuming that the class would have overcome the several risks presented by

9    summary judgment, there was the additional risk that the jury might have either (A) sided with

10   Google on the merits, or (B) awarded a smaller amount in damages than the $7 million all-cash

11   deal that Class Counsel and SCB obtained (perhaps all the way down to the $0 damages amount

12   opined by Google's expert), especially since the overwhelming majority of the estimated class

13   damages was based upon the use of a multiplier derived from what Google contends were

14   inadvertently erroneous interrogatory responses.  The Court denied Plaintiffs' motion to exclude

15   the use of Google's supplemental interrogatory responses (*see* Dkt. No. 354), which left

16   Plaintiffs' damages calculations especially vulnerable should a jury believe Google that its initial

17   responses should be disregarded.  And even had the class prevailed at trial, it still would have

18   faced a risky road in proceeding through post-trial motions and an appeal, all of which likely

19   would have delayed compensation to the class for two years or more.  In sum, the compromise

20   that Class Counsel and SCB ably reached on the class's behalf can hardly be second-guessed by

21   anyone familiar with this litigation.

22              **ii.    The method of distributing relief and processing claims.**

23        The Court's Preliminary Approval Order found that the Notice Plan's methods of

24   distribution and Claims processing comply fully with due process, the requirements of the Federal

25   Rules of Civil Procedure, and the Northern District of California's Procedural Guidance for Class

26   Action Settlements.  (Preliminary Approval Order at 2-3.)  As described above and in the Preliminary

27   Approval Motion, Class Counsel and SCB propose a distribution method that is as equitable as

28   possible, pursuant to which the proposed settlement would distribute to each Claimant with a

1  Valid Claim a share of the Net Settlement Fund based on its AdWords advertising spend on AdX

2  publishers' webpages during the relevant limitations period, in proportion to the total such spend

3  for all Claimants with Valid Claims.  In this way, AdWords Class Members who spent greater

4  sums through the relevant advertising platform (and thus would have been expected to have been

5  deprived of a larger amount in refunds under Plaintiff's theory) will obtain a greater share, while

6  AdWords Class Members who suffered a smaller injury (under Plaintiff's theory) will obtain a

7  proportionately smaller share.  Courts have repeatedly approved analogous settlement distribution

8  methods.  *See, e.g.*, *Baird v. BlackRock Institutional Tr. Co., N.A.*, No. 17-CV-01892-HSG, 2021

9  WL 5991060, at *5 (N.D. Cal. July 12, 2021) (approving allocation plan that provided for

10  settlement payments in proportion to the size of class members' investment accounts); *Downey*

11  *Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL 5938722, at *8

12  (C.D. Cal. May 16, 2016) (settlement allocation based on roughly proportionte delta between

13  each class member's billed charges as compared to reimbursement shortage had rational basis).

14         While in some sense it might be deemed more "equitable" to distribute a share of the Net

15  Settlement Fund to every AdWords Class Member on an automated basis (without requiring them

16  to submit claims) such a structure was not feasible here because (A) Google does not have a

17  physical address for all members of the class such that the Settlement Administrator could send

18  them a check, (B) the addresses it does have are up to nine years old given the beginning of the

19  limitations period, and (C) neither Class Counsel nor Google has electronic payment information

20  for the AdWords Class Members.  (Gaw Preliminary Approval Decl. ¶ 10.)  In other words, an

21  automatic distribution method would be arbitrary because it would fail to reach an untold number

22  of class members through no fault of their own, and the "residue" remaining in the Net Settlement

23  Fund after the distribution attempt would likely be very high.  For that reason, it was far more

24  efficient and equitable for the Parties to propose to distribute the Net Settlement Fund to those

25  AdWords Class Members who affirmatively make a claim on it.

26         Importantly, while the proposed method of distribution could be colloquially described as

27  a "claims-made settlement," it is not one in which the defendant's exposure is limited by the

28  number of claims made, or one in which unclaimed amounts will revert to the defendant or the

1    plaintiff's counsel—characteristics that are often considered "'indicia of collusion.'"  *In re*

2    *Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 10539266, at *1 (N.D. Cal.

3    June 14, 2018) (quoting 4 Newberg on Class Actions § 13:9 (5th ed. 2018)); *see also Kakani v.*

4    *Oracle Corp.*, No. 06-cv-06493-WHA, 2007 WL 1793774, at *5 (N.D. Cal. June 19, 2007).

5    Rather, it is "claims-made" only in the sense that AdWords Class Members who desire to make a

6    claim on the Net Settlement Fund must identify themselves and provide appropriate payment

7    information, out of pragmatic necessity.  Furthermore, the Claims Process was designed to be as

8    minimally burdensome as possible.  The only thing that a Claimant needed to do was input the

9    ID# it was assigned by the Settlement Administrator into the online-portal found on the class

10    website, and then input any updated contact information, and identify its preferred form of

11    payment.  (*See* Dkt. No. 387 (Weisbrot Preliminary Decl.) at ¶¶ 22-23; Dkt. Nos. 387-2, 387-3,

12    387-4; Settlement Agreement, § 3.)  Any AdWords Class Member who could not find its ID# (for

13    any reason) could alternatively contact the Settlement Administrator to find out whether it is an

14    eligible member of the class, and proceed to make a Claim if so.  (Dkt. Nos. 387-4.)

15        Finally, so that the cost of administering a Claim does not exceed that Claim's value, the

16    proposed settlement imposed a minimum $1.00 threshold on Settlement Payments.  (Gaw

17    Preliminary Approval Decl. ¶ 9; Settlement Agreement, § 2.4.1.)  Minimum thresholds for class

18    distributions are routinely deemed appropriate.  *In re Dynamic Random Access Memory (DRAM)*

19    *Antitrust Litig.*, No. 06-cv-4333-PJH, 2013 WL 12333442, at *81 (N.D. Cal. Jan. 8, 2013) ("The

20    concept of setting a *de minimis* payment amount below which checks will not be issued has long

21    been accepted as a feature of class action distributions.") (collecting citations); *Redwen v. Sino*

22    *Clean Energy, Inc.*, 11-CV-3936-PA-(SSX), 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013)

23    (recognizing that *de minimis* payment threshold preserved settlement fund from being

24    overburdened and benefited class as a whole because "it saves the settlement fund from being

25    depleted by the administrative costs").

26        **iii.    The terms and timing of the proposed attorneys' fees award.**

27        Pursuant to the Settlement Agreement and in accordance with the Court's Preliminary

28    Approval Order, Class Counsel and SCB filed the Attorneys' Fees Motion on July 15, 2022.

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-cv-07082-BLF

1    (Dkt. Nos. 399 to 400-2.)  The Settlement Administrator promptly made that motion available for

2    review on the Settlement Website in accordance with the terms of the preliminarily-approved

3    Settlement Agreement.  (Weisbrot Decl. ¶ 17.)  As detailed in the motion, Class Counsel seeks

4    33% of the Settlement Fund for attorneys' fees for this long-fought litigation, which is more than

5    supported by a lodestar cross-check, even at the hourly rates this Court approved for Class

6    Counsel more than two years ago.  (Dkt. No. 399 to 400-2.)  SCB and Class Counsel respectfully

7    submit that 33% is fair in light of the years they spent in this hard-fought litigation against

8    formidable opposing counsel and their formidable client, the significant result achieved for the

9    proposed AdWords Class, and the fact that a lodestar cross-check reflects a multiplier of 0.63.

10   *See Rodriguez v. Nike Retail Servs., Inc.*, No. 14-CV-01508-BLF, 2022 WL 254349, at *6 (N.D.

11   Cal. Jan. 27, 2022) (awarding class counsel 33% of an $8.5 million settlement, which translated

12   to a lodestar of 1.17).  Google reserved the right to oppose that motion for any reason at its

13   discretion, but to date has not.  (Settlement Agreement, § 8.1.)

14         Plaintiffs' motion for fees also seeks to recover that portion of Class Counsel's out-of-

15   pocket costs properly attributable to their pursuit of this outcome for the AdWords Class, which is

16   $831,186.02.  (*Id*.)  By far the largest component of those costs were expert fees, which were

17   necessarily and reasonably incurred given the multiple expert reports necessary to achieve this

18   result, and the extremely data-intensive subject matter of those reports.  (*Id*.)  The second largest

19   component involved issuing Litigation Notice to the certified litigation class, which amounted to

20   approximately $97,000.  (*Id*.)  As demonstrated in SCB and Class Counsel's motion, none of

21   those out-of-pocket costs were avoidable in achieving this result.

22         Furthermore, the finality of the Settlement is specifically untethered to Class Counsel's

23   right to attorneys' fees, and the amount of those fees.  In other words, neither SCB nor Class

24   Counsel can seek to terminate the Settlement based on the outcome of the Court's ruling on the

25   fee motion or Service Award.  (Settlement Agreement, § 7.6.)  Regarding the timing of any fee

26   award, the Settlement provides that it becomes payable within 15 days after the date the Final

27   Approval Order is entered.  (*Id.* at § 8.4.)

28

### iv.     Statement of agreements required to be identified.

At the February 25, 2022 mediation with Judge Fogel, in addition to reaching settlement as to the AdWords Class, the Parties agreed to settle the remaining individual claims of AdTrader, Inc., as well as Gaw | Poe's claim for attorneys' fees on the "common fund" created by Google's decision to issue $65.7 million in refunds to advertisers on Google's DBM advertising platform. (Gaw Preliminary Approval Decl. ¶¶ 21-22.)  As the Advisory Committee notes to Rule 23(e)(2) explain, it is important for the parties to identify "related undertakings," out of concern that they "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others."  Fed. R. Civ. P. 23(e)(2), Ad. Comm. Notes (2018). The Committee notes further recognize, however, that this obligation is tempered by "concerns of confidentiality"—an issue that is particularly presented by the AdTrader settlement, given that AdTrader is neither a class representative nor even a member of the AdWords Settlement Class.

Here, the two additional separate agreements the Parties reached did not trade away any advantages for the class.  To avoid any potential for a conflict of interest in mediating AdTrader's individual claims simultaneously with the claims of the AdWords Class, Gaw | Poe insisted that AdTrader obtain separate counsel for the mediation.  (Gaw Preliminary Approval Decl. ¶ 22.)  It did so by independently finding and retaining a highly experienced attorney named Sven Reithmueller, who had previously worked as an associate for Cleary Gottlieb and Sullivan & Cromwell, and later been a partner at Foley & Larder and Pepper Hamilton.[4]  Mr. Reithmueller independently prepared and submitted to Judge Fogel his own mediation statement on behalf of AdTrader.  (*Id*.)  Furthermore, during the mediation itself, Mr. Reithmueller and AdTrader negotiated separately with Google through Judge Fogel.  (*Id*.)

Nor can Gaw | Poe be said to have benefitted at the expense of the class.  Between the fees and expense reimbursements the firm is to receive from AdTrader's separate settlement and the compromise of its own fees claim (*i.e.*, Gaw | Poe's contention that the Court erred in awarding it just $727,503.74 in conjunction with the $65.7 million "common fund" created by Google's

---

[4] *See* https://www.linkedin.com/in/sven-riethmueller-3556931/details/experience/.

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

refunds to DBM advertisers (Dkt. No. 289 at 18)),[5] Gaw | Poe will receive a total of only $1.2 million in combined fees and expense reimbursements, inclusive of and not in addition to the approximately $730,000 the Court previously awarded.  (*Id.*; Gaw Preliminary Approval Decl. ¶¶ 23-24.)  Even setting aside the possibility that Gaw | Poe would have received a far greater amount from a successful appeal of the Court's prior DBM fees order, assuming that the firm would have been entitled to 10% California prejudgment interest between the date that the $727,503.74 amount was fixed in March 2020 and the date final judgment would likely enter (year-end of 2022), Gaw | Poe would have been entitled to $921,503 in connection with only its DBM fees claim, win or lose.[6]  Accordingly, a $1.2 million compromise of Gaw | Poe's DBM fees claim (combined with its share of fees and expenses from the separate AdTrader settlement) was eminently reasonable, and cannot be thought to have "trad[ed] away possible advantages for the class."  Fed. R. Civ. P. 23(e)(2), Ad. Comm. Notes (2018).

A further assurance that the AdTrader and Gaw | Poe settlements did not come at the expense of the class is the fact that the three settlements were the result of a "mediator's proposal" proposed by Judge Fogel.  (Dkt. No. 385-1 (Fogel Decl.) ¶ 4.)

**5.    The Settlement treats class members equitably relative to each other.**

The Settlement does not grant preferential treatment to Class Representative SCB or any segment of the AdWords Class.  As explained in the Website Notice, and as described above, the Settlement provides cash relief to all eligible AdWords Class Members on a fair and proportionate claims-made basis, and SCB is entitled to make a claim just like any other class member.  (Gaw Preliminary Approval Decl. ¶ 9; Settlement Agreement, §12.)  Under the Agreement, there is no biased treatment of AdWords Class Members or segments of the class, as each AdWords Class Member with a Valid Claim will receive a Settlement Payment proportionate to its AdWords spend through the AdX platform during the relevant limitations

---

[5] The Court will recall that Gaw | Poe LLP took an appeal from the Court's order granting in part its fees claim to challenge the amount awarded by the Court, and the Ninth Circuit dismissed that appeal for lack of appellate jurisdiction, holding that the appeal must await entry of final judgment in this case.  (*See* Dkt. No. 329 (9th Cir. opinion).)

[6] 10% interest would translate to $72,750 per year, or $6,062 per month for 32 months.

1    period.  (*Id.*)  All AdWords Class Members, including the Class Representative SCB, are treated

2    equally under the Settlement Agreement.

3        As for the proposed Service Award to SCB, $10,000 is an appropriate amount considering

4    the time and attention that SCB has devoted to this matter.  (Attorneys' Fees Motion at 12-13

5    (describing SCB's work in support of this case).  *See also*, *e.g.*, *See*, *e.g.*, *Parker v. Cherne*

6    *Contracting Corp.*, No. 18-CV-01912-HSG, 2021 WL 3209825, at *5 (N.D. Cal. July 29, 2021)

7    (considering distribution of settlement funds and proposed service award to class representative in

8    evaluating preferential treatment factor); *Birch v. Off. Depot, Inc.*, 06-CV-1690 DMS (WMC),

9    2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007) ($15,000 and $10,000 service awards

10   awarded to class representatives were "well within amounts awarded by courts for efforts by

11   named representative plaintiffs that lead to successful resolution on behalf of the class");

12   *McDonald v. CP OpCo, LLC*, No. 17-CV-04915-HSG, 2019 WL 2088421, at *8 (N.D. Cal. May

13   13, 2019) (service award of twice the presumption of $5,000 was fair and reasonable considering

14   plaintiff's participation).

15        Regarding the possibility of *cy pres* distributions, the Ninth Circuit has stated that "[t]he

16   cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class

17   action settlement fund to the 'next best' class of beneficiaries."  *Nachsin v. A.O.L., LLC*, 663 F.3d

18   1034, 1036 (9th Cir. 2011) (citation omitted)).  Here, as noted, there is unlikely to be much if any

19   residue in the Net Settlement Fund due to the distribution process the Parties have agreed to.

20   (Preliminary Approval Motion at § I(E).)  If any amount remains, however, it will not revert to

21   Google, SCB, or Class Counsel, but will instead be turned over to Public Justice as the C*y Pres*

22   Recipient here.  (Gaw Preliminary Approval Decl. ¶ 11 & Ex. B.)

23        **6.    The reaction of AdWords Class members and regulators.**

24        Finally, the reaction of AdWords Class Members and regulators strongly confirms

25   that they view the Settlement as "fair, reasonable, and adequate."  *See In re Omnivision Techs.*,

26   559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[T]he absence of a large number of objections to a

27   proposed class action settlement raises a strong presumption that the terms of a proposed class

28   settlement action are favorable to the class members.").  Only 17 AdWords Class Members opted

1    out by the published deadlines.  (Weisbrot Decl. ¶ 29.)  And, only one objection was submitted by

2    the deadline (which SCB addresses below).  (*Id.* ¶ 31, Ex. F.)  The paucity of opt-outs and

3    objections speaks to a positive class reaction to the Settlement, further supporting its final

4    approval.  *See*, *e.g.*, *Churchill Village*, 361 F.3d at 577 (affirming approval of settlement where

5    45 of 90,000 class members objected to the settlement and 500 class members opted out);

6    *Mendoza*, 2017 WL 342059, at *7-8 (finding that low opt-out and objection rates—247 opt-outs

7    and 41 objections from among 1.3 million class members—was an indication of positive class

8    reaction that favored final approval); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at

9    *3 (N.D. Cal. Sept. 2, 2015) (finding indicia of approval where 11 class members out of 64,466

10   submitted objections and where just under 1% opted out).

11        Only one objection was received during the claims process, that of Robert J.A. Gilbert.

12   (Weisbrot Decl. ¶ 31, Ex. F.)  Mr. Gilbert offers a number of "specific reasons" for objecting,

13   including that (1) he cannot tell precisely what benefit he will get from the Settlement; (2) he

14   claims not to have gotten "conversions" based on the advertisements he posted (i.e., his ads did

15   not result in customers); and (3) he thinks Google somehow prevented his website from appearing

16   in search results or otherwise disadvantaged his brand.  (*Id.* at Ex. F at 1-3.)

17        Mr. Gilbert apparently believes that instead of filing the lawsuit it did, SCB should have

18   instead filed a lawsuit that would have included these nebulous claims, or that SCB should have

19   negotiated a settlement that would have provided compensation for these supposed wrongs,

20   despite the fact that they were not included in the scope of SCB's pleading.  But a class settlement

21   is typically constrained by the class representative's pleading.  *See Chavez v. PVH Corp.*, No. 13-

22   CV-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (describing the "identical

23   factual predicate rule," and noting that "[d]istrict courts in this Circuit have declined to approve

24   settlement agreements where such agreements would release claims based on different facts than

25   those alleged in the litigation at issue.").  And in any event, SCB would not have been a typical or

26   adequate class representative to complain about the things that Mr. Gilbert complains about.

27        Even if Mr. Gilbert's objection could be reasonably construed to concern the claims that

28   were at issue in *this* case, it boils down to the assertion that the terms of the Settlement should be

PLTF'S MOTION FOR FINAL SETTLEMENT
APPROVAL
CASE NO. 5:17-CV-07082-BLF

1  different, which is an insufficient basis to reject the Settlement.  *See Mendoza*, 2017 WL 342059,

2  at *8 ("[I]t is the nature of a settlement, as a highly negotiated compromise . . . that it may be

3  unavoidable that some class members will always be happier with a given result than others.");

4  *Roberts v. Marshalls of CA, LLC*, 2018 WL 510286, at *11-13 (N.D. Cal. Jan. 23, 2018)

5  (overruling objection, noting the Ninth Circuit's admonition that "Settlement is the offspring of

6  compromise; the question we address is not whether the final product could be prettier, smarter or

7  snazzier, but whether it is fair, adequate, and free from collusion.") (citing *Hanlon*, 150 F.3d at

8  1027).

9          Setting aside Mr. Gilbert's seemingly inapposite objection, it is notable that none of the

10  other 800,000+ AdWords Class Members to whom Notice was delivered has objected to any

11  aspect of this Settlement.  And with an average distribution estimated at approximately $430,

12  each Class Member who submitted a Valid Claim can be expected to receive significant

13  compensation.

14                                      **<u>CONCLUSION</u>**

15          For all of the foregoing reasons, SCB respectfully asks that the Court grant final approval

16  of the Parties' Settlement, and that it also grant the further relief requested herein.  SCB presents a

17  proposed form of order and judgment with the instant motion.

18

19          Dated:  October 13, 2022                    GAW | POE LLP

20

21                                              By: _____

22                                                  Randolph Gaw
                                                    Class Counsel
23

24

25

26

27

28