UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADTRADER, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 17-cv-07082-BLF<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY FEES, EXPENSES, AND SERVICE AWARD**<br><br>[Re: ECF Nos. 401, 399] |

Before the Court are (1) Plaintiffs' Motion for Final Approval of Settlement ("Final Approval Motion") and (2) Plaintiffs' Motion for Attorney Fees, Expenses, and Service Award ("Fee Motion"). *See* ECF Nos. 401, 399. Seventeen opt-outs have been filed in addition to those who opted out during the first notice period, and there is one objector. The Court held a hearing on the motions on October 27, 2022. For the reasons stated on the record and explained below, the Court GRANTS both motions.

**I.    BACKGROUND**

Plaintiffs filed a proposed class action on December 13, 2017, alleging that Google wrongfully failed to provide refunds or credits to advertisers who used what was then known as its DoubleClick Bid Manager ("DBM") platform (now "Display & Video 360") for invalid activity that Google detected. ECF No. 1. Plaintiffs subsequently extended their claims to include advertisers who used Google's AdWords platform as well, among others. ECF No. 1, 29, 72 ("SAC"). Google's DoubleClick Ad Exchange ("AdX") is a Google-owned and operated advertising exchange serving both advertisers and website publishers. *See* SAC ¶¶ 23-28. Website publishers using AdX can monetize their inventory and be matched via an auction format

with online advertisers looking to bid on that inventory. *See id.* Google pays publishers a portion of the revenues Google receives for ads displayed on the publisher's websites. ECF No. 154 ("Answer") ¶ 23. AdWords is a service that allows advertisers to run both display and search advertising campaigns. AdWords advertisers could buy inventory from AdX publishers under the AdWords default settings. Answer ¶ 27. Plaintiff SCB was an AdWords advertiser. *Id.* ¶ 57. Google states it attempts to detect invalid ad traffic ("IVT") and issue credits or refunds to advertisers for such traffic. *Id.* ¶¶ 41-45. On behalf of itself and the AdWords Class, Plaintiff SCB alleged that Google breached the AdWords Agreement and violated California's False Advertising Law ("FAL") and Unfair Competition Law ("UCL") by failing to fully refund or credit advertisers for invalid ad traffic even though it had contemporaneously withheld payment to AdX publishers for that same traffic. SAC ¶¶ 157-248.

Plaintiffs filed the operative Second Amended Complaint on August 13, 2018, as modified by the Court's order granting in part Google's motion to dismiss the same. SAC; ECF No. 131. On March 13, 2020, the Court certified under Rule 23(b)(3) Plaintiff's proposed AdWords Class. ECF No. 278. The Court appointed SCB as class representative and Gaw | Poe LLP as class counsel. *Id.* Following the Court's ruling on class certification, Plaintiffs filed an unopposed motion for approval of notice to the litigation class, which the Court granted. ECF Nos. 305, 308. The Court approved Angeion Group as the Administrator. ECF No. 308. Pursuant to the plan, Angeion sent notice to the class, consisting of 651,294 emails and 141,318 mailed postcard notices, which resulted in 34 opt-outs. *See* ECF No. 346-1. On February 25, 2022, after intensive written and oral discovery and with cross-motions for summary judgment pending, the Parties attended a successful mediation session with the Honorable Jeremy Fogel, Ret. *See* ECF No. 378. As detailed in the Settlement, the Settlement provides for a non-reversionary sum of $7 million to satisfy these claims, payable on a claims-made basis, under which each claimant with a valid claim will receive a proportional share of the Net Settlement Fund based on its AdWords advertising spend on AdX publishers' webpages during the relevant limitations period as a percentage of the total such spend for all claimants with valid claims. ECF No. 386-1 ("Settlement") §§ 1.42, 1.44, 2.4.

On April 28, 2022, SCB filed its Motion for Preliminary Approval, ECF No. 385, which the Court granted on May 13, 2022, ECF No. 393 ("Preliminary Approval Order"). In its Order, the Court acknowledged the benefits of the Settlement and found, on a preliminary basis, that the Settlement "substantially fulfills the purposes and objectives of the class action, and provides substantial relief to the AdWords Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal." Preliminary Approval Order ¶ 5.

The Settlement Administrator provided the Court-approved Notice to the AdWords Class and provided notice to regulators. ECF No. 397. The Settlement Administrator likewise updated the class website following preliminary approval, to include updated Settlement Notices, a claim form, an opt-out form, answers to frequently asked questions, a list of important deadlines, and important case documents. ECF No. 401-1 ("Weisbrot Decl.") ¶¶ 17-20. On June 17, 2022, the Settlement Administrator caused Email Notice to be sent to the 870,509 advertisers for whom e-mail addresses were available, and caused Postcard Notice to be mailed to the 191,154 advertisers for whom only physical addresses were available or for whom emails were returned as undeliverable. *Id.* ¶¶ 12-13. In total, Direct Notice was achieved with respect to approximately 95.6% of the AdWords Class. *Id.* ¶ 16. The Settlement Administrator received 84,335 claims. *Id.* ¶ 23. 4,838 of those (covering 8,503 separate Customer IDs) were determined to be Valid Claims. *Id.* The great majority of the claims that were initially rejected were submitted by individuals who were either not on the class list, or had not submitted a valid email address or Customer ID. *Id.* ¶¶ 24-25. For the rejected claims, the Administrator has followed up with an "initial claim deficiency notice" that affords such individuals 30 days to seek to cure their claim. *Id.* ¶ 26. The Administrator also received 17 exclusions and one objection. *Id.* ¶¶ 29, 31.

Plaintiffs moved for attorneys' fees, expenses, and service award on July 15, 2022. *See* Fee Motion. Plaintiffs moved for final approval on October 13, 2022. *See* Final Approval Motion. Plaintiffs seeks (1) final approval of the proposed class action settlement; (2) approval of Class Counsel's application for $2,310,000 in attorneys' fees and $831,186.02 in expenses; and (3) approval of SCB's request for a service award of $10,000. *See* Final Approval Motion at 1-2; Fee Motion at 1. The Court heard Plaintiffs' motions on October 27, 2022.

3

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Rule 23 Certification Requirements

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

#### 1. The Class Meets the Requirements for Certification Under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court previously granted class certification in this case for a class that is materially the same as the settlement class. *See* ECF No. 278 at 32; *see also* Preliminary Approval Order ¶ 4. In granting class certification, the Court certified the following class:

> All persons and entities: (1) whose Google AdWords advertiser accounts were subject to the Google Inc. Advertising Program Terms for the United States; (2) who were charged by Google through their

> AdWords accounts for clicks or impressions on advertisements appearing on any DoubleClick Ad Exchange publisher website at any time during the applicable limitations period; (3) who did not receive refunds or credits from Google even though it withheld payment to that publisher for those clicks or impressions in connection with any invalid activity or any breach of contract, including any policy violation; and (4) who opted out of the arbitration clause of the Terms.

ECF No. 278 at 32. The AdWords Class is defined in the Settlement Agreement as follows:

> [A]ll persons or entities Google's records indicate had an AdWords account between December 13, 2013 and the date of the last signature to this Agreement below, and: (1) whose Google AdWords advertiser account was subject to the Google Inc. Advertising Program Terms for the United States (the "Terms"); (2) who are not subject to the arbitration clause in the Terms; (3) who were charged by Google through their AdWords account for clicks or impressions on advertisements appearing on any DoubleClick Ad Exchange ("AdX") publisher website at any time between December 13, 2013 and the date of the last signature to this agreement below; and (4) who Plaintiffs alleged in this Action did not receive refunds or credits from Google even though it withheld payment to that publisher for those clicks or impressions in connection with any invalid activity or any breach of contract, including any policy violation.

Settlement § 1.4. This class is identical to the class previously certified by the Court except this class definition expands the applicable "limitations period" to end on the date of the last signature to the Settlement. *See* Final Approval Motion at 9. The amendment does not change the Court's analysis in the class certification order. Further, the Court is not aware of any facts that undermine the Court's conclusion in certifying the class, either in the class certification order or the preliminary approval order. But the Court reviews briefly each of the Rule 23 requirements again.

Under Rule 23(a), the Court concludes that joinder of hundreds of thousands of class members would be impracticable under the circumstances of this case. *See Arroyo v. Int'l Paper Co.*, No. 17-cv-06211-BLF, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019) ("Numerosity is presumed where the plaintiff class contains forty or more members."). The commonality requirement is met because the key issue in the case is the same for all class members—whether Google breached the AdWords Agreement and violated California's FAL and UCL by failing to fully refund or credit advertisers for invalid ad traffic. SCB's claims are typical of those of the settlement class, as they suffered the same injury from the same course of conduct. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class representative are "reasonably co-extensive with those of absent class members"). Finally,

5

1  to determine Plaintiffs' adequacy, the Court must answer two questions: "(1) do the named
2  plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the
3  named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v.*
4  *Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).
5  There is no evidence of any conflict of interest that would preclude SCB from acting as class
6  representatives or their counsel from acting as Class Counsel, and the Court is not concerned that
7  Class Counsel has not vigorously litigated this action on behalf of the class.
8        Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes
9  are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.
10 The common questions in this case—whether Google breached its obligation under the AdWords
11 Agreement, whether Google violated the UCL and FAL, whether the class was injured, and
12 whether class members are entitled to damages—predominate over individual questions among
13 the class members. *See* ECF No. 278 at 29. And a class action is the superior method of
14 adjudication given the small individual recovery and its manageability. *See Leyva v. Medline*
15 *Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class
16 members' potential individual monetary recovery, class certification may be the only feasible
17 means for them to adjudicate their claims.").
18       Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that
19 certification of the class for settlement purposes is appropriate.

      **2. The Settlement is Fundamentally Fair, Adequate, and Reasonable**

21       Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a
22 certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's
23 approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class
24 settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval
25 of a class-action settlement must be accompanied by a finding that the settlement is 'fair,
26 reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting
27 Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement
28 is to ensure that it is fair, adequate, and free from collusion." *Id.* at 819 (internal quotation marks

6

and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon*. Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors).

### a. Notice Was Adequate

The Court previously approved SCB's plan for providing notice to the class when it granted preliminary approval of the class action settlement. Preliminary Approval Order ¶ 7. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of Due Process. *See id*. SCB now provides a declaration from the President and CEO of the Settlement Administrator explaining the implementation of the plan. *See* Weisbrot Decl. Based on that declaration, including Direct Email Notice and Postcard Notices, at least one form of Direct Notice was sent and not returned as undeliverable for approximately 95.6% of the Settlement Class. *See id.* ¶ 16. Based on the implementation details of the notice plan, the Court is satisfied that the Settlement Class has received the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### b. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. Under the first and second factors, the court considers (1) the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery; and (2) the risk, expense, complexity, and duration of further litigation. *See Hanlon*, 150 F.3d at 1026. Plaintiffs recognize the risks in moving forward, including the possibility that the Court would have granted Google's summary judgment motion or that damages would have been limited based on Google's argument that recovery was limited to a 60-day period, instead of the four-year period advocated by Class Counsel. *See* Final Approval Motion at 13-14. Further, the total value of the settlement fund is on the high end of the range

calculated by SCB's expert at the class certification stage: $0.278-$7.48 million.[1]  *See* Fee Motion at 5.  And it is possible that a jury would have credited Defendant's expert, who asserted that even if the class was correct on the merits, the damages were $0.  *See id.*; Final Approval Motion at 14.  Plaintiffs' success was not assured; significant risk, expense, complexity, and time likely lay ahead if the parties did not settle; and the class received a settlement fund the value of which was likely at the highest end of what they would have received at trial.  Therefore, the Court finds that the first and second *Hanlon* factors favor settlement.

Under the third factor—the risk of maintaining class action status throughout the trial—since the Court granted class certification, there was little risk related to maintaining class action status throughout the trial.  *See Hanlon*, 150 F.3d at 1026.

Fourth, the settlement recovery for the class members is substantial given the circumstances of the case.  The average award for each class member will be $430.  *See* Final Approval Motion at 6-7.  The Court finds this to be a significant payout, particularly considering the scale of the alleged harm.

Under the fifth *Hanlon* factor, courts consider "the extent of discovery completed and the stage of the proceedings."  *Hanlon*, 150 F.3d at 1026.  In this case, settlement was reached after years of litigation and substantial discovery, including over a dozen depositions of parties and their experts, document production and review, interrogatories, and use of experts.  *See* Final Approval Motion at 12; ECF No. 386 ("Gaw Prelim. App. Decl.") ¶¶ 3-4.  The Court is satisfied that the parties were sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor five.

The sixth *Hanlon* factor—the experience and views of counsel—favors approving the settlement.  *See Hanlon*, 150 F.3d at 1026.  Class Counsel's conclusion is that the Settlement is fair and reasonable and in the best interest of the settlement class.  *See* Final Approval Motion at

---

[1] SCB's expert later revised the damages range upward to $2.7 million-$111 million based on subsequent interrogatory responses by Google.  *See* Fee Motion at 5.  But Defendant then claimed its interrogatory responses had been incorrect and amended them, with the result of reducing the damages range.  *See id.*  The Court denied SCB's motion to exclude Defendant's amended interrogatory responses.  ECF No. 354.  The uncertainty around the damages calculation created further risk for trial.  *See* Final Approval Motion at 14.

8

10; *see also* Gaw Prelim. App. Decl. ¶ 8. Further, Class Counsel has demonstrated their thorough understanding of the strengths and weaknesses of this case and their extensive experience litigating prior employment class actions cases. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and the type of litigation in general).

The seventh *Hanlon* factor is neutral, since there was no government participant in the case. *See Hanlon*, 150 F.3d at 1026.

Under the eighth *Hanlon* factor, the Court considers the "reaction of the class members to the proposed settlement." *See Hanlon*, 150 F.3d at 1026. While notice was given to hundreds of thousands of class members, only one objection has been filed and there have only been seventeen opt-outs from the class. *See* Weisbrot Decl. ¶¶ 28-31. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 (N.D. Cal. 2017) (quoting *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014)).

Based on the foregoing reasons, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that the settlement is fair, adequate, and reasonable.

### 3. Objection

As mentioned above, one objection was submitted, by Robert J.A. Gilbert. Weisbrot Decl. ¶ 31, Ex. F. He objects to the Settlement on the following bases: (1) he cannot tell precisely what benefit he will get from the Settlement; (2) he claims not to have gotten "conversions" based on the advertisements he posted; and (3) he thinks Google prevented his website from appearing in search results or otherwise disadvantaged his brand. *See id.*; Final Approval Motion at 21. The objections raised by Mr. Gilbert largely stem from problems with Google's services that were not at issue in this lawsuit, such as deficiencies in Google's conversion practices. He asserts the settlement amount is inadequate because it doesn't cover his concerns with Google, but these concerns were not a part of this case. As discussed above, the Court finds that the value of the settlement is at the high end of what the class likely would have received at trial. Mr. Gilbert is

9

seeking recovery for other harms.

For these reasons, Mr. Gilbert's objections are OVERRULED.

### 4. Conclusion

Based on those factors, and after considering the record as a whole (including the objection) guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

*     *     *

Plaintiffs' Motion for Final Approval of Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

Class Counsel seeks an award of $2,310,000 in attorneys' fees and $831,186.02 in expenses. *See* Fee Motion at 1. Further, SCB seeks a service award of $10,000. *See id.* at 1-2.

### A. Attorney's Fees and Expenses

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case

or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C–11–00594–DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Class Counsel seeks an award of attorneys' fees totaling $2,310,000, which is 33% of the $7 million gross settlement fund, in addition to $831,186.02 in expenses. *See* Fee Motion at 1.

The Court first approves the $831,186.02 in expenses. The Court has reviewed Class Counsel's itemized lists of costs and finds that all of the expenses were necessary to the prosecution of this litigation. *See* ECF No. 400 ("Gaw Decl.") ¶¶ 3-7, Ex. A.

The Court also finds the amount of attorneys' fees to be reasonable. A lodestar cross-check supports the reasonableness of the fees requested. Class Counsel states that the total lodestar from inception of this case through settlement is $3,650,815. *See* Fee Motion at 11. The hourly rates charged by Class Counsel were approved by the Court earlier in this case, and the Court finds the number of hours expended to be reasonable. *See* Gaw Decl. ¶¶ 8-15, Ex. B. Using $3,650,815 as the lodestar results in a negative multiplier of approximately 0.63. *See* Gaw Decl. ¶ 13. "A negative multiplier 'strongly suggests the reasonablenesss of [a] negotiated fee.'" *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (quoting *Rosado v. Ebay Inc.*, No. 12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)). The Court considers this to be a reasonable multiplier, particularly in light of the significant effort Class Counsel expended litigating this case.

Under the percentage-of-recovery method, the attorneys' fees Class Counsel is requesting are 33% of the $7 million gross settlement fund, which is above the 25% "benchmark" in this circuit. *Bluetooth*, 654 F.3d at 942. However, the Court finds the requested attorneys' fees reasonable, especially in light of the significant amount of work Class Counsel performed in this case, the substantial risk taken on a contingency basis, and the excellent results achieved. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (collecting cases). Accordingly, the requested fee amount is reasonable.

### B. Service Award

SCB seeks a service award of $10,000. *See* Fee Motion at 12-13. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of

1 the class, to make up for financial or reputational risk undertaken in bringing the action, and,
2 sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W.*
3 *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

4 "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor*
5 *Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). The declaration of Ramzy Rahib, the owner,
6 president, and CEO of SCB, describes the work he did for this case, including taking phone calls
7 with the attorneys, providing records, reviewing draft interrogatory responses, preparing for his
8 deposition, taking his deposition, which required overnight travel from San Diego to San
9 Francisco, and participating in mediation. *See* ECF No. 399-1 ("Rahib Decl.) ¶ 5. He estimates
10 that he spent approximately 60 hours in connection with this case. *See id.* ¶ 6. The $10,000 award
11 would represent a rate of $167 per hour that SCB spent on this case. Rahib also notes his concern
12 about having SCB as the Named Plaintiff due to potential retaliation by Google. *See id.* ¶ 4.

13 The Court typically awards an enhancement award around $5,000. However, given the
14 amount of time during which this case has been pending and that SCB has held itself out publicly
15 regarding this case, the Court will grant SCB an amount higher than its typical $5,000 award.
16 Accordingly, the Court approves the requested $10,000 service award for SCB.

17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

13

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion for Final Approval of Settlement is GRANTED;

(2) $2,310,000 in attorneys' fees for Class Counsel is APPROVED;

(3) $831,186.02 in expenses for Class Counsel is APPROVED;

(4) A service award for SCB in the amount of $10,000 is APPROVED;

(5) The timely requests for exclusion by the individuals identified in Exhibit A to the Judgment are APPROVED.

**IT IS SO ORDERED.**

Dated: November 1, 2022

BETH LABSON FREEMAN
United States District Judge